1
2
3
4
5

Edward C. Chen (SBN 312553)
LAW OFFICES OF EDWARD C. CHEN
1 Park Plaza, Suite 600
Irvine, CA 92614
Telephone: (949) 287-4278
Facsimile: (626) 385-6060
Edward.Chen@edchenlaw.com

6
7

*Attorney for Plaintiff David Rasmussen*
*And the Proposed Classes*

8
9
10

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
12
13

DAVID RASMUSSEN, an individual, on behalf of himself and all others similarly situated,

14

Plaintiffs,

15

v.

16
17
18

TESLA, INC. d/b/a/ TESLA MOTORS, INC., a Delaware corporation,

19
20

Defendant.

21
22
23
24

Case No.

**CLASS ACTION COMPLAINT**

FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 *ET SEQ.*, MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 *ET SEQ.*, VIOLATIONS OF STATE CONSUMER FRAUD ACTS, UNFAIR COMPETITION LAWS, WARRANTY LAWS, COMMON LAW FRAUD, OTHER FRAUDULENT ACTS, AND UNJUST ENRICHMENT

**DEMAND FOR JURY TRIAL**

25
26
27
28

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................1

II.  PARTIES ....................................... ERROR! BOOKMARK NOT DEFINED.

III. JURISDICTION ............................................................12

IV.  VENUE ....................................................................13

V.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS ............13

   A.   TESLA LITERALLY CATCHES ON FIRE WORLDWIDE................13
   B.   TESLA'S SOLUTION TO THE FIRES – SOFTWARE UPDATES ........17
   C.   TESLA'S VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 ET SEQ.) ................................................................19
   D.   TESLA THROTTLES BATTERY CHARGING SPEEDS AND MANIPULATES RANGE CALCULATIONS ....................................................................21
   E.   TESLA KNEW AND WAS FULLY AWARE OF THE PROBLEMS AND CAUSE OF POTENTIAL FIRES ....................................................................24
   F.   TESLA PREVIOUSLY PROFITED BY SELLING WHAT IT NOW CLAIMS AS "INSIGNIFICANT" IN VALUE ........................................................25
   G.   TESLA'S MANIPULATES ITS SOFTWARE TO AVOID REPLACING BATTERIES AND TO ESCAPE ITS WARRANTY OBLIGATIONS ........................................27
   H.   TESLA OWNERS HAVE NO CHOICE BUT TO ACCEPT SOFTWARE UPDATES ...............29
   I.   PLAINTIFF DAVID RASMUSSEN'S EXPERIENCE.................30
   J.   PLAINTIFF RASMUSSEN IS DENIED A WARRANTY BATTERY REPLACEMENT ............36
   K.   COMPLAINTS AND COMMENTS FROM TESLA OWNERS WORLDWIDE.......................39
   L.   CIVIL RICO INVESTIGATION........................................41

VI.  CLASS ACTION ALLEGATIONS .................................42

VII. TOLLING OF STATUTE OF LIMITATIONS .......................47

   A.   FRAUDULENT CONCEALMENT.........................................47
   B.   ESTOPPEL...........................................................48
   C.   DELAYED DISCOVERY DOCTRINE ..................................49

VIII. CAUSES OF ACTION...........................................49

   *COUNT 1* ..............................................................49
   VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
   (18 U.S.C. § 1030 *et seq.*)
   *COUNT 2* ..............................................................54
   VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA")
   (15 U.S.C. § 2301 *et seq.*)
   *COUNT 3* ..............................................................56

VIOLATION OF CALIFORNIA'S SONG-BEVERLY CONSUMER
WARRANTY ACT ("SONG-BEVERLY")
(Cal. Civ. Code § 1790 *et seq.*)
*COUNT 4* .................................................................................................. *60*
VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. Code 17200 *et seq.*)
*COUNT 5* .................................................................................................. *62*
VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. Code 17200 *et seq.*)
*COUNT 6* .................................................................................................. *66*
VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
(Cal. Civ. Code § 1750 *et seq.*)
*COUNT 7* .................................................................................................. *70*
VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)
*COUNT 8* .................................................................................................. *72*
TRESPASS TO CHATTELS
(California Law)
*COUNT 9* .................................................................................................. *73*
COMMON LAW FRAUD
(California Law)
*COUNT 10* ................................................................................................ *76*
CONSTRUCTIVE FRAUD
(California Law)
*COUNT 11* ................................................................................................ *78*
FRAUDULENT INDUCEMENT
(California Law)
*COUNT 12* ................................................................................................ *80*
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
(California Law)
*COUNT 13* ................................................................................................ *82*
MONEY HAD AND RECEIVED
(California Law)
*COUNT 14* ................................................................................................ *82*
BREACH OF EXPRESS WARRANTY
(Cal. Comm. Code § 2313)
*COUNT 15* ................................................................................................ *85*
BREACH OF IMPLIED WARRANTIES
(Cal. Comm. Code § 2314)
*COUNT 16* ................................................................................................ *87*

INTENTIONAL MISREPRESENTATION
(Cal. Civ. Code §§ 1709-1710)
***COUNT 17*** ............................................................................................ 90
NEGLIGENT MISREPRESENTATION
(Cal. Civ. Code §§ 1709-1710)
***COUNT 18*** ............................................................................................ 91
FRAUD BY CONCEALMENT
(Cal. Civ. Code § 3294)
***COUNT 19*** ............................................................................................ 94
QUASI CONTRACT/RESTITUTION/UNJUST ENRICHMENT
(California Law)

**IX. REQUEST FOR RELIEF** ............................................................................ 95

**X. DEMAND FOR JURY TRIAL** .................................................................... 96

## I.    INTRODUCTION

1.    Plaintiff David Rasmussen files this Class Action Complaint against Tesla, Inc. ("Tesla" or "Defendant") on behalf of himself and all persons worldwide who purchased, owned, used, or leased one or more of Tesla's Model S or X vehicles (the "Class" and "Class Vehicles" as defined herein) for fraudulent misrepresentations and omissions, unlawful and unfair business practices, violations of the federal Computer Fraud and Abuse Act, 18 U.S.C 1030 *et seq.*, violations of California's Comprehensive Computer Data Access and Fraud Act, Cal. Pen. Code § 502, and violations of federal and state warranty and consumer protection laws and other violative acts as alleged herein.

2.    In an August 2, 2006 blog post by Elon Musk, Co-Founder, CEO and now ex-Chairman titled, "The Secret Tesla Motors Master Plan (just between you and me)", Musk describes the business strategy of Tesla which can be described as the emulation of typical technological-product life cycles and initially targeting affluent consumers, and then moving into a larger market and appealing to the masses.

# The Secret Tesla Motors Master Plan (just between you and me)

Elon Musk, Co-Founder & CEO of Tesla Motors   •   August 2, 2006

[1]

3.    Musk then describes Tesla's goals and mission in detail, and concludes with a summary of the "Master Plan" as follows:

---

[1] Musk, Elon, "The Secret Tesla Motors Master Plan (just between you and me)" August 2, 2006, https://www.tesla.com/blog/secret-tesla-motors-master-plan-just-between-you-and-me (last accessed Jul. 29, 2019).

CLASS ACTION COMPLAINT                    1
Case No. 5:19-cv-4596

> into the system than you consume in transportation! **So, in short, the master plan is:**
>
> Build sports car
> Use that money to build an affordable car
> Use *that* money to build an even more affordable car
> While doing above, also provide zero emission electric power generation options
>
> Don't tell anyone.
> _____
>
> Tags:  Environment and Corporate
> SHARE

[2]

4.    The last three words in Tesla's manifesto, "Don't tell anyone", depicts the exact behavior of Tesla and its attitude toward customers worldwide.  Tesla frequently tries to portray itself as the "good guy" and can be seen by the recent events involving its vehicles.  In response to an incident in Hong Kong where a Tesla Model S caught on fire after the batteries ignited, Tesla's official statement to the public was as follows:

> "Tesla battery packs are engineered with a state-of-the-art design so that in the very rare instance a fire does occur, it spreads very slowly and vents heat away from the cabin, alerting occupants that there is an issue and giving them enough time to exit the vehicle. The safety of our customers is our top priority, and if we do identify an issue, we will do whatever is necessary to address it." [3]

5.    Tesla's solution to serving its "top priority" was to include a thermal management safety update, characterized as a "precautionary measure" to "protect the battery and improve [its] longevity."  Tesla further represented that:

---

[2] *Id.*

[3] Alvarez, Simon, "Tesla rolls out improved Model S/X battery thermal management software amid HK fire investigation," Teslarati website, https://www.teslarati.com/tesla-model-s-model-x-battery-longevity-update/ (May 15, 2019) (last accessed Aug. 5, 2019).

""As we continue our investigation of the root cause, out of an abundance of caution, we are revising charge and thermal management settings on Model S and Model X vehicles via an over-the-air software update that will begin rolling out today, to help further protect the battery and improve battery longevity" [4]

6.      What Tesla failed to disclose and has yet to reveal or acknowledge is that the aforementioned software updates to improve "battery longevity" and to "further protect" the battery were all fraudulent and intentional misrepresentations of what the software updates would accomplish.  Under the guise of "safety" and increasing the "longevity" of the batteries of the Class Vehicles, Tesla fraudulently manipulated its software with the intent to avoid its duties and legal obligations to customers to fix, repair, or replace the batteries of the Class Vehicles, all of which Tesla knew were defective, yet failed to inform its customers of the defects.  Tesla failed to inform customers that the software updates would cause significant harm to its customers in terms of reduced range capabilities, longer battery charging times, and overall decrease in the value of the Class Vehicles.  Tesla accomplished this fraud by manipulating its software in at least the following ways:  by placing an artificial, software induced limitation on the total number of usable kilo-watt hours ("kWh") for the Class Vehicles, in other words, limiting the maximum capacity of the Class Vehicles, by limiting the ability of owners of the Class Vehicles to charge the battery cells up to the natural and normal amount of approximately 4.2 volts, by placing a battery capacity limitations, by decreasing the charging speed for the Class Vehicles, and by reducing the performance in terms of speed and other factors for the Class Vehicles.

7.      Tesla cannot be exonerated for its wrongdoing despite claiming and acting under the guise of "safety."  If this were true, Tesla could have informed owners of the Class Vehicles whether their car was at a higher risk of catching on fire and could have

---

[4] *Id.*

CLASS ACTION COMPLAINT                3
Case No. 5:19-cv-4596

1  offered to replace the batteries for the Class Vehicles.  Instead, Tesla has, and continues
2  to, deny the fact that the software updates in question have caused significant harm and
3  damage to customers.  Tesla denies that the software updates had a significant effect on
4  the batteries of the Class Vehicles, and unlawfully expects its customers to foot the bill
5  for a battery replacement.

6       8.    Tesla knew that the batteries of the Class Vehicles were defective, and also
7  pushed out software updates despite knowing that the Class Vehicles would suffer from
8  loss in range and performance.  It is apparent that Tesla's top priority is not the safety of
9  its customers, but really, itself and its intent to avoid providing warranty battery
10  replacements to rightful customers.  Tesla cannot be exonerated from its greed and
11  fraudulent intent, all of which have already harmed, continue to harm, and will continue
12  harming innocent purchasers and consumers nationwide.  Tesla must be held accountable
13  for its actions and should not be allowed to continue acting unchecked and treating its
14  customer base in line with the descriptive title in an April 26, 2013 article by CNN titled
15  "Tesla offers idiot proof warranty", which goes on to explain the warranties that Tesla
16  provides for the batteries of its vehicles. [5]

17       9.    Tesla's treatment of customers seeking warranty repair and more
18  information regarding their vehicles shows that perhaps what Tesla truly thinks of its
19  customers is similar to the title of the article above.  This is further exhibited by Tesla's
20  ability to significantly alter and affect things after sale of its vehicles, such as total range
21  of a vehicle, amongst others, which can lead to a negative impact on the value of an
22  electric vehicle.  Customers are duped by Tesla's fraudulent business practices and
23  Tesla's fraudulent misleading and deceptive marketing and advertisements regarding
24  warranties and safety of the vehicles.  Customers are then further duped after purchase
25  when Tesla fails to recognize the problems caused by its own actions and are then

---

27     [5] CNN, "Tesla offers idiot proof warranty", April 26, 2013
https://money.cnn.com/2013/04/26/autos/tesla-service-gaurantee, (last accessed Jul. 31, 2019).

harmed even further when Tesla shifts blame to its customers instead.  Customers are harmed by Tesla's assurances and warranties and are left completely helpless at the hands of Tesla.  Tesla's ability to directly control, affect, and effectively decrease the value and mileage range of its vehicles *after* they are sold constitutes unfair business practices and violations of state and federal consumer protection and warranty laws.  Punitive and exemplary damages are especially warranted here, where Tesla has acted completely with the intent to avoid its legal obligations and duties to its customers as promised.

10.     To date, Tesla has failed to inform owners of the scope of which vehicles are affected and has failed to repair or remedy the situation it created by "stealing" the battery capacity rightfully owned and paid for by its customers.  Tesla's priorities are clearly not towards customers and purchasers of its Model S and Model X vehicles and also cannot be exonerated by claiming that it needs more time to develop a remedy.

11.     On August 1, 2019, Tesla discovered a problem with a feature on its vehicles called "Dog Mode," which allows owners to leave their pets inside the cars safely and protects them against the risk of overheating and extremely high temperatures.  Less than two days later, Tesla took notice of the issue and apparently went to work immediately. The individual who reported the problem stated the following on Twitter:



Rahul Sood 🦄 ✔
@rahulsood

This #DogMode story went viral fast.  Make no mistake that no other car company would have (or could have) responded as quickly as Tesla did and fix the problem as fast as they did.

Tesla is an amazing company, every other car manufacturer should be worried.

[6]

---

[6] Lambert, Fred, "Tesla starts pushing fix to its 'Dog Mode' in incredible turnaround" August 2, 2019, Electrek, https://electrek.co/2019/08/02/tesla-pushing-fix-dog-mode/ (last visited August 5, 2019).

CLASS ACTION COMPLAINT                        5
Case No. 5:19-cv-4596

12.     Thankfully, there were no animals harmed as a result of Tesla's software malfunction.  As one website dedicated to electric vehicles states:

> "While the problem was potentially dangerous and probably shouldn't have been there in the first place, you have to give it up for Tesla being able to fix it and push the update so fast.
>
> That's the big advantage of Tesla's business model based around over-the-air software updates and a short feedback loop.
>
> It doesn't get much shorter than customers tweeting the CEO, who responded quickly and Tesla's software team pushed the update almost as quickly." [7]

13.     Here, the problem was only "potentially dangerous" and as noted by the author of the article and the Twitter user who reported the malfunction to Mr. Musk, Tesla had acted swiftly in response to the pet-owner's call for distress.  While Tesla may seem to be the "good guy" here, the same cannot be said for the thousands of Tesla owners worldwide who have suffered <u>actual damage</u> whose lives are <u>in actual danger</u> and at risk of their cars igniting on fire and exploding.  While the owner above is correct in stating that no other car manufacturer could have acted so swiftly the way that Tesla did, the same could be said about the fact that Tesla is the first, and currently only, car manufacturer that can sell a car to customers while retaining the ability to later rob them of the car's capabilities, functions, value and performance.  This goes to show the fact that perhaps the top priorities are of a company like Tesla, which prioritizes the development of games and entertainment onboard its vehicles, are not aligned with the the safety of the owners who are at risk of being seriously harmed and who have already suffered from damages.   Not only are the problems alleged herein a low priority for

---

[7] *Id.*

CLASS ACTION COMPLAINT                6
Case No. 5:19-cv-4596

Tesla, it is clear that Tesla has acted with the intent to escape from its duties and legal obligations it has to its customers, with greed and profit being Tesla's only motives.

14.     Despite the fact that there have been over a dozen reports of Tesla's vehicles catching fire over the past six years, with most of the recent fires being unrelated to a crash or auto-collision, Tesla clearly has not made this issue a top priority.  Tesla knew and was aware, of the fact that the software updates would cause significant range loss for the Class Vehicles and has failed to address this issue to date.  Tesla cannot continue to be allowed to operate unchecked as it has, especially where real harm has been done and where actual owners have suffered from damage.

15.     While the technical aspect of Tesla's fraudulent manipulation of its software updates and technical issues regarding lithium-ion batteries may be complex, the scheme and fraud that Tesla perpetuated was motived purely by money and profit and was simple when carried out by Tesla where: (1) Tesla knew or should have known that the batteries of the Class Vehicles were defective; (2) Tesla released software updates under the guise of safety and effectively limited the capacity of the batteries, lowered the charging speeds, and decreased the performance of the vehicles; (3) Tesla denied customers who sought replacement batteries or similar remedies under warranty despite having caused the same problems that its customers complained of; and where Tesla's acts were motivated by an intent to escape its legal duties and obligations to customers in an attempt to save costs.  Tesla's dependence on the "success" of its defective batteries and vehicles is unsurprising at a time where Tesla faces increased competition in the electric-vehicle market and a decrease in the number of sales of its defective vehicles.

16.     While government officials and regulators are already investigating and/or examining Tesla's conduct, [8] it is insufficient to help the owners of Class Vehicles who are forced to choose from at least the following harms, damage, and costs: (1) continue

---

[8]

driving the Class Vehicles where range has been severely impacted by a loss of anywhere between 20-40 miles, spend more time charging their vehicles which increases costs and severe inconveniences to their daily travel and commutes; or (2) pay out-of-pocket monies for a replacement battery from Tesla (approximately $20,000 - $25,000 as of the date of filing) and not knowing whether or when their vehicles will be at risk of suffering from Tesla's nefarious and harmful software "updates"; or (3) expend time and costs to go through Tesla's warranty arbitration program, only to be told that the problems that they are experiencing are not under warranty, despite relying upon Tesla's representations of Tesla having the best warranty program in the world: or (4) purchasing a new vehicle and when attempting to trade-in or sell their current Tesla vehicle to do so, suffer from the significant loss in value that their vehicles suffer from due to the loss in range as a result of Tesla's software "updates."

