1  Robert J. Nelson (State Bar No. 132797)
   rnelson@lchb.com
2  Nimish R. Desai (State Bar No. 244953)
   ndesai@lchb.com
3  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:  (415) 956-1008

6  *Attorneys for Plaintiff and the Proposed Class*

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12 DAVID RASMUSSEN, an individual, on behalf     Case No.  5:19-cv-04596-BLF
   of himself and all others similarly situated,
13                                                **PLAINTIFF'S NOTICE OF MOTION
                      Plaintiff,                  AND MOTION FOR PRELIMINARY
14                                                APPROVAL OF CLASS
            v.                                    SETTLEMENT AND DIRECTION OF
15                                                NOTICE UNDER RULE 23(E)**
   TESLA, INC. d/b/a TESLA MOTORS, INC., a
16 Delaware corporation,                         Date:       December 9, 2021
                                                 Time:       9:00 a.m.
17                    Defendant.                 Judge:      Hon. Beth Labson Freeman
                                                 Courtroom:  3
18

19

20

21

22

23

24

25

26

27

28

1   TO THE ABOVE-NAMED COURT AND TO THE PARTIES AND TO THEIR

2   ATTORNEYS OF RECORD:

3   PLEASE TAKE NOTICE that on December 9, 2021, at 9:00 a.m. at 280 South 1st Street,

4   5th Floor, Courtroom 3, San Jose, CA 95113, Plaintiff David Rasmussen will and hereby does

5   move the Court for an order pursuant to Fed. R. Civ. P. 23(e)(1) granting Plaintiff's Motion for

6   Preliminary Approval of Class Settlement and for Direction of Notice Under Rule 23(e).  Plaintiff

7   requests that in this order the Court do the following:

8   (a)   Grant preliminary approval of the proposed Settlement (attached as Exhibit 1 to the

9         Nelson Declaration);

10  (b)   Certify, for settlement purposes, the Settlement Class as defined in the Settlement,

11        pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

12  (c)   Appoint Plaintiff as Settlement Class Representative representing the Settlement

13        Class;

14  (d)   Appoint Robert J. Nelson and Nimish R. Desai of Lieff Cabraser Heimann &

15        Bernstein, LLP; and Edward C. Chen of YK Law LLP as Settlement Class Counsel;

16  (e)   Approve the proposed notice program set forth in the Settlement, including the

17        proposed forms of notice, and direct that notice be disseminated pursuant to such

18        notice program and Fed. R. Civ. P. 23(e)(1);

19  (f)   Appoint Angeion Group as Settlement Administrator and direct Angeion Group to

20        carry out the duties and responsibilities of the Settlement Administrator as set forth

21        in the Settlement;

22  (g)   Set deadlines for Settlement Class Members to request exclusion from the

23        Settlement Class and to object to the Settlement;

24  (h)   Stay all non-Settlement-related proceedings in this lawsuit pending final approval of

25        the Settlement; and

26  (i)   Schedule a Fairness Hearing and certain other dates in connection with the final

27        approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

28  This motion is based on this notice of motion and motion; the accompanying memorandum

of points and authorities; the Settlement, including all exhibits thereto; the declarations of Robert J. Nelson, Edward C. Chen, and Sean P. Gates filed herewith; the argument of counsel; all papers and records on file in this matter, and such other matters as the Court may consider.

Dated: July 28, 2021

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____ .
    Nimish R. Desai

Robert J. Nelson (State Bar No. 132797)
rnelson@lchb.com
Nimish R. Desai (State Bar No. 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiff and the Proposed Class*

1  Robert J. Nelson (State Bar No. 132797)
   rnelson@lchb.com
2  Nimish R. Desai (State Bar No. 244953)
   ndesai@lchb.com
3  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:  (415) 956-1008

6  *Attorneys for Plaintiff and the Proposed Class*

7

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11               **SAN FRANCISCO DIVISION**

12  DAVID RASMUSSEN, an individual, on         Case No.  5:19-cv-04596-BLF
    behalf of himself and all others similarly
13  situated,                                  **PLAINTIFF'S MEMORANDUM OF**
                                               **POINTS AND AUTHORITIES IN**
14               Plaintiff,                     **SUPPORT OF MOTION FOR**
                                               **PRELIMINARY APPROVAL OF CLASS**
15       v.                                    **SETTLEMENT AND DIRECTION OF**
                                               **NOTICE UNDER RULE 23(E)**
16  TESLA, INC. d/b/a TESLA MOTORS, INC., a
17  Delaware corporation,                      Date:        December 9, 2021
                                               Time:        9:00 a.m.
18               Defendant.                     Judge:       Hon. Beth Labson Freeman
                                               Courtroom:   3
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.      The Alleged Conduct ............................................................................................... 2

II.     Plaintiff's Counsel's Investigation and Informal Discovery................................... 2

III.    Settlement Negotiations ........................................................................................... 3

SUMMARY OF THE SETTLEMENT TERMS .................................................................. 3

I.      The Settlement Class ................................................................................................ 3

II.     The Settlement Fund ................................................................................................ 4

        A.      Payments to Settlement Class Members ...................................................... 4

        B.      Diagnostic for In-Warranty Vehicles .......................................................... 4

        C.      Administrative Costs .................................................................................... 4

        D.      Attorneys' Fees, Expenses, and Service Awards ......................................... 5

III.    Notice Program ........................................................................................................ 5

