Robert J. Nelson (State Bar No. 132797)
rnelson@lchb.com
Nimish R. Desai (State Bar No. 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID RASMUSSEN, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>Defendant. | Case No.  5:19-cv-04596-BLF<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARD**<br><br>Date:          June 16, 2022<br>Time:         9:00 a.m.<br>Judge:        Hon. Beth Labson Freeman<br>Courtroom:  3 |

## NOTICE OF MOTION AND MOTION[1]

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on June 16, 2022, at 9:00 a.m. at 280 South 1st Street, 5th Floor, Courtroom 3, San Jose, CA 95113, Plaintiff and Class Counsel Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and the Law Offices of Edward C. Chen ("Chen") will and hereby do move the Court pursuant to Fed. R. Civ. P. 23(h) for an order awarding (i) attorneys' fees to Class Counsel in the amount of $373,377.79; (ii) reimbursement of litigation expenses of $36,622.21; and (iii) a Service Award of $1,000 for Plaintiff David Rasmussen.  As set forth in the supporting memorandum, the requested awards are fair, reasonable, and justified.

This motion is brought pursuant to the Court's December 9, 2021 Preliminary Approval Order (Dkt. 54), paragraphs III.A, IV.H.3, and V.A–B of the Settlement, and Fed. R. Civ. P. 23(h).  The motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the March 31, 2022 Declaration of Robert J. Nelson filed concurrently herewith; the March 31, 2022 Declaration of David Rasmussen filed concurrently herewith; the July 28, 2021 Declaration of Edward C. Chen, filed in support of preliminary approval of the Settlement (Dkt. 49-3); the July 28, 2021 Declaration of Sean P. Gates, filed in support of preliminary approval of the Settlement (Dkt. 49-4); the arguments of counsel; all papers and records on file in this matter; and such other matters as the Court may consider.[2]

---

[1] Capitalized terms in this notice and the supporting memorandum have the same meanings as in the Stipulation of Settlement (the "Settlement").  Dkt. 49-2, Ex. 1.

[2] Pursuant to paragraph VI.A and Exhibit D of the Settlement, a proposed order addressing the relief requested in this motion will be submitted with Plaintiff's forthcoming Motion for Final Approval.

2391419.1

Robert J. Nelson (State Bar No. 132797)
rnelson@lchb.com
Nimish R. Desai (State Bar No. 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID RASMUSSEN, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>Defendant. | Case No.  5:19-cv-04596-BLF<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARD**<br><br>Date:          June 16, 2022<br>Time:         9:00 a.m.<br>Judge:        Hon. Beth Labson Freeman<br>Courtroom:  3 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 2

    A. The Alleged Conduct ........................................................................................ 2

    B. Plaintiff's Counsel's Investigation and Informal Discovery ............................ 2

    C. Settlement Negotiations .................................................................................... 3

    D. The Relief Obtained for the Class ..................................................................... 3

III. ARGUMENT ................................................................................................................ 4

    A. Class Counsel's Requested Fees are Reasonable and Appropriate ................... 4

        1. The Request is Warranted Under the Percent-of-the-Fund Method ........... 5

            a. Class Counsel Achieved a Very Strong Result .............................. 6

            b. This Action Entailed Significant Risk ........................................... 7

            c. Compensation was 100% Contingent on the Outcome.................. 8

            d. The Skill and Quality of Work Support the Requested Fee ........... 8

            e. Fee Awards in Recent Common-Fund Cases Support the Requested Fees.................................................................................. 9

        2. Class Counsel's Fee Request is Supported by a Lodestar Cross-Check........................................................................................................ 10

    B. The Requested Reimbursement of Expenses is Reasonable and Appropriate ...... 13

    C. The Requested Service Award is Reasonable and Appropriate ........................... 13

CONCLUSION .................................................................................................................. 15

2301419.1

# TABLE OF AUTHORITIES

Page

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015)........................................................................... 14

*Blum v. Stenson*,
465 U.S. 886 (1984)............................................................................................... 12

*Campbell v. Facebook Inc.*,
No. 13-cv-5996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ........................... 12

*Carlotti v. Asus Comput. Int'l*,
No. 18-cv-3369, 2020 WL 3414653 (N.D. Cal. June 22, 2020)............................. 12

*Destefano v. Zynga, Inc.*,
No. 12-cv-4007, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)............................. 8, 9

*Ferrington v. McAfee, Inc.*,
No. 10-CV-01455-LHK, 2013 WL 12308314 (N.D. Cal. July 22, 2013) ................. 4

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. 08-cv-1365, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010).............................. 5

*Gutierrez v. Wells Fargo Bank, N.A.*,
No. 07-cv-5923, 2015 WL 2438274 (N.D. Cal. May 21, 2015).............................. 12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................................................................... 6, 11

*Hernandez v. Dutton Ranch Corp.*,
No. 19-cv-0817, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021)............................. 9

*Hopkins v. Stryker Sales Corp.*,
No. 11-cv-2786, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .................................. 8

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-md-2617, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...................... 12, 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)....................................................................... 4, 5, 10

*In re Google Referrer Header Privacy Litig.*,
87 F. Supp. 3d 1122 (N.D. Cal. 2015) ................................................................. 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)................................................................................. 4

*In re Hyundai & Kia Fuel Econ. Litig.*,
No. 13-ml-2424 (C.D. Cal. filed Feb. 6, 2013) ....................................................... 7

*In re Intuit Data Litig.*,
No. 15-cv-1778, 2019 WL 2166236 (N.D. Cal. May 15, 2019)............................. 12

