1   Robert J. Nelson (State Bar No. 132797)
    rnelson@lchb.com
2   Nimish R. Desai (State Bar No. 244953)
    ndesai@lchb.com
3   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
5   Facsimile:  (415) 956-1008

6   *Class Counsel*

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN JOSE DIVISION**

11

12   DAVID RASMUSSEN, an individual, on behalf          Case No.  5:19-cv-04596-BLF
     of himself and all others similarly situated,
13                                                        **PLAINTIFF'S NOTICE OF MOTION
                  Plaintiff,                              AND MOTION FOR FINAL
14                                                        APPROVAL OF CLASS ACTION
          v.                                              SETTLEMENT**
15
     TESLA, INC. d/b/a TESLA MOTORS, INC., a             Date:       June 16, 2022
16   Delaware corporation,                               Time:       9:00 a.m.
                                                         Judge:      Hon. Beth Labson Freeman
17                Defendant.                             Courtroom:  3

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**[1]

**PLEASE TAKE NOTICE** that on June 16, 2022, at 9:00 a.m. at 280 South 1st Street, 5th Floor, Courtroom 3, San Jose, CA 95113, Plaintiff David Rasmussen will and hereby does move the Court for an order pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) granting final approval of the proposed Settlement entered into by Plaintiff and Defendant Tesla, Inc. ("Tesla") (collectively, the "Parties"). Specifically, Plaintiff will request that the Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) certify the Settlement Class as defined in the Settlement; and (iii) enter final judgment as to Plaintiff, the Settlement Class Members, and Tesla.

This motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; the declaration of Lacey Rose, filed concurrently herewith; the declaration of Sean P. Gates, filed concurrently herewith; the declaration of Nimish R. Desai, filed concurrently herewith; the Settlement, including all exhibits thereto; the declaration of Robert J. Nelson, filed in support of preliminary approval of the Settlement (Dkt. 49-2); the declaration of Edward C. Chen, filed in support of preliminary approval of the Settlement (Dkt. 49-3); the declaration of David Rasmussen, filed in support of Plaintiff's motion for service award (Dkt. 58-2); the argument of counsel; all papers and records on file in this matter, and such other matters as the Court may consider.

//
//
//
//
//
//
//

---

[1] Unless otherwise indicated, capitalized terms in this notice and supporting memorandum have the same meanings as in the Settlement Agreement and Release (the "Settlement"), which is Exhibit 1 to the July 28, 2021 Declaration of Robert J. Nelson filed in support of Plaintiff's motion for preliminary approval of class settlement (Dkt. 49-2).

1   Dated: May 26, 2022                    Respectfully submitted,

2                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3
    By: _____ . _____
4                                              Nimish R. Desai

5                                          Robert J. Nelson (State Bar No. 132797)
                                           rnelson@lchb.com
6                                          Nimish R. Desai (State Bar No. 244953)
                                           ndesai@lchb.com
7                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           275 Battery Street, 29th Floor
8                                          San Francisco, CA  94111-3339
                                           Telephone:  (415) 956-1000
9                                          Facsimile:  (415) 956-1008

10                                         *Class Counsel*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOT. OF MOT. AND MOT. FOR FINAL
APPROVAL OF CLASS SETTLEMENT
CASE NO. 5:19-CV-04596-BLF

1    Robert J. Nelson (State Bar No. 132797)
     rnelson@lchb.com
2    Nimish R. Desai (State Bar No. 244953)
     ndesai@lchb.com
3    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
     275 Battery Street, 29th Floor
4    San Francisco, CA  94111-3339
     Telephone:  (415) 956-1000
5    Facsimile:  (415) 956-1008

6    *Class Counsel*

7

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11                       **SAN JOSE DIVISION**

12   DAVID RASMUSSEN, an individual, on        Case No.  5:19-cv-04596-BLF
     behalf of himself and all others similarly
13   situated,
                                                **PLAINTIFF'S MEMORANDUM OF**
14              Plaintiff,                       **POINTS AND AUTHORITIES IN**
                                                **SUPPORT OF MOTION FOR FINAL**
15        v.                                     **APPROVAL OF CLASS SETTLEMENT**

16   TESLA, INC. d/b/a TESLA MOTORS, INC., a    Date:      June 16, 2022
     Delaware corporation,                      Time:      9:00 a.m.
17                                              Judge:     Hon. Beth Labson Freeman
                Defendant.                       Courtroom:  3
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

    I.     The Alleged Conduct .................................................................................. 2

    II.    Class Counsel's Investigation and Informal Discovery ......................... 2

    III.   Settlement Negotiations ............................................................................. 3

    IV.   Preliminary Approval ................................................................................. 4

SUMMARY OF THE SETTLEMENT TERMS .......................................................... 4

    I.     The Settlement Class ................................................................................. 4

    II.    The Settlement Fund ................................................................................. 4

         A.    Payments to Settlement Class Members ...................................... 4

         B.    Diagnostic for In-Warranty Vehicles ........................................... 5

         C.    Release ............................................................................................. 5

         D.    Administrative Costs ...................................................................... 5

         E.    Attorneys' Fees, Expenses, and Service Award .......................... 6

    III.   Notice Program .......................................................................................... 6

         A.    Direct Notice to Settlement Class Members ................................ 6

         B.    Settlement Website and Toll-Free Number .................................. 7

         C.    CAFA Notice ................................................................................... 7

ARGUMENT ................................................................................................................ 7