17.     Plaintiff David Rasmussen brings this action individually and on behalf of the proposed classes, and all others similarly situated who are owners of Tesla Model S and X vehicles against Defendant Tesla, Inc. ("Tesla").  Plaintiff seeks damages, injunctive relief, and equitable relief for Tesla's conduct in connection with software updates and the batteries in Tesla's all-electric, battery-powered vehicles.  Tesla's ability to issue over-the-air software updates is unique and, for the right reasons, may be used as a tool to benefit Tesla owners.  However, the problem here is that when this ability is unchecked, unregulated, and conducted in a manner to avoid legal duties and obligations as Tesla does with its warranties, customers like Plaintiff and other members of the putative class are at the short end of the stick and are left helpless and will continue to be harmed by companies like Tesla that operate on the belief that "not telling anyone" is good company policy.

18.     Specifically, Tesla has violated federal and state laws, which include the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*) ("CFAA"), California's Comprehensive Computer Data Access and Fraud Act (Cal. Pen. Code § 502 *et seq.*)

(CCCDAF), Magnuson-Moss Warranty Act (15 U.S.C. § 2301, et seq. ("MMWA"); California's Song-Beverly Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code § 1780 *et seq*.; California's Unfair Competition Law (Cal. Bus. Prof. Code Section 17200 et seq.) ("UCL"); California's Consumer's Legal Remedies Act (Cal. Civ Code Section 1750 *et seq*.) ("CLRA"), California's Unfair Competition Law (Cal. Bus. Prof. Code Section 17200 *et seq*.) ("UCL"); California's False Advertising Law (Bus. & Prof. Code § 17500 *et seq*. ("FAL"); breach of express warranty, breach of implied warranty, intentional misrepresentation; negligent misrepresentation; common law fraud; fraud by concealment, trespass to chattels, conversion and violation of consumer protection and warranty laws nationwide.

19.    Plaintiff seeks, at his election and for that of the putative class members: replacement batteries for the Class Vehicles, return of the money premiums that were paid for cars that were supposedly capable of achieving the rated miles as Tesla represented, calculated at a certain dollar per kilo-watt hour (kWh), refunds to consumers that paid extra for what they should have received to begin with, and any other relief available to Plaintiff and the proposed classes.  Plaintiff also seeks punitive and exemplary damages for Tesla's knowing fraud and unfair business practices, including illicit use of software updates to avoid the legal obligations and duties owed to Plaintiff, the proposed classes, and consumers nationwide.

20.    Tesla has been operating unchecked at the expense of customers like Plaintiff and the other putative class members for too long.  Tesla must be held accountable for its duties and legal obligations that it owes to its customers and cannot be left off the hook for doing what is similarly alleged against companies operating in the technology industry.  As alleged herein, Tesla has committed the same type of fraud involved in those cases and has committed what should be referred to as the "battery-gate" of the automotive industry.

## II.   PARTIES

21.     Plaintiff David Rasmussen ("Plaintiff") is an individual who was, and is at all times relevant herein, a resident of Victorville, California.  Plaintiff owns a 2014 Tesla Model S 85 bearing the vehicle identification number 5YJSA1H15EFP51614.

22.     Plaintiff purchased his Model S 85 as a used vehicle from a private third-party seller.  At the time of sale, his Model S had approximately 32,700 miles on the odometer, and currently has approximately 137,000 miles.  Plaintiff is, and was at all relevant times herein, a legal, subsequent purchaser and therefore is a rightful owner of a Tesla Model S vehicle, for which all rights and warranties are were transferable and therefore applicable to him.

23.     Plaintiff has been directly harmed by Tesla's software updates and subsequent fraudulent acts as alleged and described in this complaint because (1) he was wrongfully and fraudulently denied a warranty battery replacement; (2) he has suffered harm in the form of calculable lost value after Tesla's actions reduced the maximum battery capacity of his car by approximately 8 kWh; (3) he has suffered from a decrease in range which adds extra time spent charging and more time to his daily commute; (4) continues to be at-risk of harm due to Tesla's ability to manipulate its software to the detriment of Plaintiff and other consumers; and (5) he has not been informed or advised by Tesla of the defective nature of the batteries in his vehicle, nor has Tesla offered any information with regards to the safety of continued operation of his vehicle.  This harm has been suffered as a direct result of Tesla's underlying motive and intent to escape its legal duties and obligations to Plaintiff and other members of the putative class.  Furthermore, Tesla operates under the guise of "safety" for customers yet fails to recognize the harm that has been affected to owners of its vehicles.  In addition to Tesla's attempt to escape its legal obligations and duties owed to customers as warrantied, Tesla refuses to provide information in relation to the recent battery fires and fails to notify owners of vehicles that are potentially affected of the same.

24.     Defendant Tesla, Inc. d/b/a/ Tesla Motors, Inc. is a Delaware corporation, with its principal place of business in Palo Alto, California.  Tesla is an auto manufacturer of electric vehicles and designs, manufacturers, markets, distributes, and sells exclusively electric vehicles.  Since 2012, Defendant Tesla designed, manufactured, distributed, marketed and sold the Tesla Model S electric vehicle ("Model S") and, later, the Tesla Model X ("Model X") in the United States and with a large concentration of both vehicles being sold in the State of California.

25.     Tesla also regularly conducts business throughout the State of California and owns and operates a system of company-owned dealerships and service centers within the jurisdiction of this Court.  On information and belief, through Tesla's publicly filed financial reports and its website, Tesla's design, testing, and manufacturing of its vehicles, including the Class Vehicles at its headquarters in California and throughout the State of California.  Tesla's advertising, promotional materials, and website are designed to show the operation of various Tesla vehicles in a manner which emanates that its vehicles are from California.  Tesla also utilizes promotional videos which are purporting to show the operation of Model S, X and other Tesla vehicles being operated and driven in California.

26.     Tesla's authorized dealerships are tightly and highly controlled by Tesla and are structured as agents of Tesla.  Tesla controls the marketing practices of Tesla-authorized dealerships, Tesla repair and service facilities, and has full rein over the appearance of these purported dealerships and service centers.  Tesla's control of its dealerships emanates primarily from its headquarters in California.

27.     At all times relevant to this action, Tesla, marketed, distributed, advertised, leased, sold, and warranted its vehicles, including the Class Vehicles by and through its dealerships and service centers located nationwide with many of them located in California.

/ / /

CLASS ACTION COMPLAINT
Case No. 5:19-cv-4596

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   JURISDICTION

28.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims of Plaintiff and the Class involve violations of federal laws, including the Computer Abuse and Fraud Act, 18 U.S.C. § 1030 *et seq.* and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 *et seq.*  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all of the claims alleged herein form part of the same case or controversy.

29.    This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a)(1), (d)(1), (d)(2), and (d)(3) because the proposed classes consist of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exist.  Tesla produced over 14,500 Model S and X vehicles in Q2 2019 and delivered 17,722 of these vehicles in the same quarter.[9]  Including the number of deliveries of Tesla's Model 3 vehicles, Tesla delivered 95,356 vehicles and produced 87,048 which surpassed the companies own records.[10]

30.    This Court has both specific and general personal jurisdiction over Defendant Tesla because it maintains minimum contacts with the United States, this judicial district, and this state.  Tesla purposefully availed itself of the laws of this state by conducting a substantial amount of its business in the state, including designing, testing, manufacturing, and/or distributing Tesla vehicles, including the Class vehicles, in this state.  Tesla also developed, prepared, and disseminated warranty materials for the Class Vehicles within and from its headquarters in this state and specifically within this judicial district.  Thousands of Class Vehicles were sold, leased, and delivered at various

---

[9] Tesla, "Second Quarter 2019 Update", https://tesla.gcs-web.com/static-files/1e70a30c-20a7-48b3-a1f6-696a7c517959 (last visited Jul. 25, 2019).
[10]       *Id.*

CLASS ACTION COMPLAINT                    12
Case No. 5:19-cv-4596

Tesla showroom and service center locations throughout this state, and this judicial district.

## IV.   VENUE

31.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.  Furthermore, Tesla's principal place of business in in this judicial district, and it is believed, and therefore alleged, that a substantial amount of the conduct of which Plaintiff's complaint is based upon comes as a result of Tesla's acts that occurred in this judicial district.  Additionally, the San Jose division of this Court is the proper division for filing given the fact that Tesla's headquarters is in Palo Alto, California.

## V.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.    Tesla Literally Catches on Fire Worldwide

32.     On June 16, 2018, the battery pack of a Tesla Model S caught on fire in Los Angeles, CA while the owner was sitting traffic.



[11]

---

[11] *See* Electrek, "Tesla says battery fire without crash in LA was 'extraordinarily unusual occurrence', still investigating the cause", September 5, 2018, https://electrek.co/2018/09/05/tesla-battery-fire-la-without-crash/, (last visited July 28, 2019).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

33.    Tesla's public statement following investigation was that the fire was an "extraordinarily unusual occurrence" amongst further reassurances that Tesla vehicles are "10 times less likely to catch on fire" than its gas-powered counterparts.[12]  Despite representing to the public that the fire in Los Angeles was extraordinary, at least three separate fires involving Tesla Model S vehicles sparked worldwide.

34.    On April 21, 2019, a Tesla Model S vehicle was caught on video bursting flames while parked in a garage in Shanghai, China.



[13]

35.    After the smoke cleared in Shanghai, Tesla announced its preliminary finding that the source of the fire was a single battery module located at the front of the

---

[12] *Id.*
[13] *See* Electrek, "Tesla gives updates on cause of a battery fire, says single module is responsible", https://electrek.co/2019/06/28/tesla-updates-cause-shanghai-battery-fire/ (last visited Jul. 25, 2019).

vehicle.  A Tesla Model S battery "pack" contains 16 battery modules similar to one below:



[14]

36.    Just after midnight on May 3, 2019, firefighters in San Francisco responded to reports of a residential home garage fire.  Responding firefighters reported that a Tesla Model S was parked in the garage, unplugged, and saw smoke coming out from near the right rear tire area of the car.



[15]

---

[14] *Id.*

[15] ABC 7 San Francisco, "Tesla Model S catches fire in San Francisco Garage" May 3, 2019, https://abc7news.com/automotive/tesla-model-s-catches-fire-in-sf-garage/5283936/, (last accessed July 29, 2019).

37.     Just two weeks later, authorities in Hong Kong reported that a Tesla Model S vehicle suddenly caught fire in the parking garage of a shopping mall.  Authorities reported that the car was parked for about half an hour before the battery began to emit smoke and then eventually the car burst into flames, which took firefighters over 45 minutes to contain. [16]

38.     The most recent case of a Tesla catching fire occurred on July 30, 2019 in Ratingen, Germany.  Similar to the other recent incidents of Tesla's catching on fire, the Model S in question was not occupied and started to catch on fire after a loud bang was heard.[17]


[18]

---

[16] Bloomberg, "Tesla Suddenly Catches Fire in Hong Kong Parking Lot, Times Says" May 13, 2019, updated May 14, 2019, https://www.bloomberg.com/news/articles/2019-05-14/tesla-suddenly-catches-fire-in-hong-kong-parking-lot-times-says, (last accessed Jul. 29, 2019).
[17] Supertipp, "Cause of fire unclear: Tesla goes up in flames", https://www.supertipp-online.de/2019/07/30/brandursache-unklar-tesla-geht-in-flammen-auf/ (last accessed Aug 5. 2019).
[18] *Id.*

39.     To date, Tesla has failed to provide its customers with any further information regarding the cause of these fires and has failed to inform customers as to which vehicles are potentially at risk of catching fire.

**B.      Tesla's Solution to the Fires – Software Updates**

40.     Those who are familiar with Tesla cars are most likely aware of the fact that Tesla routinely updates its cars by pushing out over-the-air software updates, just like most are familiar with cell-phone software updates.  Tesla's website displays as follows:

## Software Updates

Our cars regularly receive over-the-air software updates that add new features and enhance existing ones over Wi-Fi.

When updates become available, you'll receive a notification on your center touchscreen display, with the option to install the update immediately or schedule for later. To ensure the fastest and most reliable delivery of software updates, connect your car to Wi-Fi.

[19]

41.     Just like various mobile electronics and cellular phone companies do by sending users updates which can include new features, games, and sometimes provide security updates and technical bug fixes, Tesla does the same for all of the vehicles in its fleet.  In doing so, Tesla claims, markets, advertises, and represents that these software updates are intended to make their cars safer and better as they receive improved capabilities and new functions and features over time.  Tesla represents on its website in the FAQ, or frequently asked questions section, the following:

/ / /

/ / /

/ / /

---

[19] Tesla, "Support – Software Updates", https://www.tesla.com/support/software-updates (last visited July 25, 2019).

CLASS ACTION COMPLAINT                    17
Case No. 5:19-cv-4596

> **Frequently Asked Questions**
>
> **What are over-the-air software updates?**
> Over-the-air software updates introduce new features and updates to your car—making your car safer and more capable over time.

[20]

42.     On May 15, 2019, just under one month after having investigated the Shanghai fire, Tesla issued a software update to all Model S and X cars and informed users that the updates were merely "out of an abundance of caution."  Tesla also provided that the over-the-air software update would change some settings in the cars' battery management software (BMS) that were related to charging and thermal controls.  No further details were provided, which is Tesla's normal protocol when it comes to battery-talk, and as one website stated, "[t]he software of Tesla's battery management system is one of the company's most closely guarded trade secrets." [21]

43.     However, Tesla fraudulent concealed information from Plaintiff and the other putative class members by failing to inform which vehicles are potentially affected, nor did Tesla inform customers that their cars would experience a significant decrease in the total amount of range, and other performance issues.

44.     Tesla's deployment of these software "updates" has significantly affected the use and drastically limited the performance of the Class Vehicles.  Tesla severely limits the maximum amount of battery capacity available in the Class Vehicles, and essentially took away significant value from these vehicles with one tap on the screen.

45.     By issuing the software updates, Tesla operates under the guise of "safety" yet fails to provide customers with any further information relating to whether the continued operation of their vehicles is safe, or whether their vehicles are at risk and potentially life-threatening.

---

[20] *Id.*
[21] *See* The Verge, "Tesla pushes battery software update after recent fires", https://www.theverge.com/2019/5/16/18627746/tesla-fire-battery-software-update-model-s-x (last visited Jul. 25, 2019).

46.     Customers rely on Tesla's representations and advertisements of their vehicles and are left at the mercy of Tesla when it comes to ownership of their vehicles. Plaintiff and other putative class members updated their cars as required by Tesla's warranty.  Plaintiff and other putative class members were unaware of the fact that the software updates would effectively limit the maximum amount of battery capacity available in their cars, which translated into a decrease in the number of miles available, a decrease in performance and decrease in the charging speed of their cars.  All of these limitations were unlawfully, fraudulently, and deceptively delivered to their cars as part of Tesla's so-called software "updates" for said "safety" of their vehicles.

C.     **Tesla's Violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030** *et seq.***)**

47.     The Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030 *et seq.*, establishes a private cause of action against a person who "knowingly accessed a computer without authorization or exceeding authorized access," and whose access results in damage or loss in excess of $5,000.  18 U.S.C. 18 U.S.C. § 1030(g) (referencing 18 U.S.C. § 1030(c)(4)(A)(i)(I)).  Under the CFAA, a computer is defined as one, "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2).

48.     Tesla vehicles are equipped with an onboard computer known as a media control unit, or "MCU", which allows for internet, GPS and Wi-Fi connected capabilities, and serves as the platform for receiving Tesla's software updates.  There are three versions of Tesla's MCU, which consist and are made up of the following:

> "Display – Main Computer Unit (MCU1) S/X
> 17" LCD, 1200 x 1920 resolution
> Nvidia's Visual Computing Module VCM…"

/ / /
/ / /

**Display – Main Computer Unit (MCU1) S/X**

- 17" LCD, 1200 x 1920 resolution
- Nvidia's Visual Computing Module VCM
- Nvidia Tegra 3 quad-core +1 power-saving core
- Cypress MultiTouch controller (press release)
- Reset by pressing center left and center right scroll buttons at the same time on the steering wheel (safe to do anytime)
- Software – Linux, QT and custom Tesla code (PC Word interview)
- Our analysis of 7.0 UI
- Run our MCU1/MCU2 Tester – Run within your Tesla browser by typing: teslatap.com/mcu

**Display – Main Computer Unit (MCU2) S/X, Cars made March-2018+**

- 17" LCD, 1200 x 1920 resolution
- Intel Gordon Peak Board using the Atom E3800 series CPU and Intel Apollo Lake system-on-chip (Electrek & TeslaTap)

[22]

49.     Tesla's MCU's are "computers" under the CFAA by virtue of their data processing and communication functions and their operation in conjunction with Plaintiff and the putative class members' vehicles.  They are used in and affect interstate and foreign commerce and communication by providing key information to Tesla vehicles, including software updates that may affect the safety and improve upon the reliability of the same.

50.     Tesla knowingly and intentionally manipulated its software updates in order to limit the amount of battery capacity and charging speed of its vehicles and did so either without authorization and/or exceeding the authorization of its customers.  Tesla failed to provide any information to its customers regarding the fact that such software updates would lead to a significant reduction in charging speed, performance, and severe loss of range for their vehicles.