        A.      Direct Notice to Settlement Class Members ................................................ 5

        B.      Settlement Website and Toll-Free Number.................................................. 6

        C.      CAFA Notice ............................................................................................... 6

        D.      Opt-Out and Objection Procedures .............................................................. 6

IV.     Release ..................................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      Overview of the Class Settlement Approval Process............................................... 7

II.     The Proposed Settlement Meets the Standards for Preliminary Approval .............. 7

        A.      The Settlement Is the Product of Good Faith, Informed, Arm's-Length
                Negotiations (Fed. R. Civ. P. 23(e)(2)(B)). ................................................ 8

        B.      Plaintiff and Plaintiff's Counsel Have and Continue to Zealously Represent
                the Class (Fed. R. Civ. P. 23(e)(2)(A)). ...................................................... 8

        C.      The Settlement Represents a Strong Result for the Settlement Class,
                Particularly Given the Risks and Likely Duration of Ongoing Litigation
                (Fed. R. Civ. P. 23(e)(2)(C)). ...................................................................... 9

        D.      The Settlement Treats Class Members Equitably (Fed. R. Civ. P.
                23(e)(2)(D)).................................................................................................. 11

        E.      The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P.
                23(e)(2)(C)(ii)). ........................................................................................... 11

        F.      Plaintiff's Counsel Will Seek Reasonable Attorneys' Fees and
                Reimbursement of Their Litigation Expenses (Fed. R. Civ. P.
                23(e)(2)(C)(iii)). .......................................................................................... 12

III.    The Court Should Provisionally Certify the Settlement Class................................. 12

        A.      The Requirements of Rule 23(a) are Satisfied. .......................................... 13

                1.      Numerosity (Rule 23(a)(1)) ............................................................. 13

# TABLE OF CONTENTS
**(continued)**

**Page**

2.      Commonality (Rule 23(a)(2)) ................................................................. 13

3.      Typicality (Rule 23(a)(3)) ....................................................................... 13

4.      Adequacy of Representation (Rule 23(a)(4)) .......................................... 13

B.      The Requirements of Rule 23(b)(3) Are Satisfied ................................................ 14

IV.     The Proposed Notice Program Complies with Rule 23 and Due Process........................ 15

V.      The Court Should Schedule a Fairness Hearing and Related Dates. ............................... 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................ 12, 14

*Butler v. Sears, Roebuck & Co.,*
    702 F.3d 359 (7th Cir. 2012) ......................................................................................... 14

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ........................................................................................... 7

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ......................................................................................... 8

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ...................................................................................................... 15

*Evon v. Law Offices of Sidney Mickell,*
    688 F.3d 1015 (9th Cir. 2012) ....................................................................................... 13

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 8

*Hernandez v. Cty. of Monterey,*
    305 F.R.D. 132 (N.D. Cal. 2015) ............................................................................. 12, 13

*In re Bluetooth Headset Products Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ........................................................................................... 8

*In re First Alliance Mortg. Co.,*
    471 F.3d 977 (9th Cir. 2006) ......................................................................................... 14

*In re Hyundai & Kia Fuel Econ. Litig.,*
    926 F.3d 539 (9th Cir. 2019) ......................................................................................... 15

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008) ......................................................................................... 7

*Jimenez v. Allstate Ins. Co.,*
    765 F.3d 1161 (9th Cir. 2014) ....................................................................................... 12

*Just Film, Inc. v. Buono,*
    847 F.3d 1108 (9th Cir. 2017) ....................................................................................... 15

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ......................................................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) .................................................................................................. 14

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ...................................................................................................... 13

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ....................................................................................... 15

**Rules**

Fed. R. Civ. P. 23(b) ...................................................................................... 3, 12, 14, 15

Fed. R. Civ. P. 23(c) .............................................................................................. 15, 16

**TABLE OF AUTHORITIES**
**(continued)**

Page

Fed. R. Civ. P. 23(e) .............................................................................................................. passim

Procedural Guidance for Class Action Settlements
   https://www.cand.uscourts.gov/forms/
   procedural-guidance-for-class-action-settlements/ ........................................................... passim

**Other Authorities**

*Manual for Compl. Litig.*, § 21.632 (4th ed. 2014) ........................................................................ 19

**Treatises**

5 *Moore's Federal Practice—Civil* § 23.22 (2016) ........................................................................ 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The parties have reached an agreement to settle Plaintiff's claims regarding Tesla's temporary limitation of maximum battery voltage in 1,743 Model S sedans ("Class Vehicles"). Pursuant to the terms of the Settlement,[1] Defendant Tesla, Inc. will pay $1,500,000 to create a non-reversionary common Settlement Fund, from which a $625 payment will be made for each Class Vehicle. This amount is many times the prorated value of the temporarily reduced maximum voltage, and thus represents an excellent and efficient result for the Settlement Class. In return, the Settlement Class will release claims related to the software updates that imposed and then restored the batteries' maximum voltage.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate, and warrants preliminary approval. It is the product of detailed informal discovery regarding the scope of the maximum voltage limitation in the affected vehicles, a day-long negotiation overseen by two experienced and well-respected mediators, Cathy Yanni, Esq. and the Honorable Daniel Weinstein (ret.) of JAMS, and months of further negotiations following the mediation. In negotiating the Settlement, the parties and their counsel were well informed about the issues, the strengths and weaknesses of their respective positions, and the risks of litigation faced by each side.