*In re Lenovo Adware Litig.*,
No. 15-md-2624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019)............................. 9

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015).......................................................................... 10

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ..................................................................... 13

2301419.1

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454, 457 (9th Cir. 2000), *as amended* (June 19, 2000)..........................................9, 15

*In re Netflix Privacy Litig.*,
No. 11-cv-0379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................10

*In re Nexus 6P Prod. Liab. Litig.*,
No. 17-cv-2185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) .......................................10, 11

*In re Omnivision Techs., Inc*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................................passim

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)........................................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
MDL No. 2672, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)................................................12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)...................................................................................4, 5, 8

*In re: High-tech Emp. Antitrust Litig.*,
No. 11-cv-2509, 2014 WL 10520478 (N.D. Cal. May 16, 2014) ............................................15

*Knight v. Red Door Salons, Inc.*,
No. 8-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................................................6

*Kuraica v. Dropbox, Inc.*,
No. 19-cv-6348, 2021 WL 5826228 (N.D. Cal. Dec. 8, 2021)....................................................13

*Laffitte v. Robert Half Internat. Inc.*,
1 Cal. 5th 480 (2016) ..............................................................................................................5

*Mendoza v. Hyundai Motor Co., Ltd*,
No. 15-cv-01685, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017)...........................................4, 6

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs.*,
No. 19-CV-7087, 2021 WL 4133860 (N.D. Cal. Sep. 10, 2021) .......................................12, 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989)....................................................................................11, 13

*Perkins v. Linkedin Corp.*,
No. 13-cv-4303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) .........................................9, 12

*Petersen v. CJ Am., Inc.*,
No. 14-CV-2570, 2016 WL 5719823 (S.D. Cal. Sept. 30, 2016)..............................................5

*Rhom v. Thumbtack, Inc.*,
No. 16-cv-2008, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017)...............................................15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)........................................................................................14

*Sheikh v. Tesla, Inc.*,
No. 17-cv-2193, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) .........................................6, 13

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (S.D. Cal. 2016)..........................................................................5

2391419.1

**TABLE OF AUTHORITIES**
(continued)

Page

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)................................................................................... 14

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016)................................................................................. 13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011).................................................................................... 14

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
  No. 17-cv-6059, 2018 WL 2183295 (N.D. Cal. May 11, 2018)............................... 12

*Theodore Broomfield v. Craft Brew All., Inc.*,
  No. 17-cv-1027, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ................................ 12

*Valentine v. NebuAd Inc.*,
  No. 08-cv-5113, 2011 WL 13244509 (N.D. Cal. Nov. 21, 2011) ........................... 10

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)................................................................. 5, 6, 8, 11

*Walsh v. Kindred Healthcare*,
  No. 11-cv-0050, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013)................................. 7

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
  556 F.3d 815 (9th Cir. 2009)................................................................................... 11

*Wren v. RGIS Inventory Specialists*,
  No. 06-cv-5778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)................................. 14

**Statutes**

28 U.S.C. § 1331 ........................................................................................................ 4

28 U.S.C. § 1332 ........................................................................................................ 4

**Rules**

Fed. R. Civ. P. 23(h) ............................................................................................. 6, 13

**Other Authorities**

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004)........................ 6

Northern District of California, *Procedural Guidance for Class Action Settlements*, Final
  Approval................................................................................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Class Counsel secured a Settlement Fund of $1,500,000—from which a $625 payment will be made for each Class Vehicle—to settle Plaintiff's claims regarding Tesla's temporary limitation of maximum battery voltage in 1,743 Model S sedans ("Class Vehicles"). This amount is many times the prorated value of the temporarily reduced maximum voltage, and thus represents a strong and efficient result for the Settlement Class. In light of the significant risks and complex issues in this litigation, as well as the considerable results achieved for Class Members, Plaintiff respectfully requests: (i) an award of $373,377.79 in attorneys' fees—*i.e.*, 24.9% of the common fund; (ii) reimbursement of expenses incurred in connection with this litigation, totaling $36,622.21; and (iii) a $1,000 Service Award for Class Representative David Rasmussen.

Plaintiff requests approval of attorneys' fees in the amount of 24.9% of the Settlement Fund—an amount that is "presumptively reasonable" under Ninth Circuit law. The reasonableness of the requested award is further confirmed by a lodestar "cross-check." Based on Class Counsel's total fees and expenses for the case of $426,080 as of March 25, the requested award would result in a *negative* multiplier of 0.88—a multiplier that will get smaller as Class Counsel works to obtain final settlement approval and, if approved, to implement the Settlement. Plaintiff and Class Counsel vigorously prosecuted this case and obtained an excellent result purely on a contingent basis and in the face of significant risks. The Settlement comes *after* Tesla released a corrective update causing gradual restoration of voltage, and in the face of disputed issues regarding class certification and damages. Were the parties to litigate, these and other difficulties would be leveraged by a well-funded corporate defendant that, predictably, retained experienced counsel and was prepared to mount a vigorous and contentious defense.

Beyond fees, the requested expenses all were critical to representation of the Class. The service award likewise is reasonable given the commitment to the Class and investment of time provided to this case by Class Representative David Rasmussen.

Plaintiff respectfully requests that the Court grant the motion.

2391419.1

## II.     BACKGROUND

### A.     The Alleged Conduct

Plaintiff filed suit in August 2019, and by October 2019, the parties agreed to stay the litigation in order to pursue settlement discussions.  *See* Dkt. 1, 18.  Although the Complaint raised multiple issues, this proposed Settlement—and the attendant release—are narrowly focused on Plaintiff's allegations that in May 2019, Tesla released an over-the-air software update that reduced the maximum voltage to which the batteries on certain Tesla Model S vehicles could be charged.  Plaintiff further alleged that as a result of this voltage limitation, the maximum range of the Settlement Class Vehicles was reduced.  Plaintiff alleged violations of state consumer protection statutes as well as common law claims, seeking damages and equitable relief.