    I.     The Court Should Certify the Settlement Class. ..................................... 7

         A.    The Requirements of Rule 23(a) are Satisfied. ........................... 8

             1.     Numerosity (Rule 23(a)(1)) .............................................. 8

             2.     Commonality (Rule 23(a)(2)) ........................................... 8

             3.     Typicality (Rule 23(a)(3)) ................................................. 8

             4.     Adequacy of Representation (Rule 23(a)(4)) .................. 9

         B.    The Requirements of Rule 23(b)(3) Are Satisfied. ..................... 9

    II.    The Settlement Is Fundamentally Fair, Adequate, and Reasonable ..... 11

         A.    Plaintiff and Class Counsel Have and Continue to Zealously
             Represent the Class (Fed. R. Civ. P. 23(e)(2)(A)). ..................... 11

         B.    The Settlement Is the Product of Good Faith, Informed, Arm's
             Length Negotiations (Fed. R. Civ. P. 23(e)(2)(B)). .................... 11

         C.    The Settlement Represents a Strong Result for the Settlement Class,
             Particularly Given the Risks and Likely Duration of Ongoing
             Litigation  (Fed. R. Civ. P. 23(e)(2)(C)). ................................... 12

         D.    The Settlement Treats Class Members Equitably
             (Fed. R. Civ. P. 23(e)(2)(D)). ...................................................... 14

PLAINTIFF'S MEMO ISO MOT. FOR
FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. 5:19-CV-04596-BLF

**TABLE OF CONTENTS**
**(continued)**

Page

E.    The Proposed Method of Distributing Relief Is Effective
(Fed. R. Civ. P. 23(e)(2)(C)(ii)). ............................................................. 15

F.    Class Counsel Requested Reasonable Attorneys' Fees and
Reimbursement of Their Litigation Expenses
(Fed. R. Civ. P. 23(e)(2)(C)(iii)). ........................................................... 15

G.    There Are No Other Agreements (Fed. R. Civ. P. 23(e)(2)(C)(iv)).......... 16

H.    Response From The Class ........................................................................ 16

III.    The Sole Objection to the Settlement Should Be Overruled................................ 16

CONCLUSION ..................................................................................................... 18

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................................................. 10

5

*Browne v. Am. Honda Motor Co.,*
    No. 09-cv-06750, 2010 WL 9499072 (C.D. Cal. July 29, 2010) ........................................ 17

6

*Butler v. Sears, Roebuck & Co.,*
    702 F.3d 359 (7th Cir. 2012) ............................................................................................... 9

7

*Churchill Village, L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ............................................................................................... 11

8

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................................................. 12

9

*Evon v. Law Offices of Sidney Mickell,*
    688 F.3d 1015 (9th Cir. 2012) ............................................................................................. 9

10

*Hernandez v. Cnty. of Monterey,*
    305 F.R.D. 132 (N.D. Cal. 2015) ........................................................................................ 8

11

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................................ 16

12

*In re Bluetooth Headset Products Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ......................................................................................... 12, 15

13

*In re First Alliance Mortg. Co.,*
    471 F.3d 977 (9th Cir. 2006) ............................................................................................... 9

14

*In re Hyundai & Kia Fuel Econ. Litig.,*
    926 F.3d 539 (9th Cir. 2019) .......................................................................................... 10, 11

15

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. 15

16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,*
    MDL No. 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ........................................... 6

17

*Jimenez v. Allstate Ins. Co.,*
    765 F.3d 1161 (9th Cir. 2014) ............................................................................................. 8

18

*Just Film, Inc. v. Buono,*
    847 F.3d 1108 (9th Cir. 2017) ............................................................................................. 10

19

*Kuraica v. Dropbox, Inc.,*
    No. 19-cv-6348, 2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) .......................................... 15

20

*Lane v. Facebook,*
    696 F.3d 811 (9th Cir. 2012) ............................................................................................... 5

21

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.,*
    No. 19-cv-07087, 2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) ..................................... 15

22

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ............................................................................................... 11

23

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ............................................................................................... 8

24

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Rodriguez* v. *W. Publi'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................... 14

*Sheikh v. Tesla, Inc.*,
   No. 17-cv-02193, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) .................................. 5, 14, 15

*Shin v. Plantronics, Inc.*,
   No. 18-cv-05626, 2020 WL 1934893 (N.D. Cal. Jan. 31, 2020) ................................ 11

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ....................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................... 8

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................. 10

**Rules**

Federal Rule of Civil Procedure 23(a) ........................................................ 7, 8

Federal Rule of Civil Procedure 23(b)(3) ..................................................... 7, 9

Federal Rule of Civil Procedure 23(e)(2) ................................................... 11, 12, 16

Federal Rule of Civil Procedure 23(e)(3) ..................................................... 16

Federal Rule of Civil Procedure 23(e)(5) ..................................................... 17

**Other Authorities**

5 *Moore's Federal Practice - Civil* (2016) .................................................. 8

N.D. Cal., *Procedural Guidance for Class Action Settlements*,
   Final Approval § 1 ........................................................................ 16

5 William B. Rubenstein, Newberg on Class Actions (5th ed. 2021) .............................. 15

**INTRODUCTION**

Plaintiff seeks final approval of the Settlement that this Court preliminarily found to be "fair, reasonable, adequate, and in the best interests of the Settlement Class." The Settlement's terms and provenance have not changed since that finding: Tesla will pay $625 for each Class Vehicle in exchange for a release of claims related to the software updates that reduced and then restored the vehicle's maximum voltage. The Settlement was the product of detailed informal discovery, negotiations overseen by two experienced and well-respected mediators, and months of further negotiations following the mediation.

Any new facts that have emerged since the Court's preliminary finding that the Settlement is "fair, reasonable, adequate, and in the best interests of the Settlement Class" only lend that finding further support. Angeion successfully executed the approved notice program, sending direct mail notice to 1,994 individuals associated with 1,743 Class Vehicles. A straightforward settlement website and 24-hour hotline have provided Class Members with detailed information about the litigation and terms of the proposed Settlement.