51.     Tesla further acted fraudulently and under the guise of "safety" as the reason or the software updates, to the detriment of its customers.  Tesla's violations of the CFAA resulted in a loss of range which equal to a loss in value for the Class Vehicles.

52.     By issuing the range-reducing and battery capacity-limiting software updates to the vehicles owned by Plaintiff and the other putative class members, Tesla also

---

22 Tesla Tap, "List of Undocumented Technical Aspects to Model S, X, and 3 Vehicles", https://teslatap.com/undocumented/ (last accessed Aug. 8, 2019).

violated California's Computer Crime Law, Cal. Pen. Code § 502 *et seq.*, which prohibits similar behavior as provided by its federal counterpart.

53.     Plaintiff and the putative class members owned their vehicles and possessed the right to use them without interference by Tesla.  However, by limiting the range of their vehicles and reducing the charging speed and performance of their vehicles, Tesla has inflicted damages to Plaintiff and the putative class members in the form of substantially reducing the value of their cars.

54.     Plaintiff and the putative class members have no choice but to abide by Tesla's commands and are forced to accept Tesla's software updates or risk losing the ability to receive warranty repair from Tesla.  Plaintiff and the putative class members would not have paid as much as they did for their cars, or would have paid significantly less for their cars had they known that Tesla would introduce range and battery capacity-limiting software that would significantly and severely impact the value and function of their cars after purchase.

**D.     Tesla Throttles Battery Charging Speeds and Manipulates Range Calculations**

55.     Upon information and belief, and by and through the further investigation of Plaintiff and counsel for Plaintiff, Tesla uses various formulas to determine what the rated mileage range for its vehicles should be.  Upon information and belief, Tesla has used a calculation of 295 watt-hours/mile for all Model S 85 RWD vehicles, multiplied by the total amount of usable battery capacity to determine what the total number of rated miles are.

56.     The relationship between rated range and battery capacity in kWh is well-known in the community to be a <u>fixed constant multiplier</u> of 295wh/mi (for Model S 85 kWh RWD cars) and is not related in any way to how the car is driven or the environment.  Upon information and belief, this fixed constant multiplier is what Tesla used or uses to determine the estimated mileage ratings for its vehicles.  This fixed

constant variable is relied upon when calculating the EPA range estimates that Tesla prominently advertises, represents, and displays to consumers, and can be seen as displayed on the "Moroney Label" that is displayed on new vehicles for sale.

57.     Upon information and belief, Tesla has lowered the number for the fixed constant variable, which has the practical effect of giving the illusion that more miles are available.  Customers like Plaintiff and the other putative class members relied upon the number of miles that Tesla represented to them.  However, what they didn't know after purchasing the Class Vehicles is that Tesla has the ability to manipulate the number that was used to calculate mileage in order to avoid having to provide warranty battery replacements.

58.     Upon further information and belief, Tesla fraudulently and unlawfully manipulated and pushed out a software update prior to February 2019 (actual update date is unknown at this time), which contained changes to the battery management system software, by replacing the variable previously used for energy consumption, or, 295 Wh/mi.  Upon further information and belief, the energy consumption constant was reduced to 276 Wh/mi, for subject vehicles which in effect, would artificially increase the number of rated miles displayed for Plaintiff's car.[23]

59.     Upon information and belief, and by and through the further investigation by Plaintiff and counsel for Plaintiff, Tesla has used this 295Wh/mi constant to determine the numbers it provides to the Environmental Protection Agency (EPA) and has also used this variable to calculate the fleet-wide average of maximum rated mileage. This fixed constant variable was also used to determine the EPA's estimated mileage rating of 265 miles of rated range.  The Tesla Model S 85 is advertised as an "85 battery", however, it is widely and publicly known that the Model S 85 consists of a battery pack that contains

---

[23] This determination was made by use of a third-party application that can directly read the BMS data directly from the car. It is believed that this information is identical to the information available only to service technicians at Tesla Service Centers.

1    approximately 81 kWh, with only 78.1 kWh available and usable for powering the
2    vehicle.

3        60.    Upon investigation of Plaintiff and Plaintiff's counsel it has become
4    apparent that Tesla has fraudulently and/or deceptively lowered the fixed constant
5    variable and now uses a lower watt-hour/mi variable rate a lower watt-hour/mi variable
6    rate.  The practical effect of doing so means that the total number of miles in terms of
7    maximum range for Plaintiff's car will display a higher number.  If Tesla had used the
8    same fixed variable rate of 295 Wh/mi, then Plaintiff's car would then be calculated as
9    having approximately 204 rated miles.   Instead, Tesla fraudulently and unlawfully
10   lowered this fixed variable number in order to give the illusion that Plaintiff's car had
11   more miles at maximum range.  Doing so gives Tesla the excuse to avoid its duty and
12   legal obligations to replace the battery of Plaintiff's vehicle, as well as other members of
13   the putative classes.

14       61.    Tesla attempts to further escape from its legal obligations by using confusing
15   terms and relies on terms such as "Rated Miles" or "Rated Range", when the actual term
16   that Tesla should be using is Battery Capacity calculated by the kilowatt-hour (kWh).
17   Tesla does not display the amount of battery capacity kWh on any user information
18   display available on the vehicle.  Owners are only given access to the displayed
19   percentage and rated range as displayed on the vehicle display.

20       62.    Using this data obtained from multiple Tesla Model S 85 vehicles it is clear
21   that the battery in Plaintiff's vehicle and Class Vehicles display their rated Range based
22   on the BMS reporting the Nominal Remaining kWh minus the Battery Brick Buffer (4
23   kWh) divided by the discovered constant of 276 Wh/mile. This calculation has proved
24   consistent with multiple vehicles.

25       63.    Upon information and belief, and by investigation of Plaintiff and Plaintiff's
26   counsel, Tesla manipulated the software to limit the maximum amount of battery capacity
27   available, thereby limited the ability for the Class Vehicles to charge fully.  Thus, the

28

CLASS ACTION COMPLAINT          23
Case No. 5:19-cv-4596

Class Vehicles are unable to reach a full state of charge, which under normal conditions, is approximately 4.2 volts per battery cell (402 volts for the entire battery pack).

64.     Upon further information and belief, Tesla reduced the ability to charge these battery cells and as a result, the batteries are only capable of charging up to 4.1 volts or less.  In other words, Plaintiff and the other putative class members are only able to charge their batteries to approximately 85% to 90%.  This translates into a decrease in the number of miles available, due to the fact that the batteries are limited by software and prevented from charging to their full capacity.

**E.     Tesla Knew and Was Fully Aware of the Problems and Cause of Potential Fires**

65.     In a July 24, 2017 article published by Electrek titled "Tesla strangely starts delivering new 85 kWh battery packs software-locked at 75 kWh," the author goes on to report that Tesla had begun delivering new Model S 75 and Model X 75 vehicles. Tesla's Model S 75 and Model X 75 vehicles were previously all equipped with Tesla's base 75 kWh battery pack.  The article notes however, that the new "75" vehicle models were equipped with 85 kWh battery packs.

66.     Tesla knew of the potential problems with its batteries and recognized these issues without informing the public or its customers.  As the article states, "[w]hat is particularly strange is that the automaker is not listing the new battery pack as an available option for Model S or Model X nor is it offering it as an upgradeable option who receive the new pack, who are currently left in the dark."  Tesla did not, and has not come forth with an official comment regarding this change and practice of equipping cars with a higher-than advertised battery pack.

67.     The fact is that Tesla was aware of the fact that its customers and owners fully expected to be able to charge to the maximum battery capacity as paid for. However, Tesla realized the mistakes it had made by fraudulently advertising and selling

to Plaintiff and the putative class members cars that could not be safely charged to the maximum battery capacity.

68.     Tesla's failure to inform its customers and the general public and reason it has yet to come forth with an official comment is simple, it did not want to admit to the fact that it had sold a defective product to its customers that would be unable to achieve or operate as sold and intended for use by Plaintiff and the putative class members. Instead of coming clean with the general public, Plaintiff, and the putative class members by informing them about the potential risk of their vehicles catching on fire, Tesla decided to withhold this information and also chose to go behind the backs of its customers and use software updates and throttling of the battery to avoid liability.

69.     Tesla continues to deny facts that it already knows to be true and cannot continue to operate under the same shroud of secrecy.  Tesla has previously used its software updates to enhance and improve the Class Vehicles.  However, it cannot continue to do so under the guise of safety where it has been unjustly enriched and received monetary benefit in exchange of the harm suffered by Plaintiff and the other putative class members.  Despite having known of the potential risk and problems that would certainly arise, Tesla attempts to continue fraudulently concealing this information and is clearly motivated by greed and supported by a reckless neglect of its customers.

**F.     Tesla Previously Profited by Selling What It Now Claims as "Insignificant" In Value**

70.     As a result of Tesla's improper and fraudulent methods of calculating, Plaintiff has suffered in at least the following ways: (1) Plaintiff's daily commute has been substantially and significantly affected by Tesla's fraudulent concealment and manipulation of software to the point that Plaintiff is no longer able to drive his car prior to the updates and would be forced to pay out-of-pocket costs for items that should have been replaced under warranty but for Tesla's deceptive acts and unfair business practices; and as warrantied.

71.     Tesla refers to an 8 kWh decrease in battery capacity as a minor and insignificant amount, yet, hypocritically, offers its customers the ability to increase the battery capacities of certain vehicles within Tesla's fleet.  Customers have paid anywhere between $2000 - $10,000 in order to add approximately 10 kWh of increased battery capacity.[24]  What Tesla brushes off as insignificant here, it charges consumers a premium to add the same for their cars.  The following display shows the option for some Model S vehicles with 70 kWh batteries to upgrade to 75 kWh on Tesla's website:



[25]

72.     Plaintiff's car experienced a decrease of approximately 8 kWh in the amount of usable battery kWh capacity in less than two weeks, directly as a result of Tesla's software updates.  Despite the fact that Tesla profits from customers by offering battery capacity upgrades, Plaintiff was told that the amount of lost battery capacity he suffered was not significant.

73.     On Tesla's failure to provide a proper remedy in the form of a warranty battery replacement despite making a large profit from consumers indicates Tesla's culpability for the conduct, for which an award of punitive and exemplary damages is warranted.

---

[24] InsideEVs, "Tesla Now Offers Model S 60 kWh To 75 kWh Upgrade For Only $2,000", https://insideevs.com/news/333892/tesla-now-offers-model-s-60-kwh-to-75-kwh-upgrade-for-only-2000/, April 17, 2017 (last accessed July 31, 2019.

G.     Tesla's Manipulates Its Software to Avoid Replacing Batteries and to Escape Its Warranty Obligations

74.     Upon close examination of the data available on Plaintiff's vehicle and the warranty replacement criteria as disclosed by Tesla's service team, Tesla violates state and federal law warranty statutes and engages in fraudulent and deceptive behavior by manipulating the software for its vehicles.  Tesla knew, or should have known, that the software updates issued to Plaintiff and the other putative class members' vehicles would suffer from significant range loss.  Tesla achieves this by, manipulating the calculations for total amount of range that is available.

75.     That the Class Vehicles had suffered from significant range loss.  Rated Range calculation so as to avoid replacing batteries under warranty. Tesla represents through its service technicians that warranty replacements would be available. Tesla technician shared that warranty replacement would be available if the subject vehicle's battery has degraded at least 10% beyond the fleet-wide average degradation for similar battery module at the same mileage. The technician stated that Plaintiff's vehicle has battery type "14" and that the original rated range was 265 miles at 295 Wh/mi and that the current fleet-wide average for this battery at about 135,000 miles was 231 miles at 295 Wh/mi. The technician also reported that Plaintiff's vehicle showed 217 miles rated range.

76.     Had Tesla been using the same constant for all three of the ranges then this would be fair. However, Tesla has changed the constant variable and now uses the 276 Wh/mi rate, which results in a substantial over-inflation of mileage.  Plaintiff realized that his rated range prior to May 13, 2019 of 247 miles (at 276 Wh/mi) is the same as the 231 miles stated as fleet-wide average when using 295 Wh/mi (247*276 = 231*295). Both calculations represent a usable capacity of about 68.2 kWh. Thus, the fleet-wide average degradation is approximately 13% (100-(231 miles/265 miles)) after almost 5 years and 135,000 miles.

77.     Based upon the investigation of Plaintiff and Plaintiff's counsel, it is believed that by using these calculations and directly reading the data from the BMS, that Plaintiff's battery has approximately 204 rate miles (at 296 Wh/mile), or 60.2 kWh of usable battery capacity for his vehicle.  This amounts to approximately 23% total degradation, or 12% below the fleet-wide average for like vehicles based on Tesla's representations.

78.     Tesla's practice of using misrepresented current rated range knowingly and deceptively places Plaintiff's vehicle and the vehicles of other putative class members outside of the warranty replacement requirements.

79.     Plaintiff and every single member in the putative classes are deceived by Tesla into believing that their battery degradation is much less than what has actually occurred by Tesla's deceptive practice of not showing the battery capacity in kWh. Plaintiff believed prior to May 13, 2019 that his vehicle's battery had only degraded by 7% (100-(247/265)). This under stated degradation has been presented in the media and falls in line with "Tesla battery degradation at less than 10% after over 160,000 miles, according to latest data" and Tesla has never publicly refuted such claims.

80.     If Plaintiff were to purchase a replacement battery from Tesla to restore the plaintiff's vehicle to its full functionality and usability the price would be approximately $20,0000.  Tesla has acted fraudulently and attempts to shift the burden of these costs and label them as out-of-warranty.  Plaintiff and other putative class members are left helpless as Tesla sits in the ultimate bargaining position as it has absolute reign over the warranty process and ability to control the variables that are relied upon in determining warranty coverage.  Tesla is capable of manipulating its software via updates and can preempt any type of claim for warranty repair.

81.     While Tesla has operated and continues to operate under the guise of "promoting battery longevity" and safety of the Class Vehicles, it is clear that what Tesla

is really trying to do is to avoid its duties and legal obligations to Plaintiff and the putative class.  Tesla's ability to issue software updates and manipulate software without recognizing and reimbursing consumers for lost range and lost value of the vehicles is the culmination of Tesla's ability to operate unchecked for so long.  Plaintiff and other putative class members are left holding the bag and are harmed by Tesla's deceptive business practices and fraudulent acts.

82.    Additionally, Tesla represents that its vehicles are safe, but Tesla has failed to provide any viable information to the public regarding the exact details of the recent car fires.  Tesla owes a duty to its customers to disclose any material information regarding the cause of the recent vehicle fires and provide information to owners of the potentially fatal vehicles.

83.    The fact is that Plaintiff and the putative class members have now been harmed because they have experienced a significant and real monetary loss of value with their vehicles.  As alleged herein, Tesla has reaped the profits by using the same logic that it now chooses to ignore when it comes time to return the loss in value that consumers now suffer from.

**H.    Tesla Owners Have No Choice but To Accept Software Updates**

84.    In order to be eligible for warranty repair and coverage for Tesla's vehicles, Tesla owners must update their vehicles regularly, and are unable to operate their vehicles without Tesla's software because they do not work as they are intended without the same.

85.    Though Tesla owners may have the choice to deny software updates, or at the very least, postpone the installation and commencement of such, customers are essentially left helpless based on Tesla's demand and imposition of terms that require owners to comply with Tesla's software updates.

86.    Consumers must use Tesla's operating system and accept Tesla's software updates if they do not want to risk voiding the warranties that are provided with their

vehicles.  Thus, the terms of Tesla's warranties and motor vehicle purchase agreements are part of the benefit of Plaintiff's and the other putative class members' bargains when purchasing Tesla's vehicles to the extent they apply.

87.    Consumers like Plaintiff and the other putative class members expect that their cars will operate as advertised and intended upon purchase of the same.

88.    Tesla's Motor Vehicle Purchase Agreement and New and Used Car Limited Warranties include Tesla's attempts to disclaim certain warranties, and makes the terms and language of such one-sided, fails to allow consumers to negotiate separate terms, are unconscionable contracts of adhesion, and essentially render the vehicles incapable of operation – and from functioning up to the standards of the vehicles as they were intended and marketed to be used.

89.    Along with Tesla's battery capacity limiting software updates, the limitations period in Tesla's warranties for the vehicles prevented consumers from discovering, or making any claim for any defects regarding the vehicles' batteries within the applicable and unenforceable limitations period, even with the use of diligence, as Tesla is in the exclusive control of information regarding its proprietary software and the batteries of its vehicles.

90.    Any limitations period in the agreements and warranties from Tesla are thus unconscionable and unenforceable to the extent they are used to deny consumers of lawful and rightful warranty repair, remedy, or replacements.

91.    Any attempts by Tesla to limit liability for its software updates is also unconscionable and unenforceable as Tesla's software updates are necessary in order for consumers to continue the use of their vehicles while still maintaining the full realization and benefit of the consumers' bargains.

I.    **Plaintiff David Rasmussen's Experience**

92.    Prior to Tesla May 16, 2019 update, Plaintiff David Rasmussen was familiar with Tesla's unique software update capabilities and relied on his Model S 85 as a daily

driver for his lengthy 250+ mile commute from his home in Victorville, California to his workplace in Carlsbad, California.

93.    Plaintiff recorded information between June 2017 to July 2019 which consists of the amount available rated range miles on the y axis, and the x axis indicating time and actual vehicle mileage.