The Settlement also provides for an efficient and appropriate class notice program that includes direct mail notice to all Settlement Class Members as well as the establishment of a dedicated Settlement Website and an informational toll-free number. The proposed notice program comports with Rule 23, due process, and best practices.

Plaintiff and his undersigned counsel believe the Settlement to be in the best interests of the Settlement Class Members and seek to begin the Court approval process that is required for all class action settlements. Plaintiff therefore respectfully requests that the Court preliminarily approve the Settlement, certify the Settlement Class for settlement purposes, direct notice to the Settlement Class pursuant to the proposed notice program, schedule a Fairness Hearing, and grant the related relief requested herein.

---

[1] The Settlement Agreement and Release (the "Settlement") is Exhibit 1 to the July 28, 2021 Declaration of Robert J. Nelson ("Nelson Decl.") filed herewith. Unless otherwise specified, capitalized terms herein refer to and have the same meaning as in the Settlement.

PLAINTIFF'S MEMO ISO MOT. FOR
PRELIM. APPROVAL OF CLASS SETTLEMENT
CASE NO. 5:19-CV-04596-BLF

1

## BACKGROUND

2

### I.      The Alleged Conduct

3       Plaintiff filed suit in August 2019, and by October 2019, the parties agreed to stay the

4   litigation in order to pursue settlement discussions.  *See* Dkt. Nos. 1, 18.  Although the Complaint

5   raised multiple issues, this proposed Settlement—and the attendant release—are narrowly focused

6   on Plaintiff's allegations that in May 2019, Tesla released an over-the-air software update that

7   reduced the maximum voltage to which the batteries on certain Tesla Model S vehicles could be

8   charged.  Plaintiff further alleged that as a result of this voltage limitation, the maximum range of

9   the Settlement Class Vehicles was reduced.  Plaintiff alleged violations of state consumer protection

10  statutes as well as common law claims, seeking damages and equitable relief.

11

### II.     Plaintiff's Counsel's Investigation and Informal Discovery

12      Prior to filing suit, and continuing through the course of informal discovery and mediation,

13  Plaintiff's Counsel conducted an extensive investigation into the factual and legal issues raised in

14  this litigation.  These investigative efforts have included, *inter alia*, speaking with numerous Tesla

15  drivers about their experiences, reviewing discovery from Tesla regarding the Settlement Class

16  Vehicles and the operative software updates, and retaining and consulting a leading expert in

17  electric vehicle batteries.  Plaintiff's Counsel also researched and analyzed the legal issues

18  regarding the claims pled and Tesla's potential defenses.  Nelson Decl. ¶¶ 18–21; July 28, 2021

19  Declaration of Edward C. Chen ("Chen Decl.") ¶ 4.

20      Tesla's data show that 1,743 Model S vehicles in the United States were subject to a 10%

21  maximum voltage limitation caused by a May 2019 software update.  *See* July 27, 2021

22  Declaration of Sean P. Gates ("Gates Decl.") ¶ 2.  A subsequent update in July 2019 restored

23  about 3% of the battery voltage in these vehicles, and a third update released in March 2020 is

24  designed to fully restore the batteries' voltage over time as the vehicles are driven.  *Id.* ¶ 3.  The

25  restoration has proceeded as planned and, to date, Tesla's data shows that of the 1,722 vehicles

26  for which there is data, 1,552 have had their maximum battery voltage fully restored, 79 have

27  been restored to between 95.5% and 99%, and 34 have been restored to between 93% and

28  95.5%.  *Id.* ¶ 4.  The maximum voltage on the latter vehicles should continue to be restored over

time as the vehicles are driven.  Of the remaining vehicles, 57 have had battery replacements.  *Id.*  Ready access to data from the final 21 vehicles is not available (not unusual for older vehicles), but the data above shows that the update works as planned and there is no reason to doubt that the voltage restoration update will work similarly in these vehicles.  *Id.* ¶ 5.

In sum, Plaintiff's Counsel's investigation confirmed that the voltage limitation was temporary, with a 10% reduction lasting about 3 months, and a smaller 7% reduction lasting another 7 months before the corrective update was released in March 2020.  Following that second update, the vehicles' voltage showed steady restoration over time.

### III.    Settlement Negotiations

The Settlement is the product of arms-length negotiations.  The parties and their counsel participated in a full-day mediation with the Honorable Daniel Weinstein (ret.) and Cathy Yanni, Esq. of JAMS on July 24, 2020.  After that full day, the parties reached an agreement in principle to resolve this case.  Only after agreement on the substantive terms had been reached, the parties negotiated a percent-of-the-fund attorney fee request to which Tesla would not object.  Since reaching an agreement in principle, the parties have worked diligently to monitor the restoration of battery voltage in the Settlement Class Vehicles, draft the written settlement agreement, notices, and other settlement exhibits, and to select the proposed Settlement Administrator through a competitive bidding process.  Nelson Decl. ¶¶ 22–28; Chen Decl. ¶ 5; Gates Decl. ¶ 6.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    The Settlement Class

Plaintiff seeks certification under Rule 23(b)(3), for settlement purposes, of a "Settlement Class," defined as:

> All United States residents who, anytime during the period from May
> 15, 2019 through September 1, 2020, owned or leased a Tesla Model
> S vehicle that experienced a limitation of maximum battery voltage
> as the result of the software update issued by Tesla in May 2019.