### B.     Plaintiff's Counsel's Investigation and Informal Discovery

Prior to filing suit, and continuing through the course of informal discovery and mediation, Plaintiff's Counsel conducted an extensive investigation into the factual and legal issues raised in this litigation.  These investigative efforts have included, *inter alia*, speaking with numerous Tesla drivers about their experiences, reviewing discovery from Tesla regarding the Settlement Class Vehicles and the operative software updates, and retaining and consulting a leading expert in electric vehicle batteries.  Plaintiff's Counsel also researched and analyzed the legal issues regarding the claims pled and Tesla's potential defenses.  *See* March 31, 2022 Decl. or Robert J. Nelson ("Nelson Decl.") filed herewith, ¶¶ 13-20; Dkt. 49-3 ("Chen Decl.") ¶ 4.

Tesla's data show that 1,743 Model S vehicles in the United States were subject to a 10% maximum voltage limitation caused by a May 2019 software update.  *See* Dkt. 49-4 ("Gates Decl.") ¶ 2.  A subsequent update in July 2019 restored about 3% of the battery voltage in these vehicles, and a third update released in March 2020 is designed to fully restore the batteries' voltage over time as the vehicles are driven.  *Id.* ¶ 3.  The restoration has proceeded as planned and, as of the date of preliminary approval, Tesla's data showed that of the 1,722 vehicles for which there was data, 1,552 had their maximum battery voltage fully restored, 79 had been restored to between 95.5% and 99%, and 34 had been restored to between 93% and 95.5%.  *Id.* ¶ 4.  The maximum voltage on the latter vehicles should continue to be restored over time as the

1    vehicles are driven.  Of the remaining vehicles, 57 have had battery replacements.  *Id.*  Ready

2    access to data from the final 21 vehicles is not available (not unusual for older vehicles), but the

3    data above shows that the update works as planned and there is no reason to doubt that the

4    voltage restoration update will work similarly in these vehicles.  *Id.* ¶ 5.

5            In sum, Plaintiff's Counsel's investigation confirmed that the voltage limitation was

6    temporary, with a 10% reduction lasting about 3 months, and a smaller 7% reduction lasting

7    another 7 months before the corrective update was released in March 2020.  Following that

8    second update, the vehicles' voltage showed steady restoration over time.

9            **C.      Settlement Negotiations**

10           The Settlement is the product of arms-length negotiations.  The parties and their counsel

11   participated in a full-day mediation with the Honorable Daniel Weinstein (ret.) and Cathy Yanni,

12   Esq. of JAMS on July 24, 2020.  After that full day, the parties reached an agreement in principle

13   to resolve this case.  Only after agreement on the substantive terms had been reached, the parties

14   negotiated a percent-of-the-fund attorney fee request to which Tesla would not object.  Since

15   reaching an agreement in principle, the parties have worked diligently to monitor the restoration

16   of battery voltage in the Settlement Class Vehicles, draft the written settlement agreement,

17   notices, and other settlement exhibits, and to select the proposed Settlement Administrator

18   through a competitive bidding process.  Nelson Decl. ¶¶ 13-20; Chen Decl. ¶ 5; Gates Decl. ¶ 6.

19           **D.      The Relief Obtained for the Class**

20           The Settlement provides for direct payments and non-monetary benefits to the Class.

21           <u>**First**</u>, under the Settlement, Tesla will create a Settlement Fund of $1,500,000.  The

22   entirety of the Settlement Fund, less Court-awarded attorneys' fees and expenses for Settlement

23   Class Counsel and any service award for Plaintiff, will be distributed to the Settlement Class.

24   This will result in a $625 payment for each Class Vehicle.  Those who owned or leased the Class

25   Vehicle over the relevant time period will receive this entire payment.  For the relatively small

26   percentage of Settlement Class Members who may have owned or leased their cars for only part

27   of the relevant period (*i.e.*, the Class Vehicle was sold or transferred to a new lessee during this

28   time), the $625 payment will be prorated.  *See* Settlement § II.B.  The Settlement Administrator's

1  fees and costs—*i.e.*, costs incurred in implementing the notice program, administering claims,

2  mailing checks, and performing the other administrative tasks described in the Settlement—will

3  be paid separately by Tesla.  Settlement § II.A.4.

4      **Second**, under the Settlement, Tesla is required to maintain diagnostic software for in-

5  warranty vehicles to notify owners and lessees of vehicles that Tesla determines may need battery

6  service or repair for certain battery issues.  *See* Settlement § II.A.2.

7  **III.**   **ARGUMENT**

8      Settlement Class Counsel seek expenses in the amount of $36,622.21, attorneys' fees of

9  $373,377.79 (24.9% of the Settlement Fund), and a Service Award of $1,000 for Class

10  Representative David Rasmussen.  As discussed below, Class Counsel's fee request is reasonable

11  under any applicable standard, especially given the relief obtained for the Class.  Similarly, Class

12  Counsel's expenses were necessary to litigate this action, and the Service Award properly

13  compensates the Class Representative for his role in making the Settlement possible.