The response from the Class has been overwhelmingly positive: only one individual requested exclusion from the Settlement. In addition, only one Class Member—Miles Lewis, proceeding *pro se*—objected to the Settlement. Lewis does not argue that his voltage has not been restored. Nor could he, because Tesla's records show his vehicle is back at full voltage. Rather, Mr. Lewis appears to focus on his vehicle's purportedly reduced range. Even if he had substantiated that assertion (he has not, and notably no other Class Member makes this complaint), reduced range can be caused by numerous factors unrelated to maximum voltage. His lone objection does not undermine the fairness of the Settlement and should be overruled. Indeed, the fact of a single opt out and single objector after individualized direct notice was provided to well over a thousand Class Members demonstrates overwhelming support for the proposed Settlement.

For these reasons, as well as the additional reasons described herein and reflected in the Court's Preliminary Approval Order, the Court should approve the Settlement, certify the Settlement Class, and enter final judgment as to Plaintiff, the Settlement Class Members, and Tesla.

1

## BACKGROUND

2

### I.    The Alleged Conduct

3

Plaintiff filed suit in August 2019 (Dkt. 1), and by October 2019, the Parties agreed to stay

4

the litigation in order to pursue settlement discussions.  *See* Dkt. 18.  Although the Complaint raised

5

multiple issues, the proposed Settlement—and the attendant release—is narrowly focused on

6

Plaintiff's allegations that in May 2019, Tesla released an over-the-air software update that reduced

7

the maximum voltage to which the batteries on certain Tesla Model S vehicles could be charged.

8

Plaintiff further alleged that as a result of this voltage limitation, the maximum range of the

9

Settlement Class Vehicles was reduced.  Plaintiff alleged violations of state consumer protection

10

statutes as well as common law claims, seeking damages and equitable relief.

11

### II.    Class Counsel's Investigation and Informal Discovery

12

Prior to filing suit, and continuing through the course of informal discovery and mediation,

13

Class Counsel conducted an extensive investigation into the factual and legal issues raised in this

14

litigation.  These investigative efforts have included, *inter alia*, speaking with numerous Tesla

15

drivers about their experiences, reviewing discovery from Tesla regarding the Settlement Class

16

Vehicles and the operative software updates, and retaining and consulting a leading expert in

17

electric vehicle batteries.  Class Counsel also researched and analyzed the legal issues regarding the

18

claims pled and Tesla's potential defenses.  Dkt. 49-2 (Nelson Decl.) ¶¶ 18–21; Dkt. 49-3 (Chen

19

Decl.) ¶ 4.

20

Tesla's data showed that 1,743 Model S vehicles in the United States were subject to a

21

10% maximum voltage limitation caused by a May 2019 software update.  *See* May 26, 2020

22

Decl. of Sean P. Gates ("May 26, 2022 Gates Decl.") ¶ 2.  A subsequent update in July 2019

23

restored about 3% of the battery voltage in these vehicles, and a third update released in March

24

2020 was designed to fully restore the batteries' voltage over time as the vehicles were driven.

25

*Id.* ¶ 3.  The restoration proceeded as planned:  to date, Tesla's data shows that of the 1,707

26

vehicles for which there is data, 1,634 have had their battery voltage fully restored (including

27

151 that had the battery replaced after May 2019), 12 have been restored to voltage between

28

98% and 99% of the maximum, 22 have been restored to voltage between 96% and 98%, and 12

2

between 94% and 96%.  *Id.* ¶ 4.  The restorations have proceeded apace since preliminary approval (*compare* Dkt. 49-4 (Gates Decl.) at ¶ 4), and the maximum voltage on the remaining vehicles should continue to be restored over time as the vehicles are driven.  *Id.*

Twenty-seven Class Vehicles have shown no increase in battery voltage.  *Id.* ¶ 5.  For those vehicles that have shown no increase in voltage, Tesla is offering a free battery service or (if necessary) a no-cost battery replacement.  *Id.* at ¶ 5 & Ex. A.

Of the remaining 36 vehicles, for which data is unavailable, five have had battery replacements (and thus are fully restored, bringing the total to 1,639) and 15 have been scrapped.  *Id.* ¶ 6.

Ready access to data from the final 16 vehicles is not available (not unusual for older vehicles), but the data above shows that the update works as planned and there is no reason to doubt that the voltage restoration update will work similarly in these vehicles.  *Id.* ¶ 7.

In sum, Class Counsel's investigation confirmed that the voltage limitation was temporary, with a 10% reduction lasting about 3 months, and a smaller 7% reduction lasting another 7 months before the corrective update was released in March 2020.  Following that second update, the vehicles' voltage showed steady restoration over time.

### III.    Settlement Negotiations

The Settlement is the product of arms-length negotiations.  The Parties and their counsel participated in a full-day mediation with the Honorable Daniel Weinstein (ret.) and Cathy Yanni, Esq. of JAMS on July 24, 2020.  After that full day, the Parties reached an agreement in principle to resolve this case.  Only after agreement on the substantive terms had been reached, the Parties negotiated a percent-of-the-fund attorney fee request to which Tesla would not object.  After reaching an agreement in principle, the Parties worked diligently to monitor the restoration of battery voltage in the Settlement Class Vehicles, draft the written settlement agreement, notices, and other settlement exhibits, and to select the proposed Settlement Administrator through a competitive bidding process.  Dkt. 49-2 (Nelson Decl.) ¶¶ 22–28; Dkt. 49-3 (Chen Decl.) ¶ 5; Dkt. 49-4 (Gates Decl.) ¶ 6.