[26]

26 Rasmussen, David, Various Data Points from 2014 Tesla Model S 85 bearing the vehicle identification number 5YJSA1H15EFP51614"

94.     The chart above illustrates the number of miles available at an estimated 100% battery range and at a 100% state of charge for Plaintiff's Model S between June 2017 to July 2019. [27]

95.     The graph displays what has been considered normal battery degradation by the plaintiff until the drops labeled as 2019.16.1.1 and 2019.16.2. The drops correspond with Tesla's over-the-air software updates bearing those designations.  Between January 2, 2019 to May 13, 2019, Plaintiff's Model S was averaging approximately 247 rated miles at a full 100% battery charge.  After the set of software updates was pushed through to Plaintiff's vehicle, the maximum available rated mile range dropped to approximately 235 miles, and then further down to 217 miles.  To date, the maximum number of rated miles for Plaintiff's car when at a full 100% state of charge has remained at approximately 217 miles.

96.     Prior to and after purchasing his vehicle, Plaintiff understood the basic concepts surrounding battery-powered electric vehicles, which included the comprehension that lithium-ion batteries, such as the ones that are used to power Tesla vehicles, will certainly lose some power over time.  Plaintiff understood this as consistent with the wording in Tesla's Battery and Drive Unit Limited Warranty which stated:

> "The Battery, like all lithium-ion batteries, will experience gradual energy or power loss with time and use.  Loss of Battery energy or power over time due to or resulting from Battery usage is NOT covered under this Battery and Drive Unit Limited Warranty."[28]

---

[27] Rasmussen, David, "Data collected between June 2017 through July 2019" (Green dots on graph indicating Tesla Software Updates 2019.16.1.1 and 2019.16.2) (x-axis indicates mileage on odometer, y-axis indicates maximum available rated miles with top line at 265).

[28] Tesla New Vehicle Limited Warranty https://www.tesla.com/sites/default/files/pdfs/Model_S_New_Vehicle_Limited_Warranty_201602_en_NA.pdf (last accessed Aug. 7, 2019)

97.     Plaintiff's vehicle suffered a drop in both battery energy and power *overnight,* directly as a result of the two software updates from Tesla.  As the graph above illustrates, the battery degradation that Plaintiff experienced was neither "gradual" nor was it a loss of energy or power due to "time and use."  This loss of battery energy *and* power was due solely to the software updates from Tesla.

98.     Although Plaintiff had purchased the car as a used vehicle from a private third-party seller, he knew that his 2014 Model S 85 would be taken care of by Tesla after conducting research about the company and its cars.  Plaintiff had seen various marketing ads and relied upon the representations made by Tesla's ex-chairman, Elon Musk. Plaintiff reasonably relied upon Tesla marketing materials, news websites, and online group forums like www.teslamotorsclub.com, a website that consists of a large online community and gathering of Tesla owners and fanatics alike, who connect with each other to discuss all things Tesla. [29]

99.     After researching more about the vehicles offered by Tesla, Plaintiff learned that Tesla had given what was called the "Tesla Infinite Mile Warranty" to  As Tesla represented and displayed on their website, the warranty would include an 8-year, infinite mile warranty as to the battery pack and drive train of Tesla's Model S 85kWh vehicles. In addition, the warranty would apply to all models produced in the future and would apply retroactively to all prior models that were already produced at the time.[30]  These promises were displayed on Tesla's website as follows:

---

[29] Tesla Motors Club (TMC), "About Us - Formed in 2006, Tesla Motors Club (TMC) was the first independent online Tesla community. Today it remains the largest and most dynamic community of Tesla enthusiasts", www.teslamotorsclub.com/tmc/ (last visited July 28, 2019).

[30] *See* Tesla, "Infinite Mile Warranty" (Aug. 15, 2014), https://www.tesla.com/blog/infinite-mile-warranty (last visited July 16, 2019).

1

2

3

4

5

6

7

8

9

10

11

12

13



# Infinite Mile Warranty

Elon Musk, CEO  •
August 15, 2014

The Tesla Model S drive unit warranty has been increased to match that of the battery pack. That means the 85 kWh Model S, our most popular model by far, now has an 8 year, infinite mile warranty on both the battery pack and drive unit. There is also no limit on the number of owners during the warranty period.

Moreover, the warranty extension will apply retroactively to all Model S vehicles ever produced. In hindsight, this should have been our policy from the beginning of the Model S program. If we truly believe that electric motors are fundamentally more reliable than gasoline engines, with far fewer moving parts and no oily residue or combustion byproducts to gum up the works, then our warranty policy should reflect that.

To investors in Tesla, I must acknowledge that this will have a moderately negative effect on Tesla earnings in the short term, as our warranty reserves will necessarily have to increase above current levels. This is amplified by the fact that we are doing so retroactively, not just for new customers. However, by doing the right thing for Tesla vehicle owners at this early stage of our company, I am confident that it will work out well in the long term.

– Elon

[31]

14

15

16

17

18

19

    100.   Plaintiff also found records of other Model S owners who reported degradation at various stages of use showing that typical degradation to be 5% in the first year and 1-2% for subsequent years. This collected information shows the actual numbers in real life of batteries in excess of 250,000 miles of use. Plaintiff used this information, which Tesla has never publicly discredited, along with other available information on the web in making his purchase decision.[32]

20

21

22

23

24

    101.   Plaintiff had initially considered purchasing a used, certified pre-owned Model S directly from Tesla, as he had believed that doing so would provide him with the best warranty coverage.  However, after seeing marketing materials and advertisements online regarding Tesla's warranty program, Plaintiff relied upon Tesla's representations that his car would be taken care of by Tesla under warranty.  Consumers like Plaintiff and

25

26

27

[31] *Id.*

28

CLASS ACTION COMPLAINT        34
Case No. 5:19-cv-4596

other putative class members relied upon statements like these made by Tesla, such as the "Worlds-Best Warranty Program" and the "Infinite-Mile Warranty."

102.   Furthermore, consumers like Plaintiff and the other putative class members found themselves unable to resist to Tesla's empty promises, false advertisements, and deceptive marketing strategies.  Plaintiff and the putative class members purchased these vehicles with what they thought were all covered under warranty by Tesla.  This would naturally include the batteries of these vehicles.

103.   As mentioned herein, Tesla has maintained and continues to maintain the position that the information it possesses with regards to the batteries is highly top-secret and proprietary trade information.  In fact, Tesla maintains the exclusive rights to this information as indicated in the warranty language below:

> "The Tesla lithium-ion battery (the "Battery") and Drive Unit are extremely sophisticated powertrain components designed to withstand extreme driving conditions. You can rest easy knowing that Tesla's state-of-the-art Battery and Drive Unit are backed by this Battery and Drive Unit Limited Warranty, which covers the repair or replacement of any malfunctioning or defective Battery or Drive Unit…" [33]

104.   Tesla's statements regarding the full-inspection, vehicle, and battery warranties were empty promises to induce consumers to purchase Tesla's vehicles. Rather than perform under the warranties that it provides to its vehicles, Tesla relies upon the very same language that is used to market its "state-of-the-art" batteries, as an excuse to deny proper warranty repairs and battery replacements.

/ / /

/ / /

/ / /

---

[33] Tesla,  "New Vehicle Limited Warranty" https://www.tesla.com/sites/default/files/pdfs/Model_S_New_Vehicle_Limited_Warranty_201602_en_NA.pdf, (last accessed and downloaded Aug. 7, 2019).

**J.    Plaintiff Rasmussen is Denied a Warranty Battery Replacement**

105.    On May 15, 2019, Plaintiff successfully installed the May 15, 2019 software update, version 2019.16.1.1 and on May 29, 2019 version 2019.16.2 was pushed through as an over-the-air software update.

106.    Over the next two weeks after installing the update 2019.16.1.1, Plaintiff noticed that the total number of maximum rated miles was decreasing from 2 to 5 miles per day from what it had been prior to the software update.  Instead of displaying the usual 247 miles rated range at maximum battery capacity, Plaintiff discovered that his car was finally showing just 218 rated miles at full 100% charge.

107.    On June 10, 2019, Plaintiff notified Tesla of the issue via telephone support of the suspected issue with battery degradation and was advised to take his car in for service and to have a battery inspection performed.

108.    On June 17, 2019, Plaintiff brought his Model S for service to the Tesla Service Center in Oceanside, CA where a battery diagnostic test was performed.  Plaintiff was informed by a Tesla service technician that the battery was operating "normally" and that there were no faults or errors detected with the battery.  Plaintiff was sent home and told to return after a few weeks had passed to see if the problem would persist.

109.    Due to Plaintiff's long daily commute and the fact that his car was still showing 218 miles of rated range at maximum battery capacity, Plaintiff returned on June 20, 2019 and requested another battery diagnostic test.  Plaintiff was informed by Tesla service technicians that a higher-level diagnostic test could be performed, also known as a Charge Amperage Capacity (CAC) test, at the cost of $253.50 to Plaintiff.  Plaintiff was further informed if the test results indicated that there was an error with the battery, that he would then be eligible for a battery replacement under warranty.

110.    Plaintiff declined to have the test performed when the service manager advised plaintiff that the test results would only be shared verbally and no printed copy of the results or otherwise recording on the results would not be allowed.

CLASS ACTION COMPLAINT                    36
Case No. 5:19-cv-4596

111.   Plaintiff returned again on July 2, 2019 to have the HV Battery Test (CAC test) performed (work order number 3000S0000166387) and accept that the results would only be explained but no printed results would be provided. Plaintiff was informed that the test results were negative and that there was no indication of any significant battery errors.  Plaintiff asked whether he could see the results, or obtain a copy of the same, however, he was repeatedly denied access to them and was ultimately allowed to glimpse the results on a computer screen with explanations provided by the service technician.

112.   Plaintiff was informed by a Tesla service center technician that the "fleet-wide average" for 135,000 miles of use has a maximum rated range of approximately 231 miles.  Plaintiff was further informed that the amount of maximum rated range for his car at 217 miles was only 7% lower than the fleet-wide average, and that if his car had been 10% or more, lower than the fleet-wide average, he would then be eligible for a warranty battery replacement.

113.   On July 12, 2019, per the instructions provided by Tesla's written warranty, Plaintiff filed a claim with the National Center for Dispute Settlement (NCDS) to seek a warranty battery replacement.

114.   On July 15, 2019, NCDS refused to adjudicate Plaintiff's claims with the reasons being that Plaintiff's claim for the battery were not covered by the warranty provided by Tesla.

115.   The graph below illustrates the data collected by a researcher in the Netherlands and the green dots are representative of where Plaintiff's car belongs in relation to the data collected from other vehicles.  As the graph illustrates, there is a significant drop in the amount of "remaining battery capacity" that occurred following the 2019.16.2 software update from Tesla.



[34]

116.   Despite the fact that Plaintiff's car had suffered from a decrease of nearly 30 miles in available range, or in other words, a loss of approximately 8 kWh of battery capacity immediately following Tesla's 2019.16.1 and 2019.16.2 software updates, Tesla maintains that the decrease is "normal" and insignificant.

117.   Plaintiff complied with all requirements including the acceptance, download, and installation of Tesla's software updates, bringing his car to a Tesla Service Center after being instructed by Tesla to do so, and submitting the claim to NCDS arbitration as

---

[34] Steinbuch, Maarten, "Tesla Model S degradation data," https://steinbuch.wordpress.com/2015/01/24/tesla-model-s-battery-degradation-data/ (last visited July 18, 2018) (G

CLASS ACTION COMPLAINT
Case No. 5:19-cv-4596

38

expressly required by Tesla's warranty.[35]  Based upon the arbitrator's decision that Plaintiff's claims are not arbitrable, and the fact that Plaintiff is, indeed, "not satisfied with the arbitrator's decision or Tesla's compliance" he now brings this action to pursue all of and "any other legal remedies available" to him on behalf of himself and the other putative class members located throughout the nation.

### K.   Complaints and Comments from Tesla Owners Worldwide

118.   After the software updates were issued, customers began to complain about the range loss and battery issues on the popular Tesla Motors Club online forum website. One particular discussion titled "Sudden Loss of Range With 2019.16.x Software" has garnered nearly 3,000 replies from hundreds of members worldwide and has been viewed over 136,000 times, shown below:



[36]

119.   Other comments from members on the same thread of this specific forum post describe having similar experiences with their cars:

    a.  "So about two months ago I was stuck on 2019.4 because my MCU was dying and unable to connect to Wi-Fi to update and eventually died from the e-MMC issue. My replacement MCU came with 2019.24 installed and after driving my car for less than 50 miles I dropped from 221 rated miles at 90% to 199 rated miles at 90%."[37]

---

[35] Tesla,  "New Vehicle Limited Warranty"
https://www.tesla.com/sites/default/files/pdfs/Model_S_New_Vehicle_Limited_Warranty_201602_en_NA.pdf, (last accessed and downloaded Aug. 7, 2019).
[36] Tesla Motors Club Forum, "Sudden Loss of Range with 2019.16.x Software", June 3, 2019, https://teslamotorsclub.com/tmc/threads/sudden-loss-of-range-with-2019-16-x-software.154976/, (last visited Aug. 7, 2019).
[37] *Id.* Post #2696, August 5, 2019.

b. "When I complained to Tesla about immediately losing 10% range they also gave me a chart claiming there was nothing wrong I was just imaging it. Over time, and challenges, Tesla admitted there is a loss. Last week I was told by Tesla service manager that "Tesla made a conscious decision to reduce charging capacity to 90% to avoid fires and Tesla regards that as a reasonable compromise." I feel this makes the car unsellable since Tesla hasn't fully explained why my specific battery pack I need to disclose it to a buyer. And, I am not confident that the issue is resolved. It also confirms that my (our) battery pack is defective since Tesla thought it dangerous enough to secretly download a "fix". The reduced range is accompanied by longer charge time. Even if I accept the defective battery pack condition and drive the car I now am faced with increased time to actually get any range." [38]

c. "Well, my 254 miles has been cut to 238 miles at full charge.:( This is especially bad for those of us that tow... We need the longer range and can't afford to have it shortened. Tesla better be upfront and explain why I have to sacrifice 14 miles…" [39]

d. "I think the issue is communication from the manufacturer. They are lying/hiding/not forthcoming/whateveryouwanttocallit with information about this update. For example, if they released this software update to prevent battery fires, what happens to owners that have been refusing to go on V9 software and do updates? [40]

e. Are they now at risk of having a car fire in their garage while they sleep? If it's not about the fires, then why do this cap at all? Prevent future degration? Well they just degraded them now instead of the future, what's the point in that? I can't see how you can say this is about expectation. The manufacturer physically capped battery capacity of vehicles they do not own without an explanation.  How can you possibly view this as being ok?"[41]

---

[38] *Id.* Post #2675
[39] *Id.* Post #2574, August 3, 2019
[40] *Id.* Post #2597, August 4, 2019
[41] *Id.*

120.   Plaintiff is aware of, and upon information and belief hereon alleges that similar owners that have experienced the same issues as alleged herein, in the State of California, Minnesota, Georgia, and Florida at the very least.  Plaintiff will seek amendment to include these owners as necessary, and upon a full investigation, thorough review, and consideration of those claims have been completed by Plaintiff's counsel.[42]

121.   Plaintiff is aware of, and upon information and belief hereon alleges that owners of Tesla's vehicles are affected worldwide, and further alleges that at least one owner in Norway has been affected by Tesla's conduct and acts as alleged herein. Plaintiff will seek amendment to include the worldwide owners as necessary, and upon a full investigation, thorough review, and consideration of those claims have been completed by Plaintiff's counsel.[43]

### L.    Civil RICO Investigation

122.   Since the first reports of standalone battery fires, meaning fires that occurred that were not the result of a collision or accident, and at the very least since June 2018, Tesla shared information about potential battery defects with its US Service Center Locations nationwide, jointly and secretly; investigated the possible causes of the battery fires; delayed and/or prevented the release of inculpatory information; misled regulatory authorities; and maintained a consistent public posture as to the scope of the vehicles affected by the defective batteries, and the safety risks that the Class Vehicles posed.

123.   Tesla's close cooperation with its nationwide US Service Center locations on issues surrounding the battery defects, and joint participation in the predicate acts described below, evidence not only the formation of a common purpose to conduct the enterprise through a pattern of racketeering activity, but also a conspiracy to participate in an enterprise by conducting the affairs of such an enterprise through a pattern of

---

[42] Plaintiff's counsel is currently and actively investigating claims of Tesla owners that involve the allegations asserted herein, namely the reduction in miles, limited battery capacity, decreased charging rates, and decreased performance of the Class Vehicles nationwide and worldwide.
[43] *Id.*

racketeering activity as prohibited by the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 *et seq.*, and these acts are still being investigated by Plaintiff and Plaintiff's counsel.

## VI.   CLASS ACTION ALLEGATIONS

124.   Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually, and on behalf of the following proposed classes:

> **Nationwide Class**
> All persons or entities who, nationwide, purchased, or otherwise own, a Tesla Model S or Model X vehicle (the "Class Vehicles").

> **Nationwide Software Affected Subclass**
>
> All members of the Nationwide Class who purchased, or otherwise own, a Tesla Model S or Model X vehicle with batteries that were limited by Tesla's over-the-air (OTA) software updates versions 2019.16.1.1 and 2019.16.2 after May 15, 2019 and as a result, suffered from a reduction of and loss in the number of rated range miles available for the vehicles.

125.   Alternatively, if California law does not apply to all owners of the Class Vehicles, Plaintiff brings this action individually, and on behalf of the following proposed classes:

> **California Class**
>
> All persons or entities who, in the State of California, purchased, or otherwise own, a Tesla Model S or Model X vehicle (the "Class Vehicles").