*See* Settlement § I.A.  Entities or persons affiliated with Tesla or the Court are excluded from the Settlement Class.  *Id.*  Tesla does not oppose certification of the Settlement Class for settlement

1   purposes only.  *Id.* § I.B.

2          The Settlement Class is substantially narrower than the proposed definition in the

3   Complaint.  *See* Dkt. No. 1 (Complaint) ¶¶ 124–25.  The Settlement Class definition reflects the

4   scope of the Settlement and the attendant release and does not encompass other conduct referenced

5   in the Complaint.  *See* Procedural Guidance for Class Action Settlements,

6   https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements (last

7   updated Dec. 5, 2018) (hereinafter, "Procedural Guidance"), Prelim. Approval §§ 1(a) & 1(c).

8   **II.      The Settlement Fund**

9          Under the Settlement, Tesla will create a Settlement Fund of $1,500,000.  The Settlement

10  Fund will be used to pay only the settlement payments to Settlement Class Members and attorneys'

11  fees and expenses.  Tesla will separately pay any notice and settlement administration costs.  *See*

12  Settlement § II.A.1; *see also* Procedural Guidance, Prelim. Approval § 1(f).

13         **A.      Payments to Settlement Class Members**

14         The entirety of the Settlement Fund, less Court-awarded attorneys' fees and expenses for

15  Plaintiff's Counsel and any service award for Plaintiff, will be distributed to the Settlement Class.

16         Once fees, costs, and the service award are deducted, the Settlement will fund a $625

17  payment for each Class Vehicle.  Those who owned or leased the Class Vehicle over the relevant

18  time period will receive this entire payment.  For the relatively small percentage of Settlement Class

19  Members who may have owned or leased their cars for only part of the relevant period (*i.e.*, the

20  Class Vehicle was sold or transferred to a new lessee during this time), the $625 payment will be

21  prorated.  *See* Settlement § II.B.

22         **B.      Diagnostic for In-Warranty Vehicles**

23         As part of the Settlement, Tesla has also agreed to maintain diagnostic software for in-

24  warranty vehicles to notify owners and lessees of vehicles that Tesla determines may need battery

25  service or repair for certain battery issues.  *See* Settlement § II.A.2.

26         **C.      Administrative Costs**

27         The Settlement Administrator's fees and costs—*i.e.*, costs incurred in implementing the

28  notice program, administering claims, mailing checks, and performing the other administrative

1  tasks described in the Settlement—will be paid separately by Tesla.  Settlement § II.A.4.

2          The proposed Settlement Administrator, Angeion Group ("Angeion"), was selected through

3  a competitive bidding process.  Tesla, in consultation with Plaintiff's Counsel, received and

4  analyzed bids from three very experienced administrators as part of this process.  Gates Decl. ¶ 6;

5  Nelson Decl. ¶¶ 27–28.  Angeion is a well-known administration firm that has successfully

6  administered numerous class settlements and judgments.  Nelson Decl. ¶ 27.  Angeion estimates

7  that the Administrative Costs in this case will be approximately $30,000.  *Id.*; *see also* Procedural

8  Guidance, Prelim. Approval § 2.

9          **D.      Attorneys' Fees, Expenses, and Service Awards**

10         Pursuant to the Settlement, Plaintiff's Counsel will apply to the Court for an award of

11  reasonable attorneys' fees and reimbursement of litigation expenses in a total amount not to exceed

12  $410,000, inclusive of $36,111.86 in expenses.  As a percentage of the fund, this is approximately

13  27%, or 25% exclusive of costs.  Plaintiff's Counsel will also apply for a services award of up to

14  $1,000 for the Plaintiff, to compensate him for his efforts and commitment on behalf of the

15  Settlement Class.  Plaintiff's Counsel's fee application will be filed no later than thirty-five (35)

16  days in advance of the opt-out and objection deadline.  Any attorneys' fees, expenses, and service

17  awards granted by the Court will be paid from the Settlement Fund.  *See* Settlement §§ IV.H.3, V.

18  **III.     Notice Program**

19         The parties' proposed notice program is set forth in Section IV of the Settlement, and

20  consists of the following:

21         **A.      Direct Notice to Settlement Class Members**

22         Within 14 days of the Preliminary Approval Order, Tesla will provide the Settlement

23  Administrator with a list of the affected VIN numbers and Settlement Class Members' contact

24  information.  *See* Settlement § IV.A.  Within 100 days of the Preliminary Approval Order, the

25  Administrator shall send direct Summary Notice to all Settlement Class Members via the U.S.

26  Postal Service.  *Id.* § IV.C.  The proposed form of the postcard notice is attached to the Settlement

27  as Exhibit B.  The Settlement Administrator will promptly re-mail any postcard notices returned as

28  undeliverable with forwarding address information to the new address.  *Id.* § IV.D.

1

**B.      Settlement Website and Toll-Free Number**

2      In addition, at least one day before any direct notices are sent, the Settlement Administrator

3 will establish a Settlement Website where Settlement Class Members can view the Settlement, the

4 long-form Class Notice (substantially in the form attached as Exhibit A to the Settlement), and

5 other key case documents, and obtain further information about the Settlement and their rights.  The

6 Settlement Administrator will also establish a Toll-Free Number where Settlement Class Members

7 can obtain additional information and request that a hard copy of the full Class Notice be mailed to

8 them.  *See* Settlement § IV.B.