14      **A.**   **Class Counsel's Requested Fees are Reasonable and Appropriate**

15      In common fund cases such as this one, the guiding principle is "the equitable notion that

16  those who benefit from the creation of the fund should share the wealth with the lawyers whose

17  skill and effort helped create it."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

18  1291, 1300 (9th Cir. 1994).  The trial court has discretion to award attorneys' fees either as a

19  percentage of the common fund or based upon class counsel's lodestar.  *In re Hyundai & Kia*

20  *Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019).  In the Ninth Circuit, the benchmark for a

21  reasonable fee award as a percentage of the common fund is 25%.  *In re Bluetooth Headset*

22  *Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Courts may also cross-check a fee award

23  by using both methods.  *See Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685, 2017 WL

24  342059, at *14 (N.D. Cal. Jan. 23, 2017) (Freeman, D.J.).[3]

---

25  [3] Where plaintiffs plead diversity jurisdiction under the Class Action Fairness Act of 2005
    ("CAFA"), 28 U.S.C. § 1332, and raise claims under California state law, some courts have

26  evaluated the reasonableness of the requested fee award using California standards.  *See, e.g.*,
    *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2013 WL 12308314, at *2 (N.D. Cal. July 22,

27  2013).  Here, Plaintiff pleaded both federal question jurisdiction, 28 U.S.C. § 1331, and diversity
    under CAFA. Dkt. 1 at ¶¶ 28–30.  Plaintiff's claims, moreover, arise under both Federal and

28  California law.  *See, e.g.*, *id.* ¶¶ 165–87 (pleading Federal Magnuson-Moss Warranty Act claims),
    ¶¶ 188–209 (pleading California Song-Beverly Consumer Warranty Act claims).  Regardless of the

2391419.1

1    Here, Settlement Class Counsel seek fees just below the benchmark of 25% of the

2   $1,500,000 Settlement Fund.  This request is reasonable, particularly in light of Ninth Circuit law

3   regarding attorneys' fees in class cases that is designed to ensure that counsel have proper

4   incentives to take on difficult cases and pursue class members' best interests.  *See Washington*

5   *Pub. Power Supply*, 19 F.3d at 1299–301.  Class Counsel respectfully submit that, in light of the

6   strong results reached by Class Counsel in the Settlement, their successful work in prosecuting

7   the claims on a pure contingency basis in this action, and the significant risks undertaken in the

8   process, application of the benchmark percentage is eminently reasonable.

9    Class Counsel's fee request also is well supported by a lodestar cross-check because it

10   represents a lodestar multiplier of 0.88 at Class Counsel's customary hourly rates, which is well

11   within the range for such multipliers established by the Ninth Circuit.  *See Vizcaino v. Microsoft*

12   *Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002).

13    **1.    The Request is Warranted Under the Percent-of-the-Fund Method**

14    The Ninth Circuit's benchmark fee in a common-fund case is 25% of the fund created.

15   *Vizcaino*, 290 F.3d at 1047.  A court should depart from the benchmark only if there are "special

16   circumstances" justifying the departure.  *Bluetooth*, 654 F.3d at 942 (citations omitted).  In fact,

17   courts in the Ninth Circuit often award fees that exceed the 25% benchmark.  *See, e.g.*, *Vizcaino*,

18   290 F.3d at 1050 (affirming 28% award); *In re Omnivision Techs., Inc*, 559 F. Supp. 2d 1036,

19   1047 (N.D. Cal. 2008) ("[I]n most common fund cases, the award exceeds that [25%]

20   benchmark."); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365, 2010 WL 1687829, at

21   *1–2 (N.D. Cal. Apr. 22, 2010) (granting 30% award); *Knight v. Red Door Salons, Inc.*, No. 8-

22   1520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (same).  Accordingly, Class Counsel's

23

24   substantive law used to evaluate Plaintiff's fee request, however, the analysis and end result here
are the same.  The California Supreme Court has endorsed the percent-of-the-fund and lodestar

25   cross-check method of determining the reasonableness of a requested fee award.  *Laffitte v. Robert
Half Internat. Inc.*, 1 Cal. 5th 480, 503–04 (2016).  Further, California courts have recognized that

26   25% awards (and higher) are well within the range of reasonableness.  *See, e.g.*, *Petersen v. CJ Am.,
Inc.*, No. 14-CV-2570, 2016 WL 5719823, at *1 (S.D. Cal. Sept. 30, 2016) ("California has

27   recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent
and has endorsed the federal benchmark of 25 percent."); *see also Spann v. J.C. Penney Corp.*, 211

28   F. Supp. 3d 1244, 1262–63 (S.D. Cal. 2016) (same; collecting cases; evaluating reasonableness of
requested fee award using parallel factors from California and federal cases).

PLAINTIFF'S NOT. OF MOT. AND MOT. FOR FEES,
EXPENSES, AND SERVICE AWARD
CASE NO. 5:19-CV-04596-BLF

1    request for 25% of the Settlement Fund is "presumptively reasonable." *Mendoza*, 2017 WL

2    342059, at *14.

3          Courts in the Ninth Circuit consider a number of factors in determining whether there is

4    any basis to deviate from the benchmark, including:  (i) the results achieved; (ii) the risks of

5    contingency representation; (iii) the complexities of the case and skill and effort required of

6    counsel; and (iv) awards in similar cases.  *See Vizcaino*, 290 F.3d at 1048–50.  These factors

7    confirm that there is no basis here for a downward departure from the benchmark.