**IV.    Preliminary Approval**

On July 28, 2021, Plaintiff moved this Court for preliminary approval of the Settlement. *See* Dkt. 49 (Mot. for Prelim. Approval). After holding a hearing on the matter, the Court granted preliminary approval on December 9, 2021, finding it was likely to certify the settlement Class, appointing Plaintiff David Rasmussen as Class Representative, appointing Plaintiff's counsel as Class Counsel, appointing Angeion Group LLC ("Angeion") as notice and settlement administrator, approving the form and manner of notice to the Class, and scheduling all remaining dates and deadlines pertaining to approval of the Settlement, including a final approval hearing. *See* Dkt. 54 (Prelim. Approval Order).

## SUMMARY OF THE SETTLEMENT TERMS

**I.    The Settlement Class**

The Court has determined it will likely certify the following Settlement Class:

> All U.S. residents who, anytime during the period from May 15, 2019 through September 1, 2020, owned or leased a Tesla Model S vehicle that experienced a limitation of maximum battery voltage as the result of the software update issued by Tesla in May 2019.

*See* Dkt. 54 (Prelim. Approval Order) ¶ 4. Entities or persons affiliated with Tesla or the Court are excluded from the Settlement Class. *Id.* Tesla does not oppose certification of the Settlement Class for settlement purposes only. *See* Settlement § I.B.

**II.    The Settlement Fund**

Under the Settlement, Tesla will create a Settlement Fund of $1,500,000. The Settlement Fund will be used to pay only the settlement payments to Settlement Class Members, attorneys' fees and expenses, and Plaintiff's service award. Tesla will separately pay any notice and settlement administration costs. *See* Settlement § II.A.1.

### A.    Payments to Settlement Class Members

The entirety of the Settlement Fund, less Court-awarded attorneys' fees and expenses for Class Counsel and any service award for Plaintiff, will be distributed to the Settlement Class.

Once fees, costs, and the service award are deducted, the Settlement will fund a $625 payment for each Class Vehicle. Those who owned or leased the Class Vehicle over the relevant

1    time period will receive this entire payment.  For the Settlement Class Members who may have

2    owned or leased their cars for only part of the relevant period (*i.e.*, the Class Vehicle was sold or

3    transferred to a new lessee during this time), the $625 payment will be prorated.  *See* Settlement

4    § II.B.

5          In the event any settlement payment checks expire or cannot be delivered despite Angeion's

6    reasonable efforts to locate the Class Member, Angeion will distribute those funds as a *cy pres*

7    award to the Ohio State University Center for Automotive Research and/or Texas A&M

8    Transportation Institute, Center for Transportation Safety.  Settlement § IX.C.2.  This Court

9    approved these same two *cy pres* recipients in *Sheikh v. Tesla, Inc.*, No. 17-cv-02193, 2018 WL

10   5794532, at *2 (N.D. Cal. Nov. 2, 2018).  The work of both organizations relates to automotive

11   safety and has the requisite nexus to this Action, the goals of the laws underpinning Plaintiff's

12   claims, and the interests of the Settlement Class.  *See Lane v. Facebook*, 696 F.3d 811, 819–20 (9th

13   Cir. 2012).

14          **B.     Diagnostic for In-Warranty Vehicles**

15          As part of the Settlement, Tesla has also agreed to maintain diagnostic software for in-

16   warranty vehicles to notify owners and lessees of vehicles that Tesla determines may need battery

17   service or repair for certain battery issues.  *See* Settlement § II.A.2.

18          **C.     Release**

19          In exchange for the monetary and diagnostic relief described above, Settlement Class

20   Members will release Tesla from any claims arising from or relating to the changes to maximum

21   battery voltage caused by the software updates Tesla issued in May 2019, July 2019, and March

22   2020.  Settlement § VI.B.  The scope of the release is limited to the conduct addressed by this

23   Settlement.  *See id.*

24          **D.     Administrative Costs**

25          Angeion's fees and costs—*i.e.*, costs incurred in implementing the notice program,

26   administering claims, mailing checks, and performing the other administrative tasks described in

27   the Settlement—will be paid separately by Tesla.  Dkt. 54 (Prelim. Approval Order) ¶ 11;

28   Settlement § II.A.4.

### E.    Attorneys' Fees, Expenses, and Service Award

In accordance with the Settlement's terms and in a separate motion filed on March 31, 2022, Class Counsel requested an award of attorneys' fees of $410,000, inclusive of $36,622.21 in expenses.  Dkt. 58 (Fee Mot.) at 1.  As a percentage of the fund, this is approximately 27%, or 24.9% exclusive of costs.  Class Counsel also seek a services award of up to $1,000 for the Plaintiff, to compensate him for his efforts and commitment on behalf of the Settlement Class.  *Id.* at 14–15.  Any attorneys' fees, expenses, and service award granted by the Court will be paid from the Settlement Fund.  *See id.* at 1; Settlement § V.  The Settlement is neither dependent nor conditioned upon the Court's approval of the aforementioned awards, or the Court awarding the particular amounts sought.  *See* Settlement § V.A–B.

## III.   Notice Program

Pursuant to the Court's Preliminary Approval Order and as described below, Angeion has implemented a robust notice program, providing direct notice to Class Members.  Dkt. 54 (Prelim. Approval Order) ¶¶ 8–10.  The substance of the notice approved by the Court "provide[s] a summary of the Settlement and clearly explain[s] how Class Members may object to or opt out of the Settlement, as well as how Class Members may address the Court at the final approval hearing." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 672727, at *20 (N.D. Cal. Feb. 16, 2017) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."); *see also* Dkt. 54 (Prelim. Approval Order) ¶ 9.