> **California Software Affected Subclass**
>
> All members of the California Class, who purchased, or otherwise own, a Tesla Model S or Model X vehicle with batteries that were limited by Tesla's over-the-air (OTA) software updates versions 2019.16.1.1 and

2019.16.2 after May 15, 2019 and as a result, suffered from a reduction of and loss in the number of rated range miles available for the vehicles.

126.   Excluded from the proposed classes are Tesla, its employees, officers, directors, legal representatives, heirs, successors, wholly or partly owned, and its subsidiaries and affiliates, Tesla dealers, and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons who make a timely election to be excluded from the proposed classes.

127.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

128.   This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.  There is a well-defined community of interest in the litigation and the proposed class is ascertainable.

129.   <u>Numerosity</u>.  Federal Rule of Civil Procedure 23(a)(1): The members of the classes proposed herein are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. While Plaintiff believes that there are thousands of members of the proposed classes, the precise number of class members is unknown to them but may be ascertained from Tesla's books and records. Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

130.   <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and (b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

a.      Whether Tesla engaged in the conduct alleged herein;

b.     Whether Tesla designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class into the stream of commerce in the United States;

c.     Whether Tesla's acts and practices constitute unfair methods of competitions;

d.     Whether Tesla engaged in unfair acts or business practices in the conduct of trade;

e.     Tesla's motives for devising, manipulating, and executing the software updates to its vehicles;

f.     Whether and to what extent Tesla profited from the initial sale of battery capacity kWh to customers who purchased the upgrade from Tesla;

g.     Whether Tesla engaged in deceptive business practices by altering the fixed constant variable it uses to calculate and market the total number of miles available for its vehicles after customers purchase the vehicles;

h.     Whether Tesla's violated and continues to violate the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*);

i.     Whether Tesla violated and continues to violate the California Computer Crime Law;

j.     Whether Tesla's conduct constitutes trespass to chattels and/or conversion;

k.     Whether Tesla manipulated its software update to include changes in the method of calculating energy consumption;

l.     Whether Tesla knew about the negative effects that the May 15, 2019 software update has had on the Class Vehicles, including a decrease in the amount of maximum rated mileage range and a decrease in the amount of usable battery capacity;

m.     Whether software updates which lead to a decrease in the amount of usable battery capacity constitutes loss in value of the Class Vehicles;

n.     Whether Tesla manipulated the software as a way to avoid and deny warranty battery replacements to Plaintiff and the other putative class members;

o.     Whether Tesla's conduct violates consumer protection statutes, false advertisement laws, unfair business and trade practices laws, and other laws as asserted herein;

p.     Whether Tesla's unlawful, unfair, deceptive and fraudulent practices harmed Plaintiff and the putative class members;

q.     Whether Plaintiff and other putative class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

r.     Whether Plaintiff and other putative class members are entitled to damages and other monetary relief and, if so, in what amount;

s.     Whether Plaintiff and the putative class members are entitled to an award of punitive and exemplary damages based on Tesla's conduct and violations as alleged herein and if so, in what amount.

131.   Typicality.  Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Tesla's wrongful conduct as described above. The relief that Plaintiff seeks is typical of the relief sought for the absent Class members.

132.   Adequacy.  Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate proposed class representative because Plaintiff's interests do not conflict with the interests of the other members of the proposed classes they seek to represent; Plaintiff has retained counsel competent and experienced in complex litigation and the technology and subject matter in regards to the underlying suit; and Plaintiff intends to prosecute this

action vigorously and have the financial resources to do so.  The interests of the proposed classes will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

133.   <u>Declaratory and Injunctive Relief.</u>   Federal Rule of Civil Procedure 23(b)(2): Tesla has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the proposed classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed classes as a whole.

134.   Injunctive relief is particularly necessary in this case because: (1) Plaintiff and the other members of the putative classes desire to purchase products with the same qualities and attributes as Tesla advertises its vehicles to have; (2) if Tesla actually manufactured its vehicles with the qualities and attributes as deceptively represented, Plaintiff and the other members of the putative classes would purchase the same; (3) Plaintiff and the other putative class members do not have the ability to determine whether Tesla's representations are true concerning the vehicles if they purchase vehicles from Tesla in the future; and (4) Plaintiff and the other putative class members do not have the ability to determine whether Tesla will attempt to, or actually commit the same violations as alleged herein.  Plaintiff and the other putative class members will likely want to purchase Tesla's vehicles and continue driving electric vehicles such as the ones that Tesla manufactures, however, they expect that Tesla will not misrepresent or conceal defects in those vehicles, or subsequent variations thereof, and will provide clear explanations regarding the software updates it issues without concealing or mispresenting the fact of what the software updates will do.

135.   <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): Class actions are a superior means for the fair and efficient adjudication of this controversy and action, when compared to any other available means.  It is unlikely that there will be any difficulties or problems encountered with regards to management of this class action.   A class action is superior here also where damages, financial detriment, or any other harm that Plaintiff

and the other putative class members have suffered is small in comparison and relation to the large burden, unnecessary expense and costs spent if individual litigants proceeded against Tesla instead of together as a class.  Individual litigation and individual claims sought against Tesla would make it impracticable for the members of the proposed classes to individually seek redress for Tesla's wrongful conduct.  Despite the likely fact that individual class members have the means to and could afford to litigate as separate individual actions, doing so would place unnecessary burden on the court and would not promote judicial efficiency.  Furthermore, individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system.  Undoubtedly here, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, as well as comprehensive supervision by a single court.

136.   Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Federal Rule of Civil Procedure Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.  The Court may, on motion of Plaintiffs, or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions, utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law, for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into Subclasses.

## VII.   TOLLING OF STATUTE OF LIMITATIONS

### A.   Fraudulent Concealment

137.   Tesla has known of the issues relating to the batteries of its vehicles since at least June 16, 2018, after a Tesla Model S Vehicle caught on fire and exploded in Los Angeles, CA.  Tesla obtained further knowledge of the defects contained in certain Class Vehicles of its Model S and Model X fleet.  Tesla, however, has concealed from, or failed

to notify, Plaintiff, members of the putative classes, and the general public of the full and complete nature of the battery defects or cause of the vehicle fires worldwide.  Although Tesla acknowledged that there are battery defects in the Class Vehicles, Tesla has not determined a cause for recent fires, including the ones in Hong Kong and Shanghai.

138.   However, Tesla knew or should have known that a heightened risk of battery fires could potentially occur as evidenced by Tesla's software updates where it updated the thermal management software for its vehicles' batteries.[44]  As described above, Tesla maintains nearly absolute exclusivity regarding its software updates and the batteries of their vehicles.  Tesla represents that its "team of battery experts uses…data to thoroughly investigate incidents that occur and understand the root cause."  As recently as May 2019, Tesla represents that it is still continuing investigations into the root cause of the battery fires.  To this day, Tesla has failed to provide, inform, or notify its customers of the root cause for the battery issues, and Tesla refuses to acknowledge that the batteries in its vehicles are defective, or initiate a recall of the Class Vehicles.

139.   Thus, any applicable statute of limitations has therefore been tolled by Tesla's knowledge, active concealment, and denial of the facts alleged herein, for which Tesla continues to operate with the ongoing fraudulent behavior.

**B.     Estoppel**

140.   Tesla was, and is, under a continuous duty to disclose to Plaintiff and the putative class members the true character, quality, and nature of the Class Vehicles. Tesla actively concealed the true character, quality, and nature of the vehicles, and knowingly made misrepresentations about the quality, reliability, characteristics and performance of the vehicles.  Plaintiff and members of the proposed classes reasonably relief upon Tesla's knowing, and affirmative misrepresentations and/or active

---

44 Business Insider, "Tesla is updating its battery software after 2 seemingly spontaneous fires", May, 16, 2019, website https://www.businessinsider.com/tesla-updates-battery-software-after-a-shanghai-hong-kong-fires-2019-5, (last accessed Aug. 3, 2019).

concealment of these facts.  Based on the foregoing, Tesla is estopped from relying on any statute of limitations or asserting the same in defense of this action.

### C.    Delayed Discovery Doctrine

141.    The causes of action alleged herein did not accrue until Plaintiff and members of the proposed classes discovered that their vehicles had the defective and potentially lethal batteries.  Plaintiff and the other proposed class members had no realistic or reasonable ability to determine that their vehicles' batteries were defective until after updating experiencing the severe drop in rated mile range, loss in performance and supercharging speeds.  Plaintiff and the proposed class members would have had no reason to discover their causes of action, given the fact that Tesla maintains near-complete exclusivity regarding any battery information, tesla's fraudulent misrepresentations, active concealment and deceit which clearly show that Tesla has actually engaged in unlawful business practice amongst other violations alleged herein.

### VIII.    CAUSES OF ACTION
### COUNT 1
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030 *et seq.*)

142.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

143.    Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

144.    The federal Consumer Fraud and Abuse Act ("CFAA") establishes a private cause of action against a person who "knowingly accessed a computer without authorization or exceeding authorized access," and whose prohibited access results in damage or loss in excess of $5,000 in any 1-year period 18 U.S.C. § 1030(a)(4).

145.   The CFAA also establishes liability against whomever: "knowingly causes the transmission of a program, information, code or command, and as a result of such conduct, intentionally causes damage without authorization to a protected computer" (§ 1030(a)(5)(A)); "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage (§ 1030(a)(5)(B)); or "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss. (§1030(a)(5)(C)).

146.   Lastly, as applicable here, the CFAA establishes liability against whomever, "with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any demand or request for money or other thing of value in retaliation to damage to a protected computer, where such damage was caused to facilitate the extortion.

147.   The term "computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device[.]" 18 U.S.C. § 1030(e)(1).

148.   A "protected computer" is defined, in relevant part, as a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

149.   "[E]xceeds authorized access" means "access[ing] a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter…" 18 U.S.C. § 1030(e)(6).

150.   "Loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost,

cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

151.   Damage means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

152.   The term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or consequential damages incurred because of interruption of service. 18 U.S.C. § 1030(e)(11).

153.   The term "person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity." 18 U.S.C. § 1030(e)(12).

154.   The Class vehicles are "computers" in under the CFAA by virtue of Tesla's vehicles containing Media Control Unit" (MCU) which provides data processing, GPS, communication functions, amongst others and serves as the receiving end of Tesla's over-the-air software updates.

155.   The Class vehicles are also "protected computers" under the CFAA because they are used in and affect interstate and foreign commerce and communication, including through contact and communication with remote servers, personal and business usages that affect interstate and foreign commerce, and because Tesla's vehicles are powered and maintained by computers which ensure that Tesla vehicles can operate and drive in furtherance of the stream of interstate and foreign commerce.

156.   Tesla caused Plaintiff and the putative class members to download and install software updates to their vehicles without informing them that the updates contained code that would diminish performance, lower the maximum amount of usable battery capacity, throttle or lower the rate of charging speed, lower the amount of voltage for battery cells from 4.2 volts to a lower number, modify and manipulate the fixed

constant variable used when advertising its cars to Plaintiff and the putative class members and modifying the same where it sent the same numbers to the EPA to calculate EPA estimated mileage ratings, in order to avoid its warranty obligations and conceal the defective nature of the vehicles and batteries.  Plaintiff and the other putative class members did not give permission for Tesla to install the updates, including updates 2019.16.1 and 2019.16.2, as Tesla failed to provide material information to Plaintiff and the putative class members regarding the updates.

157.   Tesla violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of vehicle software updates 2019.16.1 and 2019.16.2 to Plaintiff and the putative class members' vehicles to access, collect, and transmit information to vehicles, which are protected computers as defined above.  By transmitting information and software updates to the vehicles, Tesla intentionally caused damage without authorization, or at the very least, exceeded the authorization to Plaintiff and the other putative class members' vehicle by impairing the ability of the vehicles to operate as warranted, represented, and advertised by Tesla.

158.   Tesla knowingly and intentionally exceed its authorized access to Plaintiff and the other putative class members' vehicles.  Plaintiff and the other putative class members did not consent to Tesla's manipulations with their vehicles Battery Management System, nor did Plaintiff and the other putative class members consent to Tesla limiting the maximum charge voltage and usable amount of battery capacity which lead to significant amounts of range loss and performance of these vehicles.

159.   By exceeding its authorized access, Tesla obtained and altered the information, function and other unknown variables and failed to inform Plaintiff and other owners of the Class Vehicles of the reduced battery capacity and software limited charging capabilities.  Tesla's did so with an intent to defraud Plaintiff and the other putative class members and furthered the fraudulent intent to avoid its duties and legal obligations to provide Plaintiff and the putative class members with battery replacements

under warranty.  The cost of an out-of-pocket battery replacement is approximately $20,000 to $25,000, and therefore Tesla's fraudulent intent and conduct as alleged herein constitutes a violation of 18 U.S.C. § 1030(a)(4).

160.   Tesla's acts have also caused actual monetary loss in terms of lost kWh battery capacity.  Tesla charges consumers and its customers actual money in order to unlock battery capacity yet denies reimbursement of monies for the same when it takes the same away from customers like Plaintiff.

161.   As alleged above and herein, Tesla knowingly caused the transmission of "a program, information, code, or command…" to a protected computer" and as a result of that conduct, intentionally caused damage to Plaintiff and the putative class.  18 U.S.C. § 1030(a)(5)(A).

162.   Tesla's software updates caused damage and loss to Plaintiff and other putative class members, including a significant decrease in range and usable battery capacity, impairment of Plaintiff and the other putative class members ability to use their own property, forcing Plaintiff and the other putative class members to expend time, money, and labor in conduction with their vehicles and to investigate and determine what the right fix would be for the Class Vehicles.  Tesla caused damages and loss to Plaintiff and the putative class members during a one-year period that exceeds $5,000 in value in the aggregate.

163.   Unless Tesla is retrained and enjoined, Tesla will continue to commit such acts.  Plaintiff's remedy at law is thus inadequate to compensate for these intentionally inflicted and threatened injuries, therefore entitling Plaintiff and the putative class to remedies including injunctive relief as provided for by § 1030(g).

164.   Therefore, Plaintiff and the putative class members are entitled to obtain compensatory damages, injunctive relief, or other equitable relief as provided under 18 U.S.C. § 1030(g).

/ / /

## COUNT 2
# VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA")
### (15 U.S.C. § 2301 *et seq.*)

165.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

166.   Plaintiff brings this count on his own behalf, the Nationwide Class, and the California Classes.

167.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

168.   The Class Vehicles are a "consumer product" as defined by the term in 15 U.S.C. § 2301(1).

169.   Plaintiff and the other Class members are "consumers" as defined by the term in 15 U.S.C. § 2301(3).

170.   Tesla is a "warrantor" and "supplier" as defined by the terms in 15 U.S.C. § 23014) and (5).

171.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

172.   As described herein, Tesla provided Plaintiff and the other Class members with "implied warranties" and "written warranties" as those terms are defined in 15 U.S.C. § 2301 *et seq*.

173.   Tesla provided warranties to the Class Vehicles consisting of either a either a 48-month, 50,000-mile new vehicle warranty or a 24-month, 100,000-mile limited warranty against defects in materials or workmanship to the Class Vehicles.

174.   Tesla also provided an 8-year, unlimited mile battery warranty for the Class Vehicles.  The Class Vehicles were provided these express and implied warranties by Tesla.

175.   Tesla breached these written and implied warranties as described in the allegations herein, with respect to the batteries of the Class Vehicles and by failing to acknowledge that Plaintiff's battery and those of other Class members were defective and eligible to be replaced under Tesla's written and implied warranties.

176.   By Tesla's conduct described and alleged herein, including Tesla's knowledge that the batteries of the Class Vehicles were abnormally degraded or otherwise defective, Tesla has failed to comply with its obligations under their written and implied promises, warranties, and representations.

177.   In its capacity as a warrantor, and by the conduct and allegations described herein, any attempts by Tesla to limit the implied warranties in a manner that would exclude coverage is unconscionable and any such effort to disclaim, or otherwise limit liability is null and void.

178.   The transactions by which Plaintiff and the putative class members purchased the Class Vehicles were transactions for the sale of goods and at all times relevant, Tesla was the original seller of the Class Vehicles and placed these products into the stream of commerce throughout the United States, including California.  At all times relevant, Tesla maintained showroom stores and vehicle service centers in California.

179.   The Class Vehicles came with an implied warranty that any parts thereof were merchantable, were the same quality as those generally accepted in the trade, were not of poor or below average quality within the description and/or conformed to the affirmations of fact made by Tesla.

180.   The Class Vehicles, however, were non-conforming goods and/or goods that were not the same quality as those generally accepted in the trade, were of poor or below average quality within the description and/or did not conform to affirmations of fact disseminated by Tesla because they did not achieve the advertised and displayed estimated approximate mileage range as displayed by Tesla for the Class Vehicles.

181.   The Class Vehicles, at all times relevant herein, were of poor or below average quality within the description of electric vehicles with the same capacity battery for similar Tesla Model S and X vehicles.

182.   The Class Vehicles, at all times relevant herein, did not and do not have the quality that a buyer would reasonably expect.

183.   As a direct and proximate result of the foregoing, Plaintiff and the putative class members sustained loss and damage and did not receive the benefit of their bargain.

184.   All jurisdictional prerequisites have been satisfied.

185.   Plaintiff and the other Class members are in privity with Tesla in that they purchased the Class Vehicles from Tesla or its agents or are otherwise covered as subsequent legal owners of Class Vehicles.

186.   Plaintiff satisfied the duties required under the New Vehicle Limited Warranty, including updating his car with Tesla's software updates without delay, and by first submitting his claim for warranty battery replacement to the NCDS arbitration as required by the warranty.