9

**C.      CAFA Notice**

10      Within ten days of the filing of this motion, Tesla (or the Settlement Administrator at

11 Tesla's direction) will serve a notice of the proposed Settlement, in accordance with 28 U.S.C.

12 § 1715, upon the appropriate State and Federal officials.  Settlement § III.B; *see also* Procedural

13 Guidance, Prelim. Approval § 10.

14

**D.      Opt-Out and Objection Procedures**

15      Any person within the Settlement Class definition may request to be excluded from the

16 Settlement by sending a signed request, including their contact information and stating their desire

17 to be excluded, to the Settlement Administrator, postmarked or delivered by the deadline stated in

18 the Notice.  Any Settlement Class Member who does not submit a timely and valid exclusion

19 request may object to the Settlement, Plaintiff's Counsel's application for attorneys' fees and

20 expenses, and/or the request for a service award.  To be considered, an objection must be in writing,

21 must be filed with or mailed to the Court and mailed to the Settlement Administrator, must be

22 filed/postmarked by the deadline stated in the Notice, and must include the information required by

23 the Class Notice.  The parties propose that the deadline for exclusion requests and objections (the

24 "Exclusion/Objection Deadline") be set for forty-five (45) days after the Notice Date.  Settlement

25 §§ IV.G.1, IV.H.2; *see also* Procedural Guidance, Prelim. Approval § 9.

26 **IV.    Release**

27      In exchange for the consideration provided under the Settlement, Settlement Class Members

28 will release Tesla from any claims arising from or relating to the changes to maximum battery

1    voltage caused by the software updates Tesla issued in May 2019, July 2019 and March 2020.

2    Settlement § VI.B.  The scope of the release tracks the conduct addressed by this Settlement, and

3    not the other issues initially raised by Plaintiff in the Complaint.  *See id.*; *see also* Procedural

4    Guidance, Prelim. Approval § 1(c).

5                                       **ARGUMENT**

6    **I.      Overview of the Class Settlement Approval Process**

7              Pursuant to Rule 23(e), a class action settlement must be approved by the court before it can

8    become effective.  The process for court approval is comprised of two principal steps:

9              (1)     Preliminary approval of the proposed settlement and direction of
                       notice to the class; and

10

11             (2)     A final approval hearing, at which argument concerning the
                       fairness, adequacy, and reasonableness of the settlement is
                       presented.

12

13   By this motion, Plaintiff respectfully asks the Court to take the first step and enter an order

14   preliminarily approving the Settlement and directing notice to the Settlement Class, pursuant to the

15   parties' proposed notice program, under Rule 23(e)(1).

16   **II.     The Proposed Settlement Meets the Standards for Preliminary Approval**

17             In evaluating a motion for preliminary settlement approval, the court conducts a preliminary

18   assessment of the factors that will be evaluated at the final approval stage. Fed. R. Civ. P. 23(e)(1).

19   Those factors include whether:  (1) the class representatives and class counsel have adequately

20   represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief

21   provided is adequate under pertinent case circumstances; and (4) the settlement treats class

22   members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).  The ultimate touchstone for the

23   analysis is whether the proposed settlement is "fair, reasonable, and adequate." *Id.*

24             In evaluating a proposed settlement, the Court should consider the strong public policy

25   favoring "settlements, particularly where complex class action litigation is concerned." *In re*

26   *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. Gen.*

27   *Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  "[T]he decision to approve or reject a settlement is

28   committed to the sound discretion of the trial judge because [they are] 'exposed to the litigants and

their strategies, positions, and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Settlement here readily meets all standards for preliminary settlement approval.

### A. The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations (Fed. R. Civ. P. 23(e)(2)(B)).

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (citing three non-dispositive factors of disproportionate attorneys' fees, the inclusion of a clear-sailing provision, and a provision whereby unclaimed funds revert to the defendant); *see also* Fed. R. Civ. P. 23(e)(2)(B).

The Settlement is the product of arms-length negotiations between the parties and their qualified and informed counsel, preceded by the exchange of informal discovery and Plaintiff's Counsel's investigation. Throughout their negotiations, the parties were represented by counsel experienced in the prosecution, defense, and settlement of complex class actions. The parties participated in a full-day mediation with two experienced and well-respected mediators, the Honorable Daniel Weinstein (ret.) and Cathy Yanni, Esq. of JAMS, and were able to reach an agreement on key deal terms through that effort. The mediation was followed by months of further negotiation and informal discovery.

As Plaintiff's Counsel will detail more fully in a separate motion, counsel anticipate requesting that the Court award a total of 25% of the common Settlement Fund for fees (approximately $375,000), plus costs of $36,111.86. This is well within Ninth Circuit guidelines, and thus not disproportionate. *See In Re Bluetooth*, 654 F.3d at 942 (noting that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"); *see also* Newberg (5th ed.) §§ 15:73, 15:104. Nor is there any reversion of funds to Tesla. *See* Procedural Guidance, Prelim. Approval § 1(h).

### B. Plaintiff and Plaintiff's Counsel Have and Continue to Zealously Represent the Class (Fed. R. Civ. P. 23(e)(2)(A)).

Plaintiff and Plaintiff's Counsel have pursued this action on behalf of the Settlement Class

1    vigorously and efficiently.  *See* Fed. R. Civ. P. 23(e)(2)(A).  As discussed above and in the attached

2    declarations, Plaintiff's Counsel have thoroughly investigated and researched the factual and legal

3    issues involved, conducted substantial informal discovery, and retained a leading expert in the field.