8                    a.        Class Counsel Achieved a Very Strong Result

9          The "most critical factor" in the Court's analysis is the strength of the result achieved by

10   Class Counsel in the Settlement.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983);

11   *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex*

12   *Litigation*, § 21.71, p. 336 (4th ed. 2004) (the "fundamental focus is the result actually achieved

13   for class members") (quoting Fed. R. Civ. P. 23(h) committee note).  The sizeable monetary relief

14   provided to the Class in the Settlement Fund alone is sufficient to show the strength of the result

15   achieved, especially when measured against the estimated lost value per Class Vehicle.  One such

16   estimate—based on lost kilowatt-hours, the cost of a kilowatt-hour per month, and the number of

17   months of reduced maximum battery voltage—places the lost value around $175 per Class

18   Vehicle.  *See* Dkt. 49 at 9.[4]  Under the Settlement, however, Class Members will receive $625 per

19   Class Vehicle.

20         Those per-vehicle payments are strong when compared to recoveries in similar cases.  In

21   *Sheikh v. Tesla, Inc.*, Tesla purchasers received between $25 and $280—significantly less than

22   the payment here—as compensation for failing to timely receive promised "autopilot" features.

23   *Sheikh v. Tesla, Inc.*, No. 17-cv-2193, 2018 WL 5794532, at *5–6 (N.D. Cal. Nov. 2, 2018)

24   (Freeman, D.J.) (finally approving settlement).  And in *In re Hyundai & Kia Fuel Econ. Litig.*,

25

26   [4] As described above, the vehicles lost about 10% of maximum battery voltage for two months, and
     7% of maximum battery voltage for another ten months until March 2020, when the restoration

27   software update was released.  Between March 2020 and the present, Class Vehicles' voltage was
     gradually restored as a function of how much they were driven and charged. To simplify the

28   estimate and develop a best-case scenario against which to measure the Settlement, however, this
     damages estimate assumes the entire 7% loss was realized for a full 22 months, until March 2021.

1    No. 13-ml-2424 (C.D. Cal. filed Feb. 6, 2013), vehicle purchasers who filed a claim based on

2    *Hyundai*'s alleged misrepresentation of fuel economy received between $140 and $1,420, with

3    the vast majority receiving less than the $625 achieved here.  *Hyundai*, Dkt. No. 354-1 at Page ID

4    6230–232; *see also* Dkt. 49 at 11.

5            The Settlement also requires Tesla to maintain diagnostic software for in-warranty

6    vehicles to notify owners and lessees of vehicles that Tesla determines may need battery service

7    or repair for certain battery issues.  *See* Settlement § II.A.2.  This is another source of value

8    against which the requested fees should be measured.  *Walsh v. Kindred Healthcare*, No. 11-cv-

9    0050, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) (approving fee request of 30% of the

10   common fund and finding that the comparative size of the request was effectively reduced by the

11   "substantial injunctive relief" obtained for the class through the settlement).  Class Counsel

12   respectfully submits that the Settlement's monetary and diagnostic relief together provide strong

13   support for their fee request.

14                              b.      This Action Entailed Significant Risk

15           That Class Counsel obtained this recovery despite risks also supports the reasonableness

16   of the fee request.  That risk is exemplified by the uncertainties surrounding the damages incurred

17   by Class Members:  even assuming Plaintiff were to overcome all pre-trial obstacles, achieve

18   class certification, prevail at trial, and survive any appeals, Tesla would have numerous

19   arguments for significantly reducing the damages amount.  Given the wealth of charging data at

20   its disposal, Tesla may have been able to demonstrate that many Settlement Class Members rarely

21   needed access to the full 100% of battery voltage given their day-to-day driving and charging

22   habits.  Moreover, Tesla released a corrective update in March 2020, such that many Class

23   Vehicles had their voltage restored by the time of the Settlement.  And at trial, Tesla likely would

24   represent that the relevant software updates served to increase the overall life of the batteries,

25   thereby conferring a benefit that must be offset from any potential damages.  In sum, were the

26   parties to litigate, achieving any recovery at all would be an uncertain endeavor.[5]  *See*

27

28   _____
     [5] As is common in consumer class litigation, Tesla would certainly seek to parlay these damages
     issues into liability and injury issues that, it would argue, undermine class certification.

                                                7

1   *Omnivision*, 559 F. Supp. 2d at 1046–47 ("The risk that further litigation might result in Plaintiffs

2   not recovering at all . . . is a significant factor in the award of fees.").

3                    c.       Compensation was 100% Contingent on the Outcome

4         The public is served by rewarding attorneys who assume representation of their interests

5   on a contingent basis with an enhanced fee to compensate them for the risk that they might be

6   paid nothing for their work.  *See Washington Pub. Power Supply*, 19 F.3d at 1299 ("Contingent

7   fees that may far exceed the market value of the services if rendered on a non-contingent basis are

8   accepted in the legal profession as a legitimate way of assuring competent representation for

9   plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.");

10  *Vizcaino*, 290 F.3d at 1051.  Class Counsel prosecuted this case on a purely contingent basis and

11  agreed to advance all necessary expenses, to the exclusion of other fee-generating work, knowing

12  that they would receive a fee and be reimbursed their expenses only if they obtained meaningful

13  relief on a class-wide basis.  Nelson Decl. ¶ 21; Chen Decl. ¶ 6.  In so doing, Class Counsel faced

14  a well-funded corporate defendant who hired a preeminent, experienced law firm to mount a

15  vigorous defense.  This factor likewise supports Class Counsel's fee request.  *See Hopkins v.*

16  *Stryker Sales Corp.*, No. 11-cv-2786, 2013 WL 496358, at *3 (N.D. Cal. Feb. 6, 2013) (finding

17  higher fee award justified where "[t]his case was conducted on an entirely contingent fee basis

18  against a well-represented Defendant").