### A.    Direct Notice to Settlement Class Members

Pursuant to the Settlement, Tesla provided Angeion with a list of 1,743 unique VIN numbers for Class Vehicles.  *See* May 26, 2022 Decl. of Lacey Rose re: Notice Procedures ("Angeion Decl.") ¶ 8; Settlement § IV.A.  Angeion then coordinated with HIS Markit/Polk to obtain the names and addresses associated with those VIN numbers, and in the process eliminated duplicates and addresses associated with entities like insurance providers and auto dealerships. Angeion Decl. ¶ 9.  Next, Angeion processed its mailing list through the USPS National Change of Address database to obtain new or forwarding addressed for Class Members who moved within the

last four years. *Id.* ¶ 11. Angeion ultimately mailed direct notice to 1,994 Class Members. *Id.* ¶¶ 9–10 (explaining that number of Class Members is higher than the number of Class Vehicles because some vehicles were owned or leased by more than one person during the relevant time period). Of those, 75 notices were returned as undeliverable. *Id.* ¶ 12. Angeion re-mailed 58 of those notices after locating new addresses via "skip tracing." *Id.*

### B.    Settlement Website and Toll-Free Number

Angeion established a Settlement Website (www.ModelSVoltageUpdateSettlement.com), which contains general information about the Settlement, including answers to frequently asked questions, important dates and deadlines pertinent to this matter, and copies of important documents. *Id.* ¶ 13. The Settlement Website has a "Contact Us" page whereby Class Members may submit questions regarding the Settlement to a dedicated e-mail address: info@ModelSVoltageUpdateSettlement.com. As of May 25, 2022, the Settlement Website had received 205 visits and 344 page views by 158 unique users. *Id.*

Separately, Angeion established a toll-free hotline dedicated to the Settlement of this action: 1-844-844-4116. The hotline—accessible 24 hours a day, 7 days a week—utilizes an interactive voice response system to provide Class Members with responses to frequently asked questions and other essential information regarding the Settlement. *Id.* ¶ 14. As of May 25, 2022, the toll-free line had received 26 calls totaling 115 minutes. *Id.*

### C.    CAFA Notice

In addition to complying with the Court-approved notice plan, Tesla also complied with its obligation to provide notice under the Class Action Fairness Act ("CAFA") by timely notifying appropriate federal and state officials. *Id.* ¶ 6.

## ARGUMENT

### I.    The Court Should Certify the Settlement Class.

Tesla does not oppose certification of the Settlement Class for purposes of Settlement. *See* Settlement § I.B. In preliminarily approving the Settlement, the Court likewise found "that the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been met." Dkt. 54 (Prelim. Approval Order) ¶ 6. Since that time, nothing has changed. Certification of

the Class for purposes of settlement is now warranted.

### A.    The Requirements of Rule 23(a) are Satisfied.

As the Court previously determined, Rule 23(a) is readily satisfied here.  *See* Dkt. 54 (Prelim. Approval Order) ¶ 6.

### 1.    Numerosity (Rule 23(a)(1))

Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1).  A "class of 41 or more is usually sufficiently numerous." 5 *Moore's Federal Practice - Civil* § 23.22 (2016); *see also Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015).  Here, the Settlement Class includes owners or lessees of 1,743 vehicles.  *See* May 26, 2022 Gates Decl. ¶ 2.

### 2.    Commonality (Rule 23(a)(2))

Rule 23(a)(2) requires that there be one or more questions common to the class. Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).  This case raises a core common question of whether Tesla's temporary voltage limitation violated state consumer protection or property tort laws.

### 3.    Typicality (Rule 23(a)(3))

Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct." *Hernandez*, 305 F.R.D. at 159.  Plaintiff's claims and those of the Settlement Class are based on the same course of conduct and the same legal theories.  Moreover, Plaintiff and the Settlement Class all suffered the same type of alleged harm in having their maximum battery voltage temporarily reduced.

### 4.      Adequacy of Representation (Rule 23(a)(4))

Rule 23(a)(4)'s adequacy inquiry asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). Class Counsel have extensive experience litigating and resolving class actions, and are well qualified to represent the Settlement Class. Dkt. 49-2 (Nelson Decl.) ¶¶ 9–13; Dkt. 49-3 (Chen Decl.) ¶ 3. As explained above, Class Counsel vigorously investigated these claims and negotiated the Settlement, and will continue to fairly and adequately protect the interests of the Settlement Class. *See* Background § II, *supra*. Likewise, Plaintiff has demonstrated his commitment to the Settlement Class, including by providing pertinent information about his experiences, regularly communicating with his counsel about the case, and reviewing and approving the proposed Settlement. Dkt. 49-2 (Nelson Decl.) ¶¶ 38–39; Dkt. 58-2 (Rasmussen Decl.) ¶¶ 3–7. Finally, Plaintiff and Class Counsel share the Settlement Class's interest in obtaining relief from Tesla for the alleged violations. *See, e.g.*, Dkt. 58-2 (Rasmussen Decl.) ¶ 3.

### B.      The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012). The Ninth Circuit favors class treatment of claims stemming from a "common course of conduct," like those alleged in this case. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 989 (9th Cir. 2006).

Common questions predominate here. Dkt. 54 (Prelim. Approval Order) ¶ 6 (finding "there

1   are questions of law and fact common to members of the Settlement Class that predominate").

2   Those questions include whether Tesla's temporary reduction in maximum battery voltage—via

3   software updates that were pushed out to all Settlement Class Vehicles—was material to a

4   reasonable consumer, unfair or deceptive, and effectively a taking or conversion of Settlement Class

5   Members' property.  The Ninth Circuit has affirmed class settlements where, as here, a "common

6   nucleus of facts" animate the claims.  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563

7   (9th Cir. 2019).  Moreover, under the proposed Settlement, there will not need to be a class trial,

8   meaning there are no potential concerns about individual issues, if any, creating trial inefficiencies.