187.   As a result of Tesla's breach of warranties, Plaintiff and the other Class members are entitled to revoke their acceptance of the Class Vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310 *et seq.*

## COUNT 3
## VIOLATION OF CALIFORNIA'S SONG-BEVERLY CONSUMER WARRANTY ACT ("SONG-BEVERLY")
### (Cal. Civ. Code § 1790 *et seq.*)

188.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

189.   Plaintiff brings this count on his own behalf, the Nationwide Class, and the California Classes.

190.   Pursuant to California's Song Beverly Consumer Warranty Act ("Song-Beverly") Cal. Civ. Code §1790 et seq., the Class Vehicles are "consumer goods" purchased primarily for family or household purposes and Plaintiff and the other Class members have used the Class Vehicles primarily for those purposes.

191.   Plaintiff and the other Class members are considered "buyers" of consumer goods under Song-Beverly.

192.   Tesla is a "seller" and "retailer" under Song-Beverly.

193.   Tesla provided warranties to the Class Vehicles consisting of either a either a 48-month, 50,000-mile new vehicle warranty or a 24-month, 100,000-mile limited warranty against defects in materials or workmanship to the Class Vehicles.

194.   Tesla also provided an 8-year, unlimited mile battery warranty for the Class Vehicles.  The Class Vehicles were provided these express and implied warranties by Tesla and are fully transferable to all subsequent legal owners.

195.   Plaintiff's vehicle was a Class Vehicle that Plaintiff legally obtained with serious defects and nonconformities, including but not limited to a defective, malfunctioning, or otherwise abnormally degraded battery.

196.   The foregoing defects and nonconformities to the warranty manifested themselves within the applicable implied and express warranty periods.  The nonconformities substantially impair the use, value and/or safety of the vehicle and violate the implied warranty of merchantability.

197.   Tesla provided the aforementioned warranties in consideration for the purchase of the Class Vehicles, and said warranties became part of the basis of the bargain, because it was incorporated into the purchase agreements of the Class Vehicles.

198.   Plaintiff and the putative class members learned about the existence of such warranty's pre-purchase/pre-lease, and as reasonable persons, relied on the existence of such warranties.  Plaintiff and the putative class members conduct of purchasing the Class Vehicles was in accordance with their reliance on the described warranties.

199.   Plaintiff's vehicle has a defective battery, such that it is a defect in materials and/or workmanship and is expressly covered under the warranty.  Applying any warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, inter alia,  the vehicles at issue contain a defect at the time of deliver, Tesla was either aware of or consciously and/or recklessly disregarded this defect which could not be discovered by Plaintiff and putative class members at the time of such purchase of the Class Vehicles, and said purchasers lacked any meaningful choice with respect to the warranty terms.

200.   Plaintiff and the putative class members substantially performed all of their obligations under the warranty, by presenting the Class Vehicles to authorized Tesla repair facilities during the warranty coverage period and/or by accepting all of the over-the-air updates provided by Tesla.

201.   Defendants have and continue to breach said express warranties by failing to repair the defects in materials and workmanship in the Class Vehicle batteries despite the Class Vehicles sudden and significant decrease in range and ability to charge at maximum battery capacity as a result of Tesla's software updates, including 2019.16.1 and 2019.16.2

202.   Furthermore, Tesla represented on their website for each of the Class Vehicles, the Environmental Protection Agency ("EPA") estimated mileage for Plaintiff's vehicle, and for the Class Vehicles to Plaintiff and the putative class members.

203.   Tesla's representations that Plaintiff and the other putative class members' vehicles batteries were experiencing normal degradation and that Tesla did not manipulate its software updates to throttle the performance of the Class Vehicles, including lowering the maximum amount of battery capacity available and decreasing the rate of charge for the batteries were false representations of fact, that were known by Tesla to be untrue at the time they were made and were intended to create reliance by Plaintiff and the putative class members.

204.   Tesla's failure to recognize the fact that the severe battery degradation in Plaintiff's vehicle was sudden and not normal degradation as Tesla falsely represented. Plaintiff and the other putative class members were harmed by Tesla's failure to recognize the sudden and significant decrease in performance of the Class Vehicles as well as Tesla's refusal to provide repairs or replacements as warrantied.

205.   Tesla breached the express warranties by maliciously and fraudulently pushing its software updates to the Class Vehicles, which resulted in a decrease in performance, significantly lower range mileage, and a slower speed of battery charging in the Class Vehicles.  Tesla further breached the express warranties by refusing to repair, fix, replace, or remedy the damage it caused to the Class Vehicles.

206.   Tesla's breach caused injury to Plaintiff and putative class members, because Plaintiff and putative class members did not get the benefit of their bargain, which included, inter alia, a battery that would not be capable of charging to the maximum amount of full battery capacity as advertised by Tesla for the Class Vehicles.

207.   Tesla breached and continues to breach the express warranties as alleged herein, because: the Class Vehicles do not meet the mileage range as estimated and advertised by Tesla; because Tesla fails to repair/fix the flaws in the Class Vehicles' batteries; because Tesla fails to recognize the fact that Plaintiff's vehicle suffered from a sudden and significant range loss due to Tesla's manipulations of the vehicle's software and limiting the maximum amount of usable battery capacity and lowering the rate at which the batteries can be charged.

208.   As a result of Tesla's breach of express warranties as set forth above, Plaintiff and other putative class members have suffered and will continue to suffer damages in an amount to be determined at trial. Plaintiff and the other Class members are entitled to and seek damages and other legal and equitable relief, including, but not limited to, all incidental, consequential and general damages resulting from Tesla's failure to comply with its warranty obligations under Song-Beverly.

209.   Plaintiff and the other Class members are entitled under Song-Beverly to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

## COUNT 4
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

210.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

211.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

212.   In pushing software updates, including 2019.16.1 and 2019.16.2, to its vehicles and their unsuspecting owners, Tesla violated the California Penal Code, Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq*.

213.   When Tesla provided its software updates, including 2019.16.1 and 2019.16.2 to the vehicles - Plaintiff and the putative class members did not know, nor could they in the exercise of reasonable diligence know, that the software updates contained code that would throttle their vehicle batteries, limit the maximum charging voltage, lower the mileage range, decrease the charging rates, and decrease performance, all which were designed to further conceal the defective nature of their vehicles and the batteries they contained, as well as to escape the duties and legal obligations it had to them.

214.   Because Plaintiff and the other putative class members did not know that the software updates contained such harmful and nefarious codes, they did not give Tesla the permission to access their vehicles to alter the data or computer systems on their vehicles.

215.   Tesla provided the software updates to Plaintiff and the putative class members as part of a scheme or artifice to defraud and deceive, because it provided the updates instead of informing them of the defects and battery issues that were inherent with the vehicles.   Tesla could have informed consumers that the battery problems and other related issues they were having with their vehicles could be resolved via battery replacements under warranty.  Instead, Tesla chose to fraudulently conceal any issues and throttled the batteries and vehicles' performance via installation of nefarious and unauthorized installation.

216.   Tesla offered the software updates not because they wanted to increase the battery longevity and for safety precautions as it had fraudulently represented, but rather, to escape and avoid the duties and legal obligations it had warrantied and promised to Plaintiff and the other putative class members.  Tesla did so to avoid costs and drive up profits from customers and the putative class members by having them purchase replacement batteries.

217.   By offering software updates 2019.16.1 and 2019.16.2 to Plaintiff and the other putative class members, Tesla disrupted or caused the disruption of vehicle capabilities when it improperly and unlawfully throttled the batteries of the vehicles and manipulated the calculations and coding for the BMS of the Class Vehicles.  Plaintiff and the putative class members did not consent to having their battery capacities and charging capabilities throttled, and had they known that the software updates would result in the significant decrease in rated mileage range and usable battery capacity in their vehicles, they would not have installed the software updates.

218.   As a result of Tesla's unlawful conduct, Plaintiff and the other putative class members were damaged in an amount to be determined at trial.

219.   Plaintiff and the putative class members seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order

enjoining the acts and practices described above, attorneys' fees, and costs under the CDAFA.

## COUNT 5
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

220.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

221.    Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

222.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act and unfair, deceptive, untrue or misleading advertising."

223.    Tesla's conduct, as described herein, was performed in and emanated from California and constitutes various different violations of the UCL.  Tesla's conduct violates the UCL in at least the following ways:

    a.    By manipulating its software and calculations for Plaintiff and the other putative class members' vehicles Battery Management System in order to avoid its duties and legal obligations to Plaintiff and the other putative class members

    b.    By engaging in conduct under the guise of "improving battery life and longevity" despite knowing that vehicles would be affected by limiting the maximum voltage charge capacity of the Class Vehicles;

    c.    By reducing the amount of available battery capacity (kWh) of Plaintiff's vehicle and vehicles owned by the other putative class members, and failing to acknowledge that the decrease in range of these vehicles resulted in actual monetary loss and other harm to Plaintiff and the putative class members;

d.   By failing to inform or take reasonable steps to inform Plaintiff and the putative class members that the software updates would lead to said decrease in maximum usable battery capacity, limit the charge voltage of the batteries, lower the maximum charging speed and performance of Plaintiff's vehicle, as well as other Class Vehicles;

e.   By forcing customers like Plaintiff and the other putative class members to accept Tesla's software updates as a condition of eligibility for warranty service, when Tesla failed its duties and legal obligations to Plaintiff and other putative class members by denying warranty battery replacements;

f.   By manipulating the software and variables used to calculate the amount of maximum rated miles which thereby artificially raised mileage range and therefore effectively bar Plaintiff and other putative class members from receiving warranty battery replacements;

g.   Designing, manufacturing, marketing and selling the Class Vehicles to consumers that contained material and fundamental defects without disclosing such defects to consumers;

h.   Marketing and selling Class Vehicles that were not merchantable for the purpose of providing reliable and safe transportation.

i.   Marketing and selling Class Vehicles while concealing material facts from Plaintiff and other putative class members regarding defects in the batteries that would be subsequently updated with software that would serve as the basis for denial of warranty battery replacements;

j.   Concealing from Plaintiff and the other putative class members that Tesla intended to manipulate its software, including by changing the fixed constant variable rate when calculating rated miles for Plaintiff's vehicle so that Tesla could avoid its duties and legal obligations to Plaintiff and the putative class;

k.   Fraudulently representing to Plaintiff and the putative class members that the software updates were intended for either safety or battery life and longevity, which were fraudulent representations

because Tesla knew, or should have known that the Class Vehicles would suffer from a severe decrease in range and that Tesla would deny rightful warranty coverage to the Class Vehicles;

l.   Concealing from Plaintiff and other putative class members that Tesla was in breach and intended to breach its warranty obligations by, among other things: (1) manipulating the fixed constant variable rate of 295 Wh/mi to 276 Wh/mi; (2) by using other means to artificially inflate Plaintiff and the other class members' vehicles rate miles; (3) by refusing to acknowledge and perform under the warranties it provided; (4) by fraudulently representing that the batteries in Plaintiff and the other class members' vehicles were not severely degraded, and therefore ineligible for warranty battery replacement; (5) by creating administrative hassles for Plaintiff and the other putative class members to seek arbitration with the National Center for Dispute Resolution and knowing that Plaintiff and the putative class members' warranty claims would not be resolved, to adjudicate warranty claims when Tesla knew that it would maintain the improper position that the batteries were not eligible for warranty replacement or repair; and (6) misleading Plaintiff and the other putative class members that the software updates to their vehicles would not affect the value of their vehicles;

m.   By limiting the amount of maximum battery capacity usable by the cars in a way to prevent performance under its duties to Plaintiff and other putative class members as warranted;

n.   By throttling the rate of charge for the Class Vehicles' batteries, and manipulating its software to cause an overall decrease in performance of the Class Vehicles;

o.   By knowingly, and fraudulently denying Plaintiff and other putative class members warranty battery replacements despite having the exclusive knowledge and information regarding the batteries;

p.   By failing, and potentially putting Plaintiff and other putative class members at life-threatening risks where Tesla has the exclusive knowledge regarding the batteries of its vehicles yet has failed to inform owners of the Class Vehicles;

q. By intentionally misrepresenting to Plaintiff and other putative class members that there was no affect or decrease in value following software updates that reduced the maximum usable battery capacities for these vehicles;

r. By denying rightful reimbursement and monetary payment for the sudden loss of maximum usable battery capacity despite having been unjustly enriched from the profits of selling the same;

s. By violating the federal Computer Fraud Abuse Ac, 18 U.S.C. 1030 § *et seq.*, and California's Computer Crime Law, Cal. Pen. Code § 502 *et seq* where Tesla committed acts in violation of these laws as alleged herein; and

t. By violating other California laws, including California laws governing false advertising, consumer protection, and warranties.

224. As alleged herein, Tesla's conduct in committing these violations of the UCL are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff and the putative class members.

225. Tesla's misrepresentations, omissions, and fraudulent act alleged herein, which emanated from its headquarters in California and multiple showroom store and service center locations in California, caused Plaintiff and putative class members to suffer from loss in value for what they had paid for.

226. As a direct and proximate result of Tesla's unfair, unlawful and fraudulent acts and practices, Plaintiff and other putative class members have suffered injury in fact, including lost money or property, as a result of Tesla's misrepresentations and omissions. Plaintiff and the other putative class members have also suffered injury in fact, in the form of actual loss of battery capacity kWh for their vehicles, resulting in significant decreases in mileage range, slower rate of charging speeds, and an overall decrease of performance with their vehicles.

227.   Plaintiff and the putative class members seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Tesla under Cal. Bus. & Prof. Code § 17200 *et seq*.

228.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices as described herein, and to restore to Plaintiffs and members of the Nationwide class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203; and for such other equitable relief as is set forth herein and is appropriate.

229.   Based upon Tesla's deceptive and fraudulent acts that have garnered Tesla significant profits at the expense of Plaintiff and the putative class members, Plaintiff and the putative class members seek an award of exemplary and punitive damages against Tesla for the violations and acts as alleged herein.

## COUNT 6
### VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
#### (Cal. Civ. Code § 1750 *et seq.*)

230.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

231.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

232.   California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., proscribes "unfair methods of competitions and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

233.   The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

234.   Plaintiff and other putative Nationwide class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other class members, and Tesla are "persons" as defined in Cal. Civ. Code § 1761(c).

235.   As alleged above, Tesla made numerous representations concerning the quality, performance, effectiveness, performance, safety, and status of the Class Vehicles, that were misleading, all of which emanated from Tesla's headquarters in California, as well as Tesla's showroom stores and service centers throughout California, and publicly displayed on Tesla's website.

236.   In purchasing the Class Vehicles, Plaintiff and other putative Nationwide class members were deceived by Tesla's fraudulent and deceptive advertising, and for failing to disclose certain material facts regarding the Class Vehicles as required by federal and state laws.

237.   Tesla knew that the batteries of the Class Vehicles were defective and that they would be unable to be safely used as intended, advertised, and as purchased by Plaintiff and the other putative class members.

238.   Tesla's conduct as described herein was and is in violation of the CLRA. Tesla's conduct emanates from its headquarters in California and violates at least the following enumerated CLRA provisions:

     a.    Cal. Civ. Code § 1770(a)(6): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

     b.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

239.   Had Tesla disclosed to Plaintiff and the putative class members that it misrepresented the batteries of its vehicles and operating software, omitted material information regarding the defects and battery issues, omitted material information

regarding the operating software, and was otherwise engaged in common business practices that ultimately hurt consumers, Tesla would have been unable to continue in business and it would have been forced to disclose the uniform defects in its vehicles and their batteries.

240.   Tesla knew as early as July 2017, that the batteries of the Class Vehicles were defective and that the batteries would need to be throttled in order to prevent risk of fire and life-threatening harm to Plaintiff and the putative class members.  Tesla failed to inform Plaintiff and the putative class members of the defects and subsequent manipulations of software and instead, represented that its vehicles were continually improving in speed and performance and performed better than other similar gasoline cars in the market, and that the software updates were issued to improve the health and longevity of the batteries..  Plaintiff and the other putative class members acted reasonably in relying on Tesla's misrepresentations and omissions, the truth of which they could not have discovered.

241.   Plaintiff provided Tesla with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Tesla on July 28, 2019.  Plaintiff's letter was sent via Certified Mail, advising Tesla of the multiple violations of the CLRA, UCL, federal and state warranty and consumer protection statutes, as well as Tesla's deceptive and fraudulent business practices.  Plaintiff demanded that Tesla comply with its duties under the laws asserted herein, to include a replacement battery under warranty, or payment in the amount to compensate Plaintiff and the putative class members for the loss in value, and to cease any further updates that would negatively affect the value of the vehicles, amongst other forms of corrective action, including payment of costs incurred and attorneys' fees incurred as provided for by the CLRA.

242.   In accordance with Cal. Civ. Code § 1780(a) Plaintiff and members of the putative class seek only injunctive relief for Tesla's violations of the CLRA at this juncture.

CLASS ACTION COMPLAINT                       68
Case No. 5:19-cv-4596

243.   While Plaintiff and the putative class members do not seek to recover damages under the CLRA in this Complaint, after mailing appropriate notice and demand in accordance with Cal. Civ. Code § 1782(a) & (d) on July 28, 2019, Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages because Plaintiff and the putative class members have suffered injury in fact and actual damages resulting from Tesla's material omissions and misrepresentations because Plaintiff and putative class members would not have purchased the Class Vehicles or would have paid significantly less, had Tesla been compliant with the relevant federal and state laws.  Plaintiff and the putative class members were damaged by not getting the benefit of their bargain and overpaid for the Class Vehicles.  Plaintiff and the putative class members also have suffered actual money injury in that they have lost actual usable battery capacity as a result of Tesla's acts, and/or they are forced to pay monies out-of-pocket for battery replacements through Tesla.