4    *See* Background § II, *supra*.  Likewise, Plaintiff has personally been actively engaged—he provided

5    detailed information about his experiences, including through data downloads obtained from his

6    vehicle, served as a conduit of information regarding other potential Settlement Class Members,

7    and communicated regularly with counsel up to and including evaluating and approving the

8    proposed Settlement.  Nelson Decl. ¶¶ 38–39.

9    **C.    The Settlement Represents a Strong Result for the Settlement Class,
        Particularly Given the Risks and Likely Duration of Ongoing Litigation
10       (Fed. R. Civ. P. 23(e)(2)(C)).**

11       The Settlement provides substantial monetary relief.  After attorneys' fees and costs are

12   deducted, every Settlement Class Member will receive a $625 payment.[2]  The payment amounts

13   represent a strong result for the Settlement Class, particularly given the substantial risks, costs, and

14   delay of continued litigation.

15       One way to put the $625 per Class Vehicle payment into perspective is to compare it against

16   the value of the temporary reduction in maximum battery voltage of the Class Vehicle batteries.

17   That value can be estimated as the product of three figures:  the lost kilowatt-hours,[3] the cost of a

18   kilowatt-hour per month,[4] and the number of months of reduced maximum battery voltage.  Under

19   these assumptions, the lost value is about $175 per Class Vehicle.  The Settlement provides for

20   many times that amount.

21       Were the parties to litigate, achieving even $175 per Class Vehicle would be a risky and

22

23   ───────────────
     [2] For the Class Vehicles that had multiple owners or lessees during the relevant time period, the
     $625 payment will be prorated.

24   [3] As detailed above, the vehicles lost about 10% of maximum battery voltage for 2 months, and 7%
     of maximum battery voltage for another 10 months until March 2020, when the restoration software
25   update was released.  Between March 2020 and the present, Class Vehicles' voltage was gradually
     restored as a function of how much they were driven and charged.  However, to simplify the
26   exercise, and to develop a best-case scenario against which to measure the Settlement, this damages
     estimate assumes the entire 7% loss was realized for a full 22 months, until March 2021.

27   [4] As far back as 2017, Plaintiffs estimate that the cost of Tesla battery capacity was approximately
     $133/kWh.  *See* Dkt. No. 1 (Complaint) ¶ 71 n.24.  At a warranted life of 8 years (96 months), that
28   works out to approximately $1.39/kWh-month.

1    uncertain endeavor.  At the outset, Tesla would of course rigorously dispute liability, and the

2    litigation would continue even as the batteries would have been fully restored, undercutting the

3    Class's claims of harm.  Even assuming Plaintiff were to overcome all pre-trial obstacles, achieve

4    class certification, prevail at trial, and survive any appeals, Tesla would have numerous arguments

5    for significantly reducing the damages amount.  For example, given the wealth of charging data at

6    its disposal, Tesla may be able to demonstrate that many Settlement Class Members rarely needed

7    access to the full 100% of battery voltage given their day-to-day driving and charging habits.

8    Moreover, as noted above, many Settlement Class Vehicles had their voltage restored well before

9    the March 2021 date assumed in the hypothetical calculation—indeed, the corrective update was

10   released a full year prior, in March 2020.  Further, Tesla would likely represent that the relevant

11   software updates served to increase the overall life of the batteries, thereby conferring a benefit that

12   must be offset from any potential damages.  Finally, as is common in consumer class litigation,

13   Tesla would certainly seek to parlay these damages issues into liability and injury issues that, it

14   would argue, undermine class certification.

15          While Plaintiff believes the Class could overcome Tesla's defenses and challenges, they are

16   indicative of the risks, hurdles, and delays that the Settlement Class would face should this matter

17   proceed in litigation.  The proposed Settlement provides considerable monetary relief for the

18   Settlement Class while allowing them to avoid the risks of unfavorable rulings on these and other

19   issues.  The Settlement also provides prompt relief, of particular importance here given that the

20   underlying conduct has ceased and, as set forth above, maximum battery voltage has been entirely

21   or almost entirely restored for the vast majority of the Settlement Class Vehicles.  Continued

22   litigation would likely add several more years before there is a resolution.  *See* Procedural

23   Guidance, Prelim. Approval § 1(e).

24          This District's Procedural Guidance for Class Action Settlements advise that parties seeking

25   preliminary settlement approval should also include certain information about a prior settlement in a

26   similar case, for comparative purposes.  *See* Procedural Guidance, Prelim. Approval § 11.  While

27   there is no exact analogue here, there are some useful comparators.  First, in *Sheikh v. Tesla, Inc.*,

28   5:17-cv-02193 (N.D. Cal. filed Apr. 19, 2017), Tesla purchasers sued the company for failing to

timely provide promised "autopilot" features.  Thus, like here, the issue was a temporary impairment of a vehicle feature.  In *Sheikh*, each class member received between $25 and $280, significantly less than the payment here.  *See Sheikh*, Dkt. No. 44-1 at ECF Page 8.  Second, in *In re Hyundai & Kia Fuel Econ. Litig.*, 2:13-ml-02424-GW-FFM (C.D. Cal. filed Feb. 6, 2013), the plaintiffs complained of a misrepresented fuel economy for their internal combustion engine vehicles.  There, like here, the underlying issue can be described as how far the vehicle could travel on a single tank or charge.  However, in *Hyundai*, the impairment was best described as permanent, not temporary like it is here, in that the subject vehicles simply would not achieve the fuel economy the defendants promised.  In that case, the class members' payments ranged from $140 to $1,420, with the vast majority of class vehicles commanding less than the $625 achieved here.  *Hyundai*, Dkt. No. 354-1 at Page ID 6230-232.  Moreover, the *Hyundai* settlement required the class members to submit claims (*id*. at Page ID 6234), versus the automatic payouts provided for in the Settlement.