19                   d.       The Skill and Quality of Work Support the Requested Fee

20        The effort and skill displayed by Class Counsel, and the complexity of the issues

21  involved, are additional factors used in determining a proper fee.  *Vizcaino*, 290 F.3d at 1048;

22  *Omnivision*, 559 F. Supp. 2d at 1046–47.  Courts have recognized that the "prosecution and

23  management of a complex national class action requires unique legal skills and abilities."

24  *Destefano v. Zynga, Inc.*, No. 12-cv-4007, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016)

25  (quoting *Omnivision*, 559 F. Supp. 2d at 1047).  As discussed above and in the attached

26  declaration, Class Counsel thoroughly investigated and researched the factual and legal issues

27  involved, conducted substantial informal discovery, and retained a leading expert in the field.  *See*

28  Background § II, *supra*; Nelson Decl. ¶¶ 13-20; Chen Decl. ¶¶ 4–5, 9.  Indeed, the highly

1    technical nature of this case required extensive analysis of the technical data produced during

2    informal discovery, as well as the software and hardware underlying the complex and

3    technologically advanced Class Vehicles.  Nelson Decl.  14-15.

4          The qualifications of Class Counsel are set forth in the declarations submitted

5    concurrently and with the motion for preliminary approval.  *See id.* ¶¶ 8-12 & Ex. 1 (LCHB

6    qualifications and firm resume); Chen Decl. ¶ 3 (Chen qualifications).  Where, as here, counsel

7    are highly experienced in class action litigation, shepherded the case to a prompt resolution, have

8    a record of success in this type of litigation, and faced high caliber opposing counsel throughout,

9    this factor, too, "supports the fee award sought." *Destefano*, 2016 WL 537946, at *17 (citations

10   omitted).

11                    e.    Fee Awards in Recent Common-Fund Cases Support the Requested
12                          Fees

13         Class Counsel's requested fees are equal to or less than the fees frequently awarded in

14   class actions within this District and within the Ninth Circuit.  *See, e.g.*, *Omnivision*, 559 F. Supp.

15   2d at 1047 ("[I]n most common fund cases, the award exceeds that [25%] benchmark."); *In re*

16   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000), *as amended* (June 19, 2000)

17   (affirming fee award of one third of common fund); *Hernandez v. Dutton Ranch Corp.*, No. 19-

18   cv-0817, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) (noting that "[d]istrict courts within

19   this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund" and

20   "[s]uch awards are routinely upheld by the Ninth Circuit"); *In re Lenovo Adware Litig.*, No. 15-

21   md-2624, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (awarding fees of 30% of common

22   fund and finding "that the percentage requested is consistent with other awards in this district in

23   comparable cases").

24         A review of fee awards in other recent common-fund cases involving consumer

25   protection/privacy or commercial issues in an advanced technology setting underscores the

26   reasonableness of the fees requested.  *See, e.g.*, *Perkins v. Linkedin Corp.*, No. 13-cv-4303, 2016

27   WL 613255, at *14–17 (N.D. Cal. Feb. 16, 2016) (granting 25% award); *In re Google Referrer*

28   *Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1135–36 (N.D. Cal. 2015) (same); *In re LinkedIn*

*User Privacy Litig.*, 309 F.R.D. 573, 590–91 (N.D. Cal. 2015) (awarding fees to class counsel in the amount of "the Ninth Circuit's established benchmark of 25%" even though "the Court disagrees that this action posed a substantial risk and required significant time and skill to obtain a result for the class"); *In re Netflix Privacy Litig.*, No. 11-cv-0379, 2013 WL 1120801, at *9–10 (N.D. Cal. Mar. 18, 2013) (approving 25% award); *Valentine v. NebuAd Inc.*, No. 08-cv-5113, 2011 WL 13244509, at *2 (N.D. Cal. Nov. 21, 2011) (approving 30% award).

Indeed, this Court recently approved a 30% award in a case involving similar claims.  In *In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-2185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019), a putative class action against smartphone manufacturers, plaintiffs asserted warranty and consumer protection claims arising from defects that caused accelerated battery drain.  *See* 2019 WL 6622842, at *1 (claims for (i) breach of express and implied warranty, (ii) violation of the Magnuson-Moss Warranty Act, (iii) violation of California's Song-Beverly Consumer Warranty Act, (iv) violation of the California's Unfair Competition Law, (v) violation of California's Consumer Legal Remedies Act, and (vi) fraudulent concealment); *compare with* Dkt. 1 at ¶¶ 165–245, 305–18, 323–57, 381–92 (same).  After resolution of an initial motion to dismiss, the Court finally approved a settlement with a common fund of $9.75 million, from which class members stood to receive payments ranging from $5 to $400 each.  2019 WL 6622842, at *2–3, *11.  The Court also approved counsel's requested fee of 30% of the common fund, finding that the award was reasonable.  *Id.* at *12–13.  Respectfully, Class Counsel submit that the speedy resolution and higher (and automatic) disbursements to Class Members in this case justify a 24.9% award.

In light of the foregoing, the Court should approve Class Counsel's fee request as reasonable under the percent-of-the-fund method.

### 2.    Class Counsel's Fee Request is Supported by a Lodestar Cross-Check

"Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."  *Bluetooth*, 654 F.3d at 942.  Thus, "the primary basis of the fee award remains the percentage method," with the lodestar used as "a cross-check on the reasonableness of a percentage figure."  *Vizcaino*, 290 F.3d at 1050 &

n.5.  "The lodestar cross-check calculation need entail neither mathematical precision nor bean

counting and courts may rely on summaries submitted by the attorneys and need not review actual

billing records."  *In re Nexus 6P*, 2019 WL 6622842, at *12 (cleaned up).