9   *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for

10  settlement-only class certification, a district court need not inquire whether the case, if tried, would

11  present intractable management problems . . . for the proposal is that there will be no trial.").

12       Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action

13  is "superior to other available methods for the fair and efficient adjudication of the controversy."

14  *Id.* at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)

15  ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient

16  and effective means of resolving the controversy.").  Class treatment is superior to other methods

17  for the resolution of this case.  Dkt. 54 (Prelim. Approval Order) ¶ 6 (finding "that a settlement

18  class action is a superior method of adjudicating this Action").  Plaintiff remains unaware of any

19  consumers filing individual actions regarding the issues raised in this case, and the size of each

20  Settlement Class Member's individual damages would be dwarfed by the expense of prosecuting an

21  individual case against Tesla, a formidable and well-funded defendant.  *See Just Film, Inc. v.*

22  *Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (class action superior where the "risks, small recovery,

23  and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their

24  claims") (internal quotation marks omitted).  Moreover, it would be far more efficient for the Court

25  and the Parties to have a single resolution (as with the proposed Settlement here), rather than

26  multiple separate cases about the same issue.

27       For the reasons set forth above, this Court should certify the Class for settlement purposes.

28

**II.    The Settlement Is Fundamentally Fair, Adequate, and Reasonable.**

The Ninth Circuit maintains a "strong judicial policy" that favors settlement, particularly "where complex class action litigation is concerned." *In re Hyundai*, 926 F.3d at 556 (quotation omitted).  In determining whether a court should grant final approval to a class action settlement, "the universally applied standard is whether the settlement is fundamentally fair, adequate, and reasonable." *Shin v. Plantronics, Inc.*, No. 18-cv-05626, 2020 WL 1934893, at *3 (N.D. Cal. Jan. 31, 2020) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  Rule 23(e)(2) instructs that, in evaluating whether a proposed settlement is fair, reasonable, and adequate, district courts must consider whether:  (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided is adequate under pertinent case circumstances; and (4) the settlement treats class members equitably relative to each other.  *See also Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing additional factors that substantially overlap with Rule 23(e)(2)).

Each of these factors weighs in favor of approval of the Settlement.

**A.    Plaintiff and Class Counsel Have and Continue to Zealously Represent the Class (Fed. R. Civ. P. 23(e)(2)(A)).**

Plaintiff and Class Counsel have pursued this action on behalf of the Settlement Class vigorously and efficiently.  *See* Fed. R. Civ. P. 23(e)(2)(A).  As discussed above, Class Counsel thoroughly investigated and researched the factual and legal issues involved, conducted substantial informal discovery, and retained a leading expert in the field.  *See* Background § II, *supra*. Likewise, Plaintiff has personally been actively engaged—he provided detailed information about his experiences, including through data downloads obtained from his vehicle, served as a conduit of information regarding other Settlement Class Members, and communicated regularly with counsel up to and including evaluating and approving the proposed Settlement.  Dkt 49-2 (Nelson Decl.) ¶¶ 38–39; Dkt. 58-2 (Rasmussen Decl.) ¶¶ 4–8.

**B.    The Settlement Is the Product of Good Faith, Informed, Arm's Length Negotiations (Fed. R. Civ. P. 23(e)(2)(B)).**

"Before approving a class action settlement, the district court must reach a reasoned

1    judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

2    among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir.

3    1992); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (citing

4    three non-dispositive factors of disproportionate attorneys' fees, the inclusion of a clear-sailing

5    provision, and a provision whereby unclaimed funds revert to the defendant); *see also* Fed. R. Civ.

6    P. 23(e)(2)(B).

7         The Settlement is the product of arm's length negotiations between the Parties and their

8    qualified and informed counsel, preceded by the exchange of informal discovery and Class

9    Counsel's investigation.  Throughout their negotiations, the Parties were represented by counsel

10   experienced in the prosecution, defense, and settlement of complex class actions.  The Parties

11   participated in a full-day mediation with two experienced and well-respected mediators, the

12   Honorable Daniel Weinstein (ret.) and Cathy Yanni, Esq. of JAMS, and were able to reach an

13   agreement on key deal terms through that effort.  The mediation was followed by months of further

14   negotiation and informal discovery.

15        Further, Class Counsel's requested fee award is not disproportionate, *see* Argument § I.F,

16   *infra*, and the Settlement does not provide for any reversion of funds to Tesla.  *In re Bluetooth*, 654

17   F.3d at 946–47.

18   **C.    The Settlement Represents a Strong Result for the Settlement Class,
         Particularly Given the Risks and Likely Duration of Ongoing Litigation**
19   **(Fed. R. Civ. P. 23(e)(2)(C)).**

20        The Settlement provides substantial monetary relief.  After attorneys' fees and costs are

21   deducted, every Settlement Class Member will receive a $625 payment (prorated for Class Vehicles

22   that had multiple owners during the relevant time period).  The payment amounts represent a strong

23   result for Settlement Class Members, particularly given the substantial risks, costs, and delay of

24   continued litigation.

25        One way to put the $625 per Class Vehicle payment into perspective is to compare it against

26   the value of the temporary reduction in maximum battery voltage of the Class Vehicle batteries.

27   That value can be estimated as the product of three figures:  the lost kilowatt-hours,[2] the cost of a

28   ───────────────────────────
     [2] As detailed above, the vehicles lost about 10% of maximum battery voltage for 2 months, and 7%
     of maximum battery voltage for another 10 months until March 2020, when the restoration software

1  kilowatt-hour per month,[3] and the number of months of reduced maximum battery voltage.  Under

2  these assumptions, the lost value is about $175 per Class Vehicle.  The Settlement provides for

3  many times that amount.