244.   In an amendment to this complaint, and following the notice sent on July 28, 2019, Plaintiff will seek an additional award against Tesla, under Cal. Civ. Code § 1780(b) of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA on behalf of the putative class members.  Tesla knew or should have known that its conducted was directed to one or more putative class members who are senior citizens or disabled persons.  Tesla's conduct caused putative class members who are senior citizens or disabled persons to suffer a substantial loss of property set for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more putative class members who are senior citizens or disabled persons are substantially more vulnerable to Tesla's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Tesla's conduct.

245.   Plaintiff, individually and on behalf of the putative class, further seek an order enjoining Tesla's unfair or deceptive acts or practices, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

### COUNT 7
### VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
#### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

246.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

247.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

248.   California Business & Professions Code ("Unfair Competition Law") or "UCL") §§17500 states: "[i]t is unlawful for any…corporation…with intent directly or indirectly to dispose of real or personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device…or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

249.   Tesla represents that utilizes over-the-air software updates to provide safety and increased functionality but fails to disclose that the updates are detrimental to range and performance of the Class Vehicles.  Tesla advertises the estimated EPA rated range which Tesla knows is false.  Tesla caused to be made or disseminated throughout California and the United States, through advertising, marketing, and other publications emanating from its headquarters in California, statements that were untrue or misleading,

and which were known, or which by exercise of reasonable care should have been known to Tesla, to be untrue and misleading to consumers, including Plaintiff and putative class members.

250.   Tesla has violated Cal. Bus. & Prof. Code §§17500 *et seq.* because the misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles, as set forth in this complaint, were material and likely to deceive reasonable consumers like Plaintiff and the putative class members.

251.   Plaintiff and other putative class members have suffered an injury in fact, including the loss of money or property, as a result of Tesla's unfair, unlawful, and/or deceptive practices.  In purchasing the Class Vehicles, Plaintiff and putative class members relied on the misrepresentations and/or omissions with respect to the safety, performance, and reliability of the Class Vehicles, including representations as to the battery health, condition, capacity, and mileage range.

252.   Tesla's representations turned out not to be true because the Class Vehicles were sold with batteries that were abnormally degraded, dangerously defective, faulty, inoperable, unsafe or otherwise not capable of reaching close to the maximum battery capacity as advertised and represented by Tesla.

253.   Tesla knew as early as July 2017 that the batteries in the Class Vehicles were defective and unable to be charged to the maximum amount of usable battery capacity without the risk of serious harm or injury.   Tesla failed to advise or inform Plaintiff and the putative class members that their batteries would later be throttled to reduce the available miles and battery capacity usable in their vehicles.  Had Plaintiff and putative class members known about this, they would not have purchased the Class Vehicles, or would not have paid as much for them.  Accordingly, Plaintiff and putative class members overpaid for the Class Vehicles and did not receive the benefit of their bargain.

254.   All of the wrongful conduct alleged herein occurred and continues to occur, in the conduct of Tesla's business, which is headquartered and has its principal operations in California.  Tesla's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, all of which emanates from California and occurs both in the state of California and nationwide.

255.   Plaintiff, individually, and on behalf of putative class members, request that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices and to restore Plaintiff and the putative class members any money that was acquired by Tesla's acts of unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

256.   Based upon Tesla's deceptive and fraudulent acts that have garnered Tesla significant profits at the expense of Plaintiff and the putative class members, Plaintiff and the putative class members seek an award of exemplary and punitive damages against Tesla for the violations and acts as alleged herein.

## COUNT 8
## TRESPASS TO CHATTELS
### (California Law)

257.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

258.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

259.   California common law prohibits the intentional intermeddling with personal property in the possession of another, without consent, that results in either a) the deprivation of the use of that personal property; or b) the impairment of the condition, quality, or usefulness of the property.

260.   Tesla impaired the condition, quality, and usefulness of Plaintiff and the putative class members' vehicles, or parts of them, without their knowledge or consent. Such acts constituted an intentional interference with the use and enjoyment of the vehicles.

261.   Tesla acted intentionally, because it knew that Plaintiff and the putative class members were downloading and installing software onto their vehicles that reduced the performance and maximum mileage range and usable battery capacity of the vehicles. Plaintiff and other putative class members only consented to the installation of software updates that would improve performance, not diminish performance.

262.   Tesla engaged in deception to gain access to the vehicles and install new computer software or updates, including 2019.16.1 and 2019.16.2.

263.   The software updates issued by Tesla effectively throttled the performance of the Class Vehicles, and Tesla removed the ability for Plaintiff and the other putative class members to utilize and charge the vehicle to maximum battery capacity.  In doing so, Tesla took Plaintiff and the other putative class members battery capacity, measurable in the amount of kWh.

264.   Plaintiff and class members suffered actual damages as a result of Tesla's actions in an amount to be determined at trial.

265.   Furthermore, Plaintiff seeks punitive damages because Tesla's trespass was committed from wanton or malicious motives, or reckless disregard of the rights of Plaintiff and the putative classes, for the purpose of concealing the defective batteries and escaping its legal obligations and duties it owed to Plaintiff and the putative classes.

**COUNT 9**
**COMMON LAW FRAUD**
**(California Law)**

266.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

CLASS ACTION COMPLAINT                    73
Case No. 5:19-cv-4596

267.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

268.   At the time Plaintiff and the other putative class members purchased their vehicles, Tesla did not disclose, but instead concealed and misrepresented, the battery defects and issues with the vehicles as discussed herein.

269.   Further, Tesla represented that software updates to its vehicles were designed to improve their vehicles' performance, and otherwise resolve issues that could have a negative impact and potential safety risks or damage to Plaintiff and the other putative class members' vehicles.

270.   Tesla omitted that the software updates, including 2019.16.1 and 2019.16.2 were actually designed to further conceal the defective nature of the vehicles and their defective batteries.   Tesla further omitted and affirmatively misrepresented the true reason for the updates, that such were designed to limit the maximum charge and usable battery capacity of the vehicles, limit the charging speed, and decrease the performance in order to disguise the fundamental defects and their greedy intent to escape and avoid their liabilities as warrantied.

271.   Tesla knew, or should have known, that the updates, including 2019.16.1 and 2019.16.2 were falsely portrayed to the consumer public and/or concealed from them.

272.   Tesla knew that its omissions and misrepresentations regarding the software updates and its vehicles were material, and that a reasonable consumer would rely upon Tesla's representations (and related omissions) when making purchasing decisions.

273.   Tesla, by its clear admissions in May 2019, in fact intended to limit the charging speed and battery capacities for Plaintiff and the putative class members' vehicles.

274.    Plaintiff and the putative class members did not know—nor could they have known through reasonable diligence—about the battery defects and other related issues with the vehicles, nor could they have known about what the software updates, including 2019.16.1 and 2019.16.2 were designed to throttle the performance of their vehicles and take away mileage range and limit the maximum amount of battery capacity available for their vehicles.  Plaintiff and the putative class members were or would have been reasonable in relying on Tesla's misrepresentations (and corresponding omissions) in making their purchasing decisions and downloading and installing the software updates for their vehicles.

275.    Plaintiff and the putative class members had a right to rely upon Tesla's representations (and corresponding omissions) as Tesla maintained a monopolistic and exclusive control over its vehicle software updates, vehicle batteries, and battery management system of the vehicles.  This included what information was actually available in software updates 2019.16.1 and 2019.16.2, and any results of any battery tests conducted by Tesla but paid for by customers.  Tesla knew as early as July 2017 of the defective nature of the Class Vehicles and knew that the batteries would need to be capped and throttled in order to avoid life-threatening harm and risk of injury to Plaintiff and the putative class members.

276.    Rather than disclose these defects to Plaintiff, the putative class members, and the general public, Tesla chose to conceal this material information and tried to cover up their prior mistakes by using software updates to limit the capacity of the batteries and throttle the performance and charging speed of the Class Vehicles.  Tesla acted with the fraudulent intent and motive to limit the cost in terms of having to replace the batteries of the Class Vehicles as warranted and wanted to avoid the cost of harming its reputation with consumers worldwide.

277.    Tesla and the putative class members sustained damages as a result of their reliance on Tesla's omissions and misrepresentations, thus causing Tesla and the putative

class members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT 10
## CONSTRUCTIVE FRAUD
### (California Law)

278.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

279.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

280.   At the time Plaintiff and the putative class members purchased their vehicles, Tesla did not disclose, but instead concealed and misrepresented, the battery defects and other related issues with the vehicles as discussed herein.

281.   Further, Tesla represented that software updates to its vehicles were designed to improve their vehicles' performance, and otherwise resolve issues that could have a negative impact to their vehicles and to the safety of Plaintiff and the putative class members.

282.   Tesla fraudulently omitted that its software updates, especially 2019.16.1 and 2019.16.2 were actually designed to further conceal the battery defects and related vehicle issues.  Tesla omitted and affirmatively misrepresented the true reason for the updates — that such were designed to throttle and otherwise limit the charging speed, battery capacity, performance, and mileage range of the vehicles, in order to disguise the defects as discussed herein.

283.   Tesla knew, or should have known, that these updates were falsely portrayed to the consumer public, Plaintiff, and the putative class members for the purpose of increasing battery longevity and health.  Tesla knew as early as July 2017 that it would

have to manipulate its software to throttle the Class Vehicles and reduce the usable battery capacity of the Class vehicles.

284.   Tesla also knew that its omissions and misrepresentations regarding the updates were material, and that a reasonable consumer would rely upon Tesla's representations (and corresponding omissions) in making purchasing decisions.

285.   Tesla had an obligation and duty not to omit or misrepresent battery defects, or the effects of the software updates because: (a) it was in the sole and exclusive possession of such information; (b) it made partial representations regarding of the vehicles batteries, and quality and safety of the vehicles; (c) Plaintiff and the putative class members relied upon Tesla to make full disclosures based upon the relationship between Plaintiff and the putative class members, who relied upon Tesla's representations and omissions, and were reasonable in doing so, with Tesla's full knowledge that they did and would have been reasonable in doing so.

286.   Plaintiff and the putative class members did not know—nor could they have known through reasonable diligence—about what the software updates 2019.16.1 and 2019.16.2 would do, let alone the defective nature of the batteries in their vehicles.

287.   Plaintiff and the putative class members were, and would have been, reasonable in relying on Tesla's misrepresentations (and corresponding omissions) in making their purchasing decisions and downloading and installing the software updates, including 2019.16.1 and 2019.16.2.

288.   Plaintiff and the putative class members had a right to rely upon Tesla's representations (and corresponding omissions) as Tesla maintained a monopolistic and exclusive control over what the software updates would actually do, the codes it contained, the throttling that it would cause on charging and battery capacity, and any other relevant and material information regarding the batteries or their defective nature.

289.   Tesla breached its duty to Plaintiff and the putative class members to make full disclosures of the effects of the software updates, the potential results of installing the same, and the batteries and their defective nature.

290.   Plaintiff and the putative class members sustained damages as a result of their reliance on Tesla's omissions and misrepresentations, and Tesla's breach of its duties, thus causing Plaintiff and the putative class members to sustain actual losses and damages in a sum to be determined at trial.

### COUNT 11
### FRAUDULENT INDUCEMENT
### (California Law)

291.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

292.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

293.   At the time Plaintiff and the putative class members purchased their vehicles, Tesla did not disclose, but instead concealed and misrepresented, the defective batteries and other related defects and issues as discussed herein.

294.   Further, Tesla represented that its software updates, including 2019.16.1 and 2019.16.2 to its vehicles were designed to improve the vehicles performance and safety and the "battery life longevity" as it represented.

295.   Tesla omitted that the software updates were actually designed to further conceal the defective batteries and would limit the charging speed and usable battery kWh capacity in a way that would allow Tesla to avoid and escape its warranty liabilities and legal obligations to repair, fix, or replace as warrantied.   Further, Tesla omitted and affirmatively misrepresented the true reason for the software updates, as discussed herein.

296.   Tesla knew, or should have known, that the software updates and reasons for them were falsely portrayed to the consumer public, Plaintiff, and the putative class.

297.   Tesla also knew that its omissions and misrepresentations regarding battery defects and software updates were material, and that a reasonable consumer would rely upon Tesla's representations (and corresponding omissions) in making purchasing decisions.

298.   Tesla, by its clear admissions in May 2019, in fact intended to deceive Plaintiff and the putative class members.

299.   Plaintiff and the putative class members did not know—nor could they have known through reasonable diligence—about the defects and the potential negative effects of software updates 2019.16.1 and 2019.16.2, nor could they have known about what the software updates were designed to really do.

300.   Plaintiff and the putative class members were or would have been reasonable in relying on Tesla's misrepresentations (and corresponding omissions) in making their purchasing decisions and downloading the software updates.

301.   Plaintiff and the putative class members had a right to rely upon Tesla's representations (and corresponding omissions) as Tesla maintained a monopolistic and exclusive control over what the software updates did or any other relevant and material information regarding the batteries and the defects as discussed herein.

302.   Tesla intended to induce—and did, indeed, induce—Plaintiff and the putative class members from purchasing their vehicles and downloading and installing the software updates, including 2019.16.1 and 2019.16.2 based upon its affirmative representations and omissions.

303.   Tesla knew that the Class Vehicles contained defective batteries as early as July 2017, and failed to inform Plaintiff, the putative class members, and the general public of the defects.

304.    Plaintiff and the putative class members sustained damages as a result of their reliance on Tesla's fraudulent omissions and misrepresentations, thus causing Plaintiff and the putative class members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT 12
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (California Law)

305.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

306.    Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

307.    In every contract or agreement there is an implied promise of good faith and fair dealing under California Law.

308.    As described herein, contracts with California's choice of law provisions govern the agreements between Tesla and its customers.

309.    In dealings between Tesla and its customers, Tesla has power to affect the rights of its users.

310.    Tesla entered into contracts with Plaintiff and the putative class members at the time of the download of software updates 2019.16.1 and 2019.16.2.

311.    Tesla contractually promised to Plaintiff and the putative class members that the software updates would add new features and enhance existing features over Wi-Fi. Tesla also represented that it would revise the "charge and thermal management settings on Model S and Model X vehicles via an over-the-air software update that will begin rolling out today, to help further protect the battery and improve battery longevity."

312.    Each Plaintiff and putative class member did all, or substantially all, of the things that the contracts required them to do.

313.   The software updates 2019.16.1 and 2019.16.2 limited the maximum usable battery capacity and throttled the performance and decreased the rate of charge of the batteries in the Class Vehicles.  These updates resulted in significant and severe drops in the number of rated miles available in Plaintiff and the other putative class members' vehicles.

314.   Tesla did not inform Plaintiff and the putative class members of the harm and negative effects that the software updates would cause to the Class Vehicles.  Tesla further failed to inform Plaintiff and the putative class members that they could replace the batteries in the Class Vehicles under warranty battery replacement.

315.   Despite its contractual promises and representations to the general public that the software updates would "increase longevity" and protect the batteries, Tesla instead purposefully took actions to reduce the amount of battery capacity available, lowered the charging speeds, and decreased the performance of the Class Vehicles, and purposefully failed to notify customers that the software updates would cause significant and severe damage to the Class Vehicles.  Tesla also purposefully failed to honor its promises and guarantees as warrantied, by failing to recognize the fact that Plaintiff and the putative class members were eligible for warranty battery replacement.

316.   Tesla's actions were objectively unreasonable given Tesla's promises.

317.   Tesla's conduct evaded and fraudulently took advantage of the bargain made between Tesla and the Plaintiff and other putative class members.

318.   As a result of Tesla's misconduct and breach of its duty of good faith and fair dealing, Plaintiff and the other putative class members suffered damages.  Plaintiff and the other putative class members did not receive their benefit of the bargain for which they contracted and for which they paid valuable consideration for.

/ / /

/ / /

/ / /

## COUNT 13
## MONEY HAD AND RECEIVED
### (California Law)

319.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

320.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

321.   As a result of the Plaintiff's and class members' purchase of the vehicles, Tesla obtained money for its own use and benefit, and, as a result of its breaches of contract and breaches of the good faith and fair dealing implied and required by those agreements, became indebted to the Plaintiff and other putative class members in an amount to be determined at trial.

322.   No part of any of the monies due and owing to Plaintiff and the putative class members has been repaid, although Plaintiff and the putative class members demand repayment, which leaves the balance due, owing, and unpaid by Tesla in an amount to be determined at trial with interest.

## COUNT 14
## BREACH OF EXPRESS WARRANTY
### (Cal. Comm. Code § 2313)

323.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

324.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

325.    Tesla provided all nationwide purchasers of the Class Vehicles with a 48 month or 50,000-mile limited warranty and a 24 month or 100,000-mile warranty (the "Warranties") against defects in materials and/or workmanship.

326.    Tesla also provided all Class Vehicles with an 8-year, unlimited-mile warranty which would cover the Class Vehicle's drivetrain and batteries.

327.    The Warranties were provided in consideration for the purchase of the Class Vehicles, became part of the basis of the bargain, because they were incorporated into the purchase agreements of all Class Vehicles.

328.    Plaintiff and the putative class members learned about the existence of such Warranties pre-purchase, and as reasonable consumers, relied on the existence of such warranties.  Plaintiff and the putative class members conduct of purchasing the Class Vehicles is in accordance with their reliance on said Warranties.