Compared to either of these settlements, both of which were recently approved by District Courts in California, the Settlement fares very well.  It provides greater or comparable sums for a temporary impairment, and without the requirement of any claims process.

**D.**     **The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)).**

All Settlement Class Vehicles lost the same percentage of their maximum battery voltage based on an over-the-air software update, and all of the vehicles were subject to the same remedial updates in the coming months that worked to restore voltage.  The proposed allocation of settlement payments ensures that Settlement Class Members are treated equitably, because all Settlement Class Vehicles command the same payment.

**E.**     **The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii)).**

The Settlement provides for an efficient and effective distribution of settlement payments. Payments will be mailed by the Settlement Administrator to all Class Members, with appropriate steps taken to find updated address information and re-mail undeliverable checks as needed.  *See* Settlement § IX.C.2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F.      Plaintiff's Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)).**

Plaintiff's Counsel will move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiff's Counsel anticipate requesting that the Court award a total of 25% of the common Settlement Fund for fees (approximately $375,000), plus costs of $36,111.86. Plaintiff's Counsel will file their fee application, which will provide the supporting basis for their request, at least 35 days in advance of the Exclusion/Objection Deadline, and it will be available on the Settlement Website after it is filed. *See* Settlement § IV.H.3. As with the payments to Settlement Class Members, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund following the Effective Date of the Settlement. *Id.* § V.

Based on their preliminary review, Plaintiff's Counsel's total combined hours in this case through July 21, 2021 are approximately 528.5 hours, for a total combined lodestar of approximately $381,028.00 during that period. Nelson Decl. ¶¶ 30–34, 36; Chen Decl. ¶ 7. Plaintiff's Counsel's total combined litigation expenses in this case through December 31, 2020 are approximately $36,111.86. Nelson Decl. ¶ 35; Chen Decl. ¶ 8. Based on the above numbers, a fee and award equal to 25% of the Settlement Fund would represent a 0.98 multiplier on Plaintiff's Counsel's approximate lodestar through July 21, 2021. *See* Procedural Guidance, Prelim. Approval § 6. Plaintiff's Counsel will continue to incur time in seeking settlement approval and on implementation efforts should the Settlement be approved.[5]

**III.     The Court Should Provisionally Certify the Settlement Class.**

When a settlement is reached before certification, a court must determine whether to provisionally certify the settlement class. *See, e.g.*, *Manual for Compl. Litig.*, § 21.632 (4th ed. 2014); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Provisional class certification is warranted under Rule 23(b)(3).

---

[5] Finally, there are no agreements between the parties other than the Settlement. *See* Fed. R. Civ. P. 23(e)(3) ("[T]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

**A.      The Requirements of Rule 23(a) are Satisfied.**

**1.      Numerosity (Rule 23(a)(1))**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). A "class of 41 or more is usually sufficiently numerous." 5 *Moore's Federal Practice—Civil* § 23.22 (2016); *see also Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015). Here, the Settlement Class includes owners or lessees of 1,743 vehicles.

**2.      Commonality (Rule 23(a)(2))**

Rule 23(a)(2) requires that there be one or more questions common to the class. Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). This case raises a core common question of whether Tesla's temporary voltage limitation violated state consumer protection or property tort laws.

**3.      Typicality (Rule 23(a)(3))**

Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct." *Hernandez*, 305 F.R.D. at 159. Plaintiff's claims and those of the Settlement Class are based on the same course of conduct and the same legal theories. Moreover, Plaintiff and the Settlement Class Members all suffered the same type of alleged harm in having their maximum battery voltage temporarily reduced.

**4.      Adequacy of Representation (Rule 23(a)(4))**

Rule 23(a)(4)'s adequacy inquiry asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?"  *Evon v. Law Offices of Sidney Mickell*, 688

F.3d 1015, 1031 (9th Cir. 2012).  Plaintiff's Counsel have extensive experience litigating and

resolving class actions, and are well qualified to represent the Settlement Class.[6]  As explained

above, Plaintiff's Counsel vigorously investigated these claims and negotiated the Settlement, and

will continue to fairly and adequately protect the interests of the Settlement Class.[7]  Likewise,

Plaintiff has demonstrated his commitment to the Settlement Class, including by providing

pertinent information about his experiences, regularly communicating with their counsel about the

case, and reviewing and approving the proposed Settlement.[8]  Finally, Plaintiff and Plaintiff's

Counsel share the Settlement Class's interest in obtaining relief from Tesla for the alleged

violations.

## B.      The Requirements of Rule 23(b)(3) Are Satisfied

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

be satisfied.  Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions

of law or fact common to the class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the

case are more prevalent or important than the non-common, aggregation-defeating, individual

issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)).  At its

core, "[p]redominance is a question of efficiency."  *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359,

362 (7th Cir. 2012).  The Ninth Circuit favors class treatment of claims stemming from a "common

course of conduct," like those alleged in this case.  *See In re First Alliance Mortg. Co.*, 471 F.3d

977, 989 (9th Cir. 2006).