The lodestar is calculated by multiplying the number of hours reasonably expended on the

litigation by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *Paul, Johnson, Alston & Hunt v.*

*Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Class Counsel's declaration filed herewith sets out

the hours of work and billing rates used to calculate the lodestar here, including a tabulation of

the hours spent on various categories of activities related to this action.  Nelson Decl., Ex. 2.[6]  In

sum, Class Counsel have devoted a total of approximately 635.9 hours to this litigation and have

a total lodestar to date of approximately $426,080.  *Id.* ¶ 25.  That number will increase through

the Final Approval Hearing and completion of settlement administration.  *Id.*  As such, the

requested fee award results in a negative lodestar multiplier of 0.88.

The time Class Counsel dedicated to prosecuting this action is reasonable.  Class Counsel

were able to secure a highly favorable settlement, prosecuting the claims at issue efficiently and

effectively through extensive meet and confer sessions regarding informal discovery, preparation

of detailed mediation briefs, and a hard-fought mediation.

Furthermore, Class Counsel's hourly rates are reasonable.  As discussed above, Class

Counsel are experienced, highly regarded members of the Bar who have brought to this case

extensive experience in consumer class actions and complex litigation.  Nelson Decl. ¶¶ 3-12 &

Ex. 1; Chen Decl. ¶ 3.  The Court does not need to determine that the exact rates requested by

Class Counsel are reasonable, but only that they fall within "the range of reasonableness required

to use the lodestar figure as a cross check."  *Moreno v. Cap. Bldg. Maint. & Cleaning Servs.*, No.

19-CV-7087, 2021 WL 4133860, at *6 (N.D. Cal. Sep. 10, 2021).  Courts consider counsel's

---

[6] *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."); *see also* Northern District of California, *Procedural Guidance for Class Action Settlements*, Final Approval ¶ 2 ("Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed.").

1    qualifications, as well as whether the claimed rate is "in line with those prevailing in the

2    community for similar services by lawyers of reasonably comparable skill, experience and

3    reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

4          Courts in the Northern District have found that similar hourly rates as those charged by

5    Class Counsel to be appropriate.  *See, e.g.*, *Carlotti v. Asus Comput. Int'l*, No. 18-cv-3369, 2020

6    WL 3414653, at *5 (N.D. Cal. June 22, 2020) (collecting cases; finding that partner rates of $900

7    per hour, $950 per hour, and $1,025 per hour were reasonable in the Northern District of

8    California); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-6059, 2018 WL 2183295,

9    at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of

10   $475 to $975 per hour for partners and $300 to $490 per hour for associates are reasonable.");

11   *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-5923, 2015 WL 2438274, at *5 (N.D. Cal. May

12   21, 2015) (finding partner rates of $475 to $975 and associate rates of $300 to $490 reasonable

13   for Bay Area attorneys in 2015); *see also Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-

14   cv-1027, 2020 WL 1972505, at *11 (N.D. Cal. Feb. 5, 2020) (Freeman, D.J.) (approving $600 per

15   hour rate for sole practitioner).

16         Indeed, LCHB's hourly rates are paid by its sophisticated commercial clients; those rates

17   are regularly approved by courts throughout the United States and this District.  Nelson Decl.

18   ¶ 22. *See, e.g.*, *In re Intuit Data Litig.*, No. 15-cv-1778, 2019 WL 2166236, at *2 (N.D. Cal. May

19   15, 2019) (approving fees based on LCHB rates); *In re Anthem, Inc. Data Breach Litig.*, No. 15-

20   md-2617, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (same); *Campbell v. Facebook

21   Inc.*, No. 13-cv-5996, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (same); *In re

22   Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672, 2017

23   WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (same); *LinkedIn*, 2016 WL 613255, at *15 (N.D.

24   Cal. Feb. 16, 2016) (approving LCHB rates and granting motion for attorneys' fees); *Wells

25   Fargo*, 2015 WL 2438274, at *5 (same).

26         Finally, as noted above, the requested percent-of-the-fund award results in a negative

27   multiplier of 0.88.  This Court recently acknowledged that "[a] negative multiple 'strongly

28   suggests the reasonableness of [a] negotiated fee.'"  *Kuraica v. Dropbox, Inc.*, No. 19-cv-6348,

1   2021 WL 5826228, at *7 (N.D. Cal. Dec. 8, 2021) (Freeman, D.J.) (citing *Moreno*, 2021 WL

2   4133860, at *6); *see also Sheikh*, 2018 WL 5794532, at *8 ("Multipliers of 1 to 4 are commonly

3   found to be appropriate in common fund cases."); *Omnivision*, 559 F. Supp. 2d at 1047 ("[C]ourts

4   have approved multipliers ranging between 1 and 4.").

5   　　The lodestar incurred by Class Counsel thus further confirms the reasonableness of the

6   requested fee award.

7   　　**B.**　　**The Requested Reimbursement of Expenses is Reasonable and Appropriate**

8   　　Class Counsel also are entitled to reimbursement of reasonable out-of-pocket costs

9   advanced for the Class. *See* Fed. R. Civ. P. 23(h); *Paul, Johnson*, 886 F.2d at 271.  Class Counsel

10  have incurred total out-of-pocket expenses of $36,622.21.  Nelson Decl. ¶¶ 24 & Ex. 3; Chen

11  Decl. ¶ 8 & Ex. B.  Significant costs included, *inter alia*, expert fees, and other customary

12  litigation expenses.  *Id.*  Payment of these expenses was necessary to advance, and ultimately, to

13  resolve this litigation.  *See also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367–72

14  (N.D. Cal. 1996) (costs related to retention of experts, photocopy costs, postage, telephone costs,

15  computerized legal research fees, and filing fees are appropriate to reimburse).