4       Were the Parties to litigate, achieving even $175 per Class Vehicle would be a risky and

5  uncertain endeavor.  At the outset, Tesla would rigorously dispute liability, and the litigation would

6  continue even as the batteries' voltage would have been fully restored, undercutting the Class's

7  claims of harm.  Even assuming Plaintiff were to overcome all pre-trial obstacles, achieve class

8  certification, prevail at trial, and survive any appeals, Tesla would have numerous arguments for

9  significantly reducing the damages amount.  For example, given the wealth of charging data at its

10  disposal, Tesla may be able to demonstrate that many Settlement Class Members rarely needed

11  access to the full 100% of battery voltage given their day-to-day driving and charging habits.

12  Moreover, as noted above, many Settlement Class Vehicles had their voltage restored well before

13  the March 2021 date assumed in the hypothetical calculation—indeed, the corrective update was

14  released a full year prior, in March 2020.  Further, Tesla would likely represent that the relevant

15  software updates served to increase the overall life of the batteries, thereby conferring a benefit that

16  must be offset from any potential damages.  Finally, as is common in consumer class litigation,

17  Tesla would certainly seek to parlay these damages issues into liability and injury issues that, it

18  would argue, undermine class certification.

19       While Plaintiff believes the Class could overcome Tesla's defenses and challenges, they are

20  indicative of the risks, hurdles, and delays that the Settlement Class would face should this matter

21  proceed in litigation.  The proposed Settlement provides considerable monetary relief for the

22  Settlement Class while allowing them to avoid the risks of unfavorable rulings on these and other

23  issues.  The Settlement also provides prompt relief, of particular importance here given that the

24  underlying conduct has ceased and, as set forth above, maximum battery voltage has been entirely

---

25  update was released.  Between March 2020 and the present, Class Vehicles' voltage was gradually
   restored as a function of how much they were driven and charged.  However, to simplify the

26  exercise, and to develop a best-case scenario against which to measure the Settlement, this damages
   estimate assumes the entire 7% loss was realized for a full 22 months, until March 2021.

27  [3] As far back as 2017, Plaintiffs estimate that the cost of Tesla battery capacity was approximately
   $133/kWh.  See Dkt. 1 (Complaint) ¶ 71 n.24.  At a warranted life of 8 years (96 months), that

28  works out to approximately $1.39/kWh-month.

PLAINTIFF'S MEMO ISO MOT. FOR
FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. 5:19-CV-04596-BLF

1    or almost entirely restored for the vast majority of the Settlement Class Vehicles.  Continued

2    litigation would likely add several more years before there is a resolution.  *See Rodriguez* v. *W.*

3    *Publi'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (noting that the elimination of "[r]isk, expense,

4    complexity, and likely duration of further litigation" weighed in favor of approving settlement).

5          The Settlement also compares favorably to those achieved in similar cases.  In *Sheikh v.*

6    *Tesla*, Tesla purchasers sued the company for failing to timely provide promised "autopilot"

7    features.  *See Sheikh*, 2018 WL 5794532, at *1.  Thus, like here, the issue was a temporary

8    impairment of a vehicle feature.  In *Sheikh*, each class member received between $25 and $280,

9    significantly less than the payment here*.  See id.* at *5.  And in *In re Hyundai & Kia Fuel Econ.*

10   *Litig.*, 13-ml-02424 (C.D. Cal. filed Feb. 6, 2013), the plaintiffs complained of a misrepresented

11   fuel economy for their internal combustion engine vehicles.  There, like here, the underlying issue

12   can be described as how far the vehicle could travel on a single tank or charge.  However, in

13   *Hyundai*, the impairment was best described as permanent, not temporary like it is here, in that the

14   subject vehicles simply would not achieve the fuel economy the defendants promised.  In that case,

15   the class members' payments ranged from $140 to $1,420, with the vast majority of class vehicles

16   commanding less than the $625 achieved here.  *Hyundai*, Dkt. 354-1 at Page ID 6230–232.

17   Moreover, the *Hyundai* settlement required the class members to submit claims (*id*. at Page ID

18   6234), versus the automatic payouts provided for in the Settlement.

19         Compared to either of these settlements, both of which were recently approved by District

20   Courts in California, the Settlement fares very well.  It provides greater or comparable sums for a

21   temporary impairment, and without the requirement of any claims process.

22         **D.    The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)).**

23         All Settlement Class Vehicles lost the same percentage of their maximum battery voltage

24   based on an over-the-air software update, and all of the vehicles were subject to the same remedial

25   updates in the coming months that worked to restore voltage.  The proposed allocation of settlement

26   payments ensures that Settlement Class Members are treated equitably, because all Settlement Class

27   Vehicles command the same payment.

28

1

2

**E.    The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii)).**

3

4

The Settlement provides for an efficient and effective distribution of settlement payments.

5

Payments will be mailed by the Settlement Administrator to all Class Members, with appropriate

6

steps taken to find updated address information and re-mail undeliverable checks as needed. *See*

7

Settlement § IX.C.2. That automatic claims process is supported by a robust, Court-approved

8

notice program. As detailed above, Angeion provided the best notice to Class Members that is

9

practicable under the circumstances: direct notice mailed to Class Members' addresses. *See*

10

Background § III, *supra*; Dkt. 54 (Prelim. Approval Order) ¶ 9 ("The Court finds that the Notice

11

Plan constitutes the best notice practicable under the circumstances."). The success of that notice

program suggests that distribution of relief will be effective. *See* Summary of the Settlement Terms

§ III.A, *supra*.

12

13

**F.    Class Counsel Requested Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)).**

14

Rule 23(e)(2)(C)(iii) instructs courts to consider "the terms of any proposed attorney's fees,

15

including the timing of payment." In accordance with the Settlement terms, Class Counsel have

16

requested an award of reasonable attorneys' fees and reimbursement of their litigation expenses.