329.    The severe battery degradation defect complained of herein is a defect in materials and/or workmanship and is covered under the Warranties.  Applying any warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, inter alia, the Class Vehicles contained a defect at the time of delivery, Tesla was either aware of or consciously and/or recklessly disregarded this defect which could not have been discovered by Plaintiff and putative class members at the time of such purchase, and purchasers lacked any meaningful choice with respect to the terms provided by the Warranties.

330.    Tesla further breached the express warranties by issues software updates 2019.16.1 and 2019.16.2 as alleged herein.  Tesla knew, or failed to utilize due diligence in knowing, that these software updates would lead to a substantial decrease in the number of rated miles available in the vehicles of Plaintiff and the putative class members.

331.   Tesla intentionally manipulated the software coding to avoid its duties and legal obligations as warrantied by manipulating the number of miles that were displayed on Plaintiff and the putative class members' vehicles.

332.   Plaintiff and the putative class members substantially performed all of their obligations under the Warranties, by presenting the Class Vehicles to authorized Tesla repair facilities during the warranty coverage period and/or by accepting all of the over-the-air updates provided by Tesla.  Plaintiff and the putative class members heeded to the advice of Tesla technicians by recalibrating the batteries of the Class Vehicles.

333.   Tesla breached and continues to breach said express warranties by failing to repair the defects in materials and workmanship in the batteries of the Class Vehicles and by failing to replace the batteries despite having intentionally caused the significant harm and damage that it further caused by issuing the software updates as discussed herein.

334.   Tesla's representations about the way in which consumers would be able to operate the Class Vehicles without paying much attention to the batteries created express warranties that the Class Vehicles would not have severely degraded batteries.

335.   Tesla's representations about the way in which it would issue over-the-air software updates to improve battery longevity and enhance the existing features created express warranties that the software updates 2019.16.1 and 2019.16.2 would not impact the already defective batteries' range and ability to charge the batteries at full charging speeds.

336.   Plaintiff and the putative class members have been injured as a result of Tesla's breach, as they did not get the benefit of their bargain, which included, inter alia, effective and not defective batteries that Tesla will not provide warranty batter replacements for.

337.   Tesla breached and continues to breach, said express warranties as alleged herein, because their vehicles are sold to purchasers with said battery defects and severe degradation, because Tesla fails to fix/repair the batteries through over-the-air updates

and in-store, and because Tesla fails to provide battery replacements to Plaintiff and the putative class members as warrantied.

338.   As a result of Tesla's breach of express warranties as set forth above and herein, Plaintiff and putative class members similarly situated have suffered and will continue to suffer damages in an amount to be determined at trial.

339.   Plaintiff and the putative class members are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds that Tesla was unjustly enriched with, and reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

**COUNT 15**
**BREACH OF IMPLIED WARRANTIES**
**(Cal. Comm. Code § 2314)**

340.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

341.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

342.   The Class Vehicles are manufactured goods.

343.   The transactions by which Plaintiff and the putative class members purchased the Class Vehicles were transactions for the sale of goods and at all times relevant, Tesla was the seller of the Class Vehicles and placed these products into the stream of commerce throughout the United States, including California.

344.   Plaintiff and the putative class members purchased the Class Vehicles online and picked them up at Tesla showroom locations after purchase.

345.   Plaintiff and the putative class members purchased the Class Vehicles and for the purpose and usage of the vehicles for transportation that would achieve approximately similar mileage to EPA estimates.

346.   Plaintiff and the putative class members purchased the Class Vehicles with the intent that they could be driven to the full range allowable and as advertised and displayed on for sale by Tesla.

347.   Each of the Class Vehicles were sold with implied warranties that any parts thereof were merchantable, were the same quality as those generally accepted in the trade, were not of poor or below average quality within the description and/or conformed to the affirmations of fact made by Tesla.

348.   At the time of purchase of the Class Vehicles, Tesla knew or had reason to know that Plaintiff and other putative class members were relying on Tesla's skill and judgment to inspect and certify the Class Vehicles for the particular purposes, and Plaintiff justifiably relied on Defendant's skill and judgment.

349.   Plaintiff and the putative class members were also aware that Tesla would issue software updates to their vehicles, for reasons such as improving and enhancing existing features, and as Tesla expressly represented, "to help further protect the battery and improve battery longevity."

350.   This became a part of the basis of the bargain between the parties.

351.   The Class Vehicles were non-conforming goods and/or goods that were not the same quality as those generally accepted in the trade, were of poor or below average quality as those generally accepted in the trade, because other vehicles similarly situated and sold by Tesla have not been affected by a sudden and significant decrease in the number of rated miles available as a result of the 2019.16.1 and 2019.16.2 software updates.

352.   The Class Vehicles and their batteries were of poor or below average quality within the description of electric vehicles provided by Tesla and did not possess the qualities that a buyer would have reasonably expected.  The Class Vehicles were not suitable for these purposes, and the software updates did not possess the qualities that Tesla represented they would.

353.    Plaintiff and the other putative class members purchased Tesla's vehicles believing that they had the qualities that were sought for, based on the deceptive advertising and fraudulent acts of Tesla, but the vehicles were not of the same quality as similar products in the product category generally acceptable in the trade.

354.    The Class Vehicles were not acceptable commercially and breached the implied warranty because they did not conform to the promises or affirmations of fact made Tesla's website and other marketing materials, Cal. Comm. Code § 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).  The software updates also breached the implied warranties that it would improve or enhance existing features of the vehicles, when in reality, the software updates caused significant harm.

355.    As a result of Tesla's breach, Plaintiff and other putative class members did not receive goods as impliedly warranted by Tesla.

356.    As a direct and proximate result of the foregoing, Plaintiff and the putative class members sustained losses and damage by not receiving the benefit of their bargain. Plaintiff and the putative class members have also sustained losses and damages due to the decrease in charging speeds, decrease in performance, and limited usable battery capacity which leads to a significantly decrease of rated miles and range available for the vehicles.

357.    Plaintiff and the putative class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which have been unjustly enriched by Tesla.

### COUNT 16
### INTENTIONAL MISREPRESENTATION
### (Cal. Civ. Code §§ 1709-1710)

358.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

359.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class.  In the alternative, Plaintiff brings this count on his own behalf and on behalf of the California Subclasses.

360.   At all relevant times, Tesla was engaged in the business of designing, manufacturing, distributing, and selling the Class Vehicles.

361.   Tesla, acting through its representatives or agents, delivered the Class Vehicles to retail stores, distributors, and other distribution channels.

362.   Tesla willfully, falsely and knowingly omitted various material facts regarding the quality and character of the vehicles, the defective batteries, and the software updates.

363.   Rather than inform Plaintiff and the putative class members of the trust regarding the battery defects, and that the software updates 2019.16.1 and 2019.16.2 would significantly decrease their vehicles' performance, lose rate of charging speeds, and ultimately lose a significant percentage of rated mileage range, Tesla misrepresented the true content of the software updates, and that downloading and installing the same would cause severe and significant damages to the vehicles.

364.   Tesla did so to avoid and escape its legal duties and obligations to Plaintiff and the putative class to provide warranty battery replacements.

365.   Tesla represented to Plaintiff and the putative class members that it would provide warranty battery replacements under certain conditions.  Tesla also represented to Plaintiff and the putative class members that software updates would improve, not negatively affect, the overall functionality of the vehicles and related features.

366.   Tesla knew that such a representation was false, at least to Plaintiff, that the software updates were issued to improve battery longevity and protect the batteries of the Class Vehicles.

367.   Plaintiff, and the putative class members, reasonably relied upon Tesla's representations regarding the software updates and safety of the Class Vehicles' batteries.

368.   Plaintiff and the putative class members could not have discovered the misleading nature of Tesla's misrepresentations on their own, because Tesla is in exclusive possession of such information, including the software update coding and material information exclusive to Tesla with regards to the batteries of the Class Vehicles.

369.   Tesla had a duty to ensure the accuracy of its statements published with regards to software updates 2019.16.1 and 2019.16.2, and was obligated to ensure the accuracy of the information it represented, and/or that thee software updates would essentially cripple and take away battery capacity from Plaintiff and the other putative class members.

370.   Tesla misrepresented material facts partly to pad and protect its profits, as it saw that profits and sales for its vehicles were falling and tried to maintain and grow its reputation as the best electric car manufacturer in the world.  Tesla attempted to cut costs by denying rightful warranty battery replacements, despite having been the reason and cause of the harm and damages suffered by Plaintiff and the putative class members. Such benefits came at the expense of Plaintiff and the putative class members.

371.   Plaintiff and the putative class members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth. Plaintiff's and the putative class members' actions were justified given Tesla's misrepresentations. Tesla was in the exclusive control of material facts, and such facts were not known to the public.

372.   Due to Tesla's misrepresentations, Plaintiff and the putative class members sustained injury due to the purchase of Tesla's vehicles that did not live up to performance representations, and the installation of the software updates that served to limit the battery capacity, decrease charging speeds, and decrease performance of said vehicles.  Plaintiff and the class members are entitled to recover full or partial refunds for their vehicles, or battery replacements that they purchased due to Tesla's

misrepresentations, or they are entitled to damages for the diminished value of their vehicles, with amounts to be determined at trial.

373.   Tesla's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and the putative class members' rights and well-being, and in part to enrich itself in California at the expense of consumers worldwide.  Tesla's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competitor vehicles. Tesla's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

**COUNT 17**
**NEGLIGENT MISREPRESENTATION**
**(Cal. Civ. Code §§ 1709-1710)**

374.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

375.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

376.   Tesla negligently and recklessly omitted certain material facts regarding the vehicles, their batteries, and the impact that the software updates, including 2019.16.1 and 2019.16.2 would have on their vehicles.

377.   Tesla failed to warn Plaintiff and the putative class members that their vehicles contained material and potentially-life endangering defects, that resulted in car fires and resulted in their vehicles not operating or performing as warranted or advertised. Additionally, Tesla failed to warn its customers that the software updates that were disguised as an improvement on battery longevity and safety would actually degrade the performance of the Class Vehicles, limit the number of rated miles available, increase the amount of time needed to charge the vehicles, and result in the placement of a charge limitation and reduction of the usable maximum battery capacity of the vehicles.

378.   The advertisements and warranties, which were made expressly through uniform representations from Tesla that emanated from its corporate headquarters in California, were material and would have been considered by a reasonable consumer in making purchasing decisions.

379.   Plaintiff and the putative class members acquired Tesla's vehicles, downloaded and installed Tesla's software updates, including 2019.16.1 and 2019.16.2 with the belief that the batteries would not be limited in range, charging speed, and performance, and that operation of their vehicles would function as advertised and represented to Plaintiff and the putative class members.

380.   As a result, Plaintiff and the putative class members were directly and proximately injured by Tesla's negligence in failing to inform Plaintiff and the putative class members of the material defects in the batteries of the Class Vehicles and that the software would improve the battery health and longevity of the Class Vehicles.

## COUNT 18
## FRAUD BY CONCEALMENT
### (Cal. Civ. Code § 3294)

381.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

382.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

383.   Tesla concealed and suppressed material facts concerning the battery health and status of the Class Vehicle batteries.

384.   More specifically, Tesla concealed and suppressed material facts concerning the design, safety, performance, and quality of the Class Vehicles and the batteries in the Class Vehicles.  As alleged herein, notwithstanding its promises regarding the batteries of the Class Vehicles and warranties both express and implied regarding the same, Tesla knowingly and intentionally represented to consumers that the Class Vehicles would

receive full inspections prior to sale.  Tesla conducted full inspections of the Class Vehicles, which would include testing the batteries of the Class Vehicles to determine the maximum battery capacity of the Class vehicles.

385.   Tesla fraudulently concealed the results of any inspection performed on the Class Vehicles, including any results from testing of the batteries and maximum battery capacity of the Class Vehicles.  Tesla did so in order to boost sales of the Class Vehicles and in order to falsely assure consumers that the Class Vehicles were fully inspected and performing as promised.  The false representations were material to consumers, both because they concerned the safety and performance of the Class Vehicles, and because the representations played a significant role in the value of the Class Vehicles.

386.   Plaintiff and the other Class members viewed advertising on Tesla's website, read promotional materials, and heard a plethora of Tesla information regarding the safety, performance, and quality of Tesla vehicles and Class Vehicles, including the battery health and maximum battery capacity.  They had no way of knowing that Tesla's representations were false and gravely misleading and there was no way that Plaintiff and the other Class members could have unraveled Tesla's deception.

387.   Tesla failed to provide any inspection checklist or report for any of the Class Vehicles, nor did Tesla provide any type of written disclosure regarding the battery health and maximum battery capacity of the Class Vehicles.  Tesla had a duty to disclose the true battery health and maximum battery capacity of the Class Vehicles because the tests could only have been conducted by Tesla.  Tesla had readily available access to this information, superior knowledge, and understood this information.  Tesla knew that these facts would be difficult and nearly impossible for this information to be discovered by Plaintiff and the other putative class members.  Tesla failed to disclose and/or fraudulently concealed material information regarding the batteries of the Class Vehicles, which are material concerns to consumers because they directly impact the safety, performance, and value of the Class Vehicles.

388.   Tesla actively concealed and/or suppressed these material facts, including facts regarding the batteries and degradation of the Class Vehicles, in whole or in part, to pad and protect its profits and to burnish the perception that its vehicles were the leading edge of electric vehicle and battery technology, which perception would enhance the brand's image and garner Tesla more money and profits.  However, Tesla did so at the expense of Plaintiff and the other putative class members.

389.   Plaintiff and the other putative class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased Class Vehicles manufactured by Tesla, would not have paid a premium for a Class Vehicle sold by or through Tesla, and would not have continued to drive the Class Vehicles.  Tesla was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or the other Class members.  This includes the results and testing information of the batteries of the Class vehicles and any information regarding the capacity of the batteries.

390.   Based on the concealment and/or suppression of the material facts, Plaintiff and the other Class members sustained damages because they did not receive the value for: (1) the Class Vehicles that should have been operating at close, or near to the approximate mileage rating for the Class Vehicles; and (2) the value of purchased a Class Vehicle that was provided a warranty by Tesla.  Had Plaintiff and the other putative class members been aware of the severely deteriorated, defective, faulty, and abnormally degraded health and significantly lower than advertised mileage ratings of the Class Vehicles, they would certainly have paid less for the Class Vehicles, or they would not have purchased or leased them at all.

391.   Accordingly, Tesla is liable to Plaintiff and the putative class members for damages in an amount to be proven at trial.

392.    Tesla's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff and the other putative class members' rights and well-being, and as part of efforts to enrich itself in California at the expense of consumers.  Tesla's conduct warrants an assessment of punitive damages sufficient to deter such conduct in the future, the amount which shall be determined according to proof.

**COUNT 19**
**QUASI CONTRACT/RESTITUTION/UNJUST ENRICHMENT**
**(California Law)**

393.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

394.    Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

395.    Tesla intentionally and recklessly made misrepresentations and concealed facts about the Class Vehicles to Plaintiff and the putative class members with an intent to induce them to purchase the Class Vehicles.

396.    In reliance on Tesla's misrepresentations and concealment, Plaintiff and the putative class members believed that Tesla's vehicles contained safe and effective batteries that were not severely degraded or defective, and that they would be repaired or replaced under warranty as legally obligated to do so by Tesla.  Plaintiff and the putative class members relied upon Tesla's false statements and representations that the software updates, including 2019.16.1 and 2019.16.2 issued to its vehicles were for safety and to increase the battery health and longevity.  Plaintiff and the putative class members relied upon Tesla's false statements and representations that the software updates would enhance their vehicles and were deceived by Tesla's fraudulent denial of warranty battery replacements following the damage caused by Tesla's acts.

397.   Plaintiff and the putative class members made monetary payments to Tesla to purchase the vehicles or are deemed as legally rightful subsequent owners of the vehicles, for which Tesla received and has been unjustly enriched by accepting such payments for.

398.   Plaintiff and the putative class members are entitled to restitution based on the contract and the quasi contract between Plaintiff and the putative class members and Tesla, and each of them, to be determined at trial.

399.   Furthermore, Tesla's conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiff and the putative class members.  Tesla is therefore liable to pay punitive damages as allowable and to the full extent permitted under California law.

## IX.   REQUEST FOR RELIEF

400.       WHEREFORE, Plaintiff DAVID RASMUSSEN, individually and on behalf of the putative class members and the proposed classes, respectfully requests that the Court enter judgment in their favor and against Defendant Tesla, Inc., as follows:

A.       Certification of the proposed classes, including appointment of Plaintiff's counsel as class counsel;

B.       An order temporarily and permanently enjoining Tesla from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this complaint;

C.       Injunctive relief in the form of a recall, as applicable to the CLRA cause of action only;

D.       Equitable relief in the form of buyback of a buyback of the Class Vehicles; or an order requiring Tesla to offer battery replacements as warranted by Tesla at no cost to Plaintiff and the putative class members;

E.       Costs, restitution, damages, including punitive and exemplary damages, penalties, and disgorgement in an amount to be determined at trial;

F.      An order requiring Tesla to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees to Plaintiff's counsel; and

H.      Such other or further relief as may be appropriate.

## X.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated:  August 7, 2019                    LAW OFFICES OF EDWARD C. CHEN

                                          By      /s/ *Edward C. Chen*
                                                  Edward C. Chen (SBN 312533)

                                          1 Park Plaza, Suite 600
                                          Irvine, CA 92614
                                          Telephone:   (949) 287-4278
                                          Facsimile:   (626) 386-6060
                                          Email: Edward.Chen@edchenlaw.com

                                          *Attorney for Plaintiff David Rasmussen and the*
                                          *Proposed Classes*