Common questions predominate here.  Those questions include whether Tesla's temporary

reduction in maximum battery voltage—via software updates that were pushed out to all Settlement

---

[6] Nelson Decl. ¶¶ 9–13; Chen Decl. ¶ 3.

[7] *See* Background § II, *supra*.

[8] Nelson Decl. ¶¶ 38–39.

Class Vehicles—was material to a reasonable consumer, unfair or deceptive, and effectively a taking or conversion of Settlement Class Members' property.  The Ninth Circuit has affirmed class settlements where, as here, a "common nucleus of facts" animate the claims.  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019).[9]  Moreover, under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about individual issues, if any, creating trial inefficiencies.  *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial.").

Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for fair and efficient adjudication of the controversy."  *Id.* at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy.").  Class treatment is superior to other methods for the resolution of this case.  Plaintiff is unaware of any consumers filing individual actions regarding the issues raised in this case, and the size of each Settlement Class Member's individual damages would be dwarfed by the expense of prosecuting an individual case.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (class action superior where the "risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their claims") (internal quotation marks omitted).  Moreover, it would be far more efficient for the Court and the parties to have a single resolution (as with the proposed Settlement here), rather than multiple separate cases about the same issue.

## IV.     The Proposed Notice Program Complies with Rule 23 and Due Process.

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

---

[9] As set forth in the Settlement Agreement, Tesla does not oppose conditional certification of the Settlement Class solely for purposes of the settlement embodied in the Settlement Agreement. If, for any reason, the Settlement is not approved by the Court, Tesla reserves all its defenses to class certification, and the Settlement Agreement provides that the stipulation for certification will become null and void and may not be used for any purpose.  *See* Settlement § I.B.

1   23(e)(1)(B).  Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also

2   comply with Rule 23(c)(2)(B), which requires:

3
> the best notice that is practicable under the circumstances, including
> individual notice to all members who can be identified through
4   > reasonable effort.  The notice may be by one or more of the
> following:  United States mail, electronic means, or other appropriate
5   > means.  The notice must clearly and concisely state in plain, easily
> understood language:  (i) the nature of the action; (ii) the definition
6   > of the class certified; (iii) the class claims, issues, or defenses; (iv)
> that a class member may enter an appearance through an attorney if
7   > the member so desires; (v) that the court will exclude from the class
> any member who requests exclusion; (vi) the time and manner for
8   > requesting exclusion; and (vii) the binding effect of a class judgment
> on members under Rule 23(c)(3).

9   Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

10        The proposed notice program here (Settlement § IV) meets all applicable standards.  The

11  notice program includes direct notice to all Settlement Class Members via  U.S. Mail; the

12  establishment of a Settlement Website where Settlement Class Members can view the Settlement,

13  the long-form Class Notice, and other key case documents; and the establishment of a Toll-Free

14  Number where Settlement Class Members can get additional information.  Moreover, the proposed

15  forms of notice (*see* Settlement Exs. A & B) inform Settlement Class Members, in clear and concise

16  terms, about the nature of this case, the Settlement, and their rights, including all of the information

17  required by Rule 23(c)(2)(B).  The Court should approve the proposed notice program.

18  **V.      The Court Should Schedule a Fairness Hearing and Related Dates.**

19        The next steps in the settlement approval process are to notify Settlement Class Members

20  of the proposed Settlement, allow Settlement Class Members an opportunity to exclude

21  themselves or file comments or objections, and hold a Fairness Hearing.  The parties propose the

22  following schedule:

23

24

25

26

27

28

| Last day for Tesla to provide its Customer Data to the Settlement Administrator | **14 days after entry of Preliminary Approval Order** |
|---|---|
| Last day for Settlement Administrator to mail Summary Notice | **100 days after entry of Preliminary Approval Order** |
| Last day for Plaintiff and Settlement Class Counsel to file motion for attorneys' fees, expenses and service awards | **35 days before Exclusion/Objection Deadline** |
| Exclusion/Objection Deadline | **45 days after Notice Date** |
| Last day for the Parties to file motion for final approval of the Settlement, any responses to objections, and any replies in support of motion for final settlement approval and/or Settlement Class Counsel's application for attorneys' fees, expenses and service awards | **14 days before Fairness Hearing** |
| Fairness Hearing | **Date to be set by the Court** |

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court do the following:

(a) Grant preliminary approval of the proposed Settlement;

(b) Certify, for settlement purposes, the Settlement Class as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

(c) Appoint Plaintiff as Settlement Class Representative representing the Settlement Class;

(d) Appoint Robert J. Nelson and Nimish R. Desai of Lieff Cabraser Heimann & Bernstein, LLP; and Edward C. Chen of YK Law LLP as Settlement Class Counsel;

(e) Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

(f) Appoint Angeion as Settlement Administrator and direct Angeion to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

(g) Set deadlines for Settlement Class Members to request exclusion from the Settlement Class and to object to the Settlement;

(h)    Stay all non-Settlement-related proceedings in this lawsuit pending final approval of the Settlement; and

(i)    Schedule a Fairness Hearing and certain other dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

Dated:  July 28, 2021                    Respectfully submitted,

By: _____.

Nimish R. Desai

Robert J. Nelson (State Bar No. 132797)
rnelson@lchb.com
Nimish R. Desai (State Bar No. 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiff and the Proposed Class*