16  　　Class Counsel request reimbursement for expenses and costs in the amount of $36,622.21,

17  which—when combined with the requested award of attorneys' fees—is the amount referenced in

18  the Agreement and reported in the Class Notice.  *See Stetson v. Grissom*, 821 F.3d 1157, 1165

19  (9th Cir. 2016) (nontaxable costs are properly awarded where authorized by the parties'

20  agreement).  These are the actual litigation expenses incurred, including filing fees, mediation

21  fees and expenses, expert witness fees (for a leading expert in electric vehicle batteries to evaluate

22  Plaintiff's claims and the documents and data produced by Tesla), online document databases

23  necessary for document production and review, online legal research, and mail and postage costs.

24  *See* Nelson Decl. ¶¶ 24 & Ex. 3; Chen Decl. ¶ 8 & Ex. B.  These costs were reasonably incurred

25  in the prosecution of the matter, and normally would be billed to and paid by the client.  *Id.*

26  　　**C.**　　**The Requested Service Award is Reasonable and Appropriate**

27  　　Class Counsel seek a Service Award of $1,000 for Class Representative David

28  Rasmussen.  "[N]amed plaintiffs, as opposed to designated class members who are not named

1   plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938,

2   977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service

3   awards "are fairly typical in class action cases").  Such awards are "intended to compensate class

4   representatives for work done on behalf of the class [and] make up for financial or reputational

5   risk undertaken in bringing the action." *Id.*  "Incentive awards typically range from $2,000 to

6   $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).

7          The requested Service Award of $1,000 is reasonable and appropriate here.  Class

8   Representative David Rasmussen has been actively engaged in this matter since its inception.

9   Nelson Decl. ¶ 26; March 31, 2022 Decl. of David Rasmussen ("Rasmussen Decl.") filed

10  herewith.  He has provided Class Counsel with detailed information about his experiences,

11  including through data downloads obtained from his vehicle.  Nelson Decl. ¶ 26; Rasmussen

12  Decl. ¶ 5.  He has communicated regularly with Class Counsel throughout the case, up to and

13  including evaluation and approval of the proposed Settlement.  Nelson Decl. ¶ 26; Rasmussen

14  Decl. ¶¶ 4-7.  Because he came forward to assert rights that are common to all Class members,

15  Tesla has committed to pay a total $1,500,000.  Accordingly, he should be rewarded for the

16  "public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*,

17  667 F.3d 273, 333 n.65 (3d Cir. 2011).

18         Finally, the requested award is appropriate when compared to the recovery achieved.  In

19  assessing the reasonableness of a requested service award, courts may compare the request

20  against the size of the settlement fund and/or the size of the disbursements that individual Class

21  Members will receive.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th

22  Cir. 2015) (upholding $5,000 incentive awards after comparing to individual class member

23  recoveries of $12 and $27.25 million settlement fund).  Here, the proposed service award is only

24  1.6 times the amount of Class Members will receive.  This is well within the range of reasonable

25  proportions approved in this District.  *Compare, e.g.*, *Wren v. RGIS Inventory Specialists*, No. 06-

26  cv-5778, 2011 WL 1230826, at *31–37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 service

27  awards to 20 named plaintiffs where "average award to class members [was] $207.69").

28         Plaintiff's request is likewise is reasonable when compared to the Settlement Fund as a

14

1  whole: it represents only 0.066% of the Fund.  *Compare, e.g.*, *Mego*, 213 F.3d at 457 (approving

2  incentive awards of $5,000 each to two class representatives in $1.725 million settlement, which

3  collectively comprised 0.56% of total settlement); *In re: High-tech Emp. Antitrust Litig.*, No. 11-

4  cv-2509, 2014 WL 10520478, at *3 (N.D. Cal. May 16, 2014) (approving "modest" service

5  awards that represented 0.4% of recovery); *Anthem*, 2018 WL 3960068, at *31 (collecting cases;

6  approving service awards that represented 0.52% of recovery); *Rhom v. Thumbtack, Inc.*, No. 16-

7  cv-2008, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) ("A $5,000 award also equals

8  approximately 1–2% of the total settlement fund, which is consistent with other court-approved

9  enhancements.").

10      In light of the total value of Settlement proceeds and the Class Representative's service in

11  this case, the proposed service award is reasonable.

12  **CONCLUSION**

13      For the reasons set forth above, Plaintiff respectfully requests that the Court grant this

14  motion in its entirety, and award (i) attorneys' fees to Class Counsel in the amount of

15  $373,377.79; (ii) reimbursement of litigation expenses of $36,622.21; and (iii) a service award of

16  $1,000 to Class Representative David Rasmussen.

17

18  Dated:  March 31, 2022       Respectfully submitted,

19  By: _____

20      Nimish R. Desai

21  Robert J. Nelson (State Bar No. 132797)
   rnelson@lchb.com

22  Nimish R. Desai (State Bar No. 244953)
   ndesai@lchb.com

23  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor

24  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000

25  Facsimile:  (415) 956-1008

26  *Attorneys for Plaintiff and the Proposed Class*

27

28

2391419.1

PLAINTIFF'S NOT. OF MOT. AND MOT. FOR FEES,
EXPENSES, AND SERVICE AWARD
CASE NO. 5:19-CV-04596-BLF