17

*See generally* Dkt. 58 (Fee Mot.). Specifically, Class Counsel requested 24.9% of the common

18

Settlement Fund for fees ($373,377.79), plus costs of $36,622.21. Dkt. 58 (Fee Mot.) at 1. This

19

amount is well within Ninth Circuit guidelines. *See In Re Bluetooth*, 654 F.3d at 942 (noting that

20

"courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"); *see*

21

*also* 5 William B. Rubenstein, Newberg on Class Actions §§ 15:73, 15:104 (5th ed. 2021). The

22

reasonableness of the requested award is further confirmed by Class Counsel's negative lodestar

23

multiplier of 0.88. *See* Dkt. 58 (Fee Mot.) at 11–13; Dkt. 58-1 (Nelson Decl.) ¶¶ 23–25 & Ex. 1;

24

*Kuraica v. Dropbox, Inc.*, No. 19-cv-6348, 2021 WL 5826228, at *7 (N.D. Cal. Dec. 8, 2021)

25

(Freeman, D.J.) (citing *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-07087, 2021

26

WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021)); *see also Sheikh*, 2018 WL 5794532, at *8

27

("Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases."); *In re*

28

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) ("[C]ourts have approved

PLAINTIFF'S MEMO ISO MOT. FOR
FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. 5:19-CV-04596-BLF

1   multipliers ranging between 1 and 4.").

2          As with the payments to Settlement Class Members, any attorneys' fees and expenses

3   awarded by the Court will be paid from the Settlement Fund following the Effective Date of the

4   Settlement.  Settlement § V.

5          **G.      There Are No Other Agreements (Fed. R. Civ. P. 23(e)(2)(C)(iv)).**

6          Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified

7   under Rule 23(e)(3)."  *See also* Fed. R. Civ. P. 23(e)(3) ("[T]he parties seeking approval must file a

8   statement identifying any agreement made in connection with the proposal.").  This provision is

9   aimed "at related undertakings that, although seemingly separate, may have influenced the terms of

10  the settlement by trading away possible advantages for the class in return for advantages for

11  others."  Fed. R. Civ. P. 23(e) 2003 Advisory Committee Notes.  There are no agreements between

12  the Parties other than the Settlement.

13         **H.      Response From The Class**

14         The final factor is Class Members' response to the Settlement, including "the number of

15  class members who elected to opt out of the class, and the number of class members who objected

16  to or commented on the settlement."  N.D. Cal., *Procedural Guidance for Class Action Settlements*

17  ("Procedural Guidance"), Final Approval § 1.  That response has been overwhelmingly positive.

18  Indeed, only *one member* of the Class has requested exclusion; only *one member* of the Class has

19  objected.  *See* Argument § III, *infra* (addressing objection).  This further shows that final approval

20  is warranted.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320–21 (N.D. Cal.

21  2018) ("low rates of objections and opt-outs are 'indicia of the approval of the class'"; finally

22  approving settlement where "only 406 Settlement Class Members have opted out of the Settlement

23  (about 0.0005% of the Class).").

24  **III.    The Sole Objection to the Settlement Should Be Overruled.**

25         As discussed above, only one member of the Class has objected to the Settlement.  *See* Dkt.

26  59 (Lewis Obj.).  Specifically, Objector Lewis claims that his vehicle's "full 300 mile range" had

27  not been restored as of the date of his objection and Tesla should be required to "restore" his battery

28  or refund its cost.  *Id.*

1    The Court should overrule this objection.  Data from Lewis's vehicle from three separate

2    days over several months show that the maximum voltage for Mr. Lewis's battery already has been

3    restored to 100%.  *See* May 26, 2022 Gates Decl. ¶ 8.  Mr. Lewis's objection does not assert

4    otherwise, because it is silent about his vehicle's maximum voltage (and lacks factual support

5    generally).  Mr. Lewis appears to focus on his vehicle's range, but even if he had substantiated that

6    assertion (he has not, and notably no other Class Member makes this complaint), reduced range can

7    be caused by numerous factors unrelated to maximum voltage.  *See* Fed. R. Civ. P. 23(e)(5)(A)

8    ("The objection must . . . state with specificity the grounds for the objection.").  Class Counsel

9    attempted to discuss these facts with Mr. Lewis, but the phone number provided in his objection

10   does not accept calls.  *See* May 26, 2020 Decl. of Nimish R. Desai ¶ 2.

11   Lewis thus fails to identify any reason why the substantial monetary relief provided by the

12   Settlement is inadequate in light of the costs, risks, and delay associated with continued litigation.

13   *See Browne v. Am. Honda Motor Co.*, No. 09-cv-06750, 2010 WL 9499072, at *15 (C.D. Cal. July

14   29, 2010) ("The fact that there is opposition does not necessitate disapproval of the settlement.

15   Instead, the court must independently evaluate whether the objections being raised suggest serious

16   reasons why the proposal might be unfair." (alteration and citation omitted)).  The Court should

17   overrule the objection and approve the Settlement.

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **CONCLUSION**

Plaintiff respectfully requests that the Court enter an order, substantially similar to the Proposed Order filed and lodged herewith, certifying the Settlement Class, granting final approval of the Settlement as fair, reasonable, and adequate, and entering final judgment.

Dated:  May 26, 2022

Respectfully submitted,

By: _____
    Nimish R. Desai

Robert J. Nelson (State Bar No. 132797)
rnelson@lchb.com
Nimish R. Desai (State Bar No. 244953)
ndesai@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Class Counsel*

PLAINTIFF'S MEMO ISO MOT. FOR
FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. 5:19-CV-04596-